Exhibit B

To State Farm's Letter Dated June 8, 2007



575 Madison Avenue
New York, NY 10022-2585
212.940.8800 tel
212.940.6400 fax

KEIR N. DOUGALL
keir.dougall@kattenlaw.com
212.940.8775 direct
212.894.5719 fax

May 3, 2007

<u>Via ECF</u>

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     **State Farm v. Accurate Medical, P.C., et al., Index No. CV-07-0051 (E.D.N.Y.)**

Dear Judge Vitaliano:

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") respectfully writes in opposition to the application dated April 24, 2007 from defendants Accurate Medical, P.C., J P Medical, P.C., Quality Medical Health Care Provider, P.C., Jadawiga Pawlowski, M.D., and Hisham Elzanaty, (together the "PC/Elzanaty Defendants") seeking permission to file a motion to dismiss State Farm's complaint ("Complaint"). State Farm also writes to oppose the request of defendant David Burke, M.D., dated May 1, 2007, seeking leave to join that proposed motion.

The PC/Elzanaty Defendants assert that the Complaint should be dismissed: 1) because it is barred "at least in part" where it seeks recovery "for charges going back to 1998;" 2) because "to the extent [State Farm] seeks recovery on grounds of fraudulent incorporation for payments made prior to April 4, 2002, they are barred;" 3) because State Farm is not entitled to recover payments it made for medically unnecessary services; 4) on <u>res judicata</u> grounds; 5) for failure to join a necessary party; and 6) pursuant to Rule 12(f). Finally, they intend to ask the Court to abstain from adjudicating State Farm's claim for declaratory judgment. As discussed below, the relief sought by defendants is not supported in fact or law.

First, defendants' contention that a subset of claims should be dismissed on limitations grounds is baseless. The statute of limitations for a civil RICO claim is four years. <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 156 (1987). The period runs from the date when a plaintiff discovers or reasonably should have discovered his or her injury. <u>Rotella v. Wood</u>, 528 U.S. 549, 555-560 (2000). "The determination of that date is a question of fact." <u>Schwab v. Philip Morris USA, Inc.</u>, No. CV-04-1945 (JBW), 2005 WL 2467766 at *1 (E.D.N.Y., Oct. 6, 2005). Under New York law, claims for unjust enrichment are governed by the six-year statute of limitations set out in CPLR § 213(1). <u>Elliott v. Qwest Comm. Corp.</u>, 808 N.Y.S.2d 443, 444-45 (App. Div. 3rd Dep't 2006). Common law fraud claims are governed by CPLR § 213(8) which allows claims within "the greater of six years from the date the cause of



The Honorable Eric N. Vitaliano
May 3, 2007
Page 2

action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." State Farm's Complaint has specifically invoked the discovery rule here, Complaint ¶ 37, which would extend the period. The statute of limitations is an affirmative defense which defendants must plead and prove. Schwab, 2005 WL 2467766 at *2. Accordingly, it is not an appropriate issue to resolve on a motion to dismiss. See Newman v. Wanland, 651 F. Supp. 20, 22-23 (N.D. Ill 1986) (abrogated on other grounds) (holding in civil RICO context that "question of when plaintiffs should have known of the fraud raises factual issues which . . . requires denial of defendants' motion to dismiss"); Saphir Int'l, SA, v. UBS Painewebber Inc., 807 N.Y.S.2d 58, 59-60 (App. Div. 1st Dep't 2006) (application of the discovery rule under CPLR § 213(8) "involves a mixed question of law and fact"); Topps Co., Inc. v. Cadbury Stani S.A.I.C., 380 F.Supp.2d 250, 259 (S.D.N.Y. 2005) (applying CPLR § 213(8) and stating "The better practice is to allow the defense to stand until trial." (internal quotation marks and citation omitted)).

Second, State Farm does not seek to recover damages from defendants for payments made prior to April 4, 2002 on the theory that the PC defendants were fraudulently incorporated.

Third, defendants incorrectly contend that State Farm may not affirmatively seek to recover payments to defendants for medically unnecessary claims unless lack of medical necessity was raised in a timely denial of each individual No-Fault claim. The PC/Elzanaty defendants rely on the decision in Allstate Ins. Co. v. Valley Phys. Med. & Rehabilitation, P.C., 475 F. Supp.2d 213 (E.D.N.Y. 2007), but do not note that the plaintiffs there have sought reconsideration and to certify the Valley decision for an interlocutory appeal. The decision in Valley is incorrect because: (1) neither the plain language nor legislative history of the No-Fault Law supports the ruling in Valley, (2) the ruling is inconsistent with New York courts and the New York Department of Insurance that have rejected the preclusive effect imposed by the Valley Court, (3) Valley's interpretation of the No-Fault Law directly conflicts with other State statutes, (4) Valley misinterpreted and misapplied the cases it relied upon, and (5) Valley sets a standard that on its face could never be applied and conflicts with precedent of the New York State Court of Appeals. State Farm's claims are not barred here. E.g., Allstate Ins. Co. v. Belt Parkway Imaging, P.C., Index No. 600509/03 (Dec. 22, 2004, Sup. Ct. N.Y. Co.) at p. 7 (Moskowitz, J.) (holding that affirmative fraud recovery action based on quality of scans or accuracy of readings would not be precluded by N.Y. Ins. Law § 5106 even though insurer did not object within 30-day period) (copy annexed hereto as Exhibit A); State Farm Mutual Auto Ins. Co. v. Kalika, No. 04-CV-4631 (E.D.N.Y.) (Report and Recommendation of Magistrate Judge Pollack adopted by Judge Amon on March 31, 2006) (same) (copy annexed hereto as Exhibit B).

Fourth, defendants incorrectly contend that a No-Fault arbitration award in an individual claim for $2,423 could have a res judicata effect in this action where State Farm seeks more than $1,750,000. Res judicata, among other things, requires an identity of claims and parties or their privies. Ramirez v. Brooklyn Aids Task Force, 175 F.R.D. 423, 426 (E.D.N.Y. 1997), aff'd, 164



The Honorable Eric N. Vitaliano
May 3, 2007
Page 3

F.3d 619 (2d Cir. 1998). It does not apply where the initial forum was not empowered to award the full measure of relief sought in the subsequent litigation. Davidson v. Capuano, 792 F.2d 275, 281-82 (2d Cir. 1986). Small No-Fault arbitrations cannot preclude the matters in dispute here, for instance, whether State Farm is entitled to treble damages for defendants' operation of a RICO enterprise through a pattern of racketeering activity. The award submitted by defendants did not even consider whether the single PC defendant there was fraudulently incorporated.

Fifth, without identifying any supposedly necessary parties, defendants incorrectly seek to dismiss the Complaint for failure to join them. If defendants plan to assert that patients are necessary parties, they are wrong. In order to seek payment from State Farm, the PC Defendants represented that they had obtained an assignment of insurance benefits from patients. Under the No-Fault Law, upon assignment, the individual patients divested themselves of their claim rights and the PC defendants became precluded from seeking recourse from patients for nonreimbursement. Careplus Med. Supply, Inc. v. Citiwide Auto Leasing, Inc., No. 86041/2003, 2005 WL 763232 at *2, (Kings Cty. Civil Court, March 29, 2005) ("assignors lost all control over the claims for first-party no-fault benefits when [they] assigned the claims"); NYS Department of Insurance Opinion Letter, May 12, 2006 ("a health care provider who has accepted a no-fault assignment of benefits from a no-fault claimant may not pursue the patient directly") (copy annexed hereto as Exhibit C). Patients are not necessary parties under Rule 19.

Sixth, defendants incorrectly request to move pursuant to Rule 12(f) without identifying any part of the Complaint which they claim should be stricken. The request has no merit.

Finally, without identifying any relevant state court proceeding, defendants intend to ask this Court to abstain from adjudicating State Farm's claim for a declaratory judgment. Even a cursory review of the factors that inform the abstention analysis reveals the request is baseless: "(1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; . . . and (9) choice of law." Travelers Indem. Co. v. Philips Elec. N. America Corp., No. 02 Civ. 9800 (WHP), 2004 WL 193564, (Feb. 3, 2004 S.D.N.Y.) (nonexclusive factors). For instance, defendants have identified no state proceeding where there is an identity of parties and where the issues and relief sought are the same. See National Union Fire Ins. Co. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). The request is a non-starter.

Pawlowski's and Burke's requests are barred for additional reasons. Judge Go has ordered the claims against defendant Pawlowski stayed based upon Pawlowski's bankruptcy. Having obtained a stay of these proceedings, defendant Pawlowski improperly requests permission to move to dismiss here. Having already filed an answer in this matter, to the extent that Burke seeks to move on a ground not enumerated in Rule 12(h)(2) and not preserved as a defense, he is precluded from doing so. Further, Burke's request to file any motion after the PC/Elzanaty Defendants move is not an orderly way to proceed. Defendants' applications are meritless.



The Honorable Eric N. Vitaliano
May 3, 2007
Page 4

Respectfully submitted,

Keir N. Dougall

Attachments

cc:  All Counsel (Via ECF w/attachments)

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 3
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALLSTATE INSURANCE COMPANY, NATIONAL-BEN
FRANKLIN INSURANCE COMPANY OF ILLINOIS, THE
CONTINENTAL INSURANCE COMPANY, FIREMEN'S          Index No. 600509/2003
INSURANCE COMPANY OF NEWARK, NEW JERSEY,
THE BUCKEYE UNION INSURANCE COMPANY, THE
GLENS FALLS INSURANCE COMPANY, BOSTON OLD
COLONY INSURANCE COMPANY, and THE FIDELITY
& CASUALTY INSURANCE COMPANY OF NEW YORK,

                                    Plaintiffs,

          - against -                                    **DECISION & ORDER**

BELT PARKWAY IMAGING, P.C., DIAGNOSTIC IMAGING,
P.C., METROSCAN IMAGING, P.C., PARKWAY MRI, P.C.,
PARKWAY MAGNETIC RESONANCE IMAGING, INC.,
METROSCAN RESONANCE IMAGING, INC., HERBERT
RABINER, M.D., JAY KATZ, VLADIMIR SHTRAKHMAN,
JOHN DOES 1-20, and ABC CORPS. 1-20,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**KARLA MOSKOWITZ, J.:**

    Plaintiffs move for an order:  (1) deeming their amended complaint served upon

defendants Belt Parkway Imaging, P.C., Diagnostic Imaging P.C., Metroscan Imaging, P.C., and

Parkway MRI, P.C., pursuant to CPLR 3025 (a), and directing the defendants to answer the

amended complaint; (2) vacating any judgment entered in favor of defendants Herbert Rabiner,

M.D., Jay Katz, Vladimir Shtrakhman, Metroscan Resonance Imaging, Inc., and Parkway

Magnetic Resonance Imaging, Inc., and granting plaintiffs leave to serve the amended complaint

upon these defendants, pursuant to CPLR 3025 (b), deeming the amended complaint served upon

these defendants, and directing them to answer the amended complaint; and (3) clarifying the

Court's March 15, 2004 Decision and Order (Prior Decision), to confirm that the court has not

dismissed any portion of plaintiffs' eighth cause of action[1] for declaratory judgment.

### Background

The facts and issues underlying this action are set forth in the Prior Decision.
Summarized, plaintiffs are insurance companies that participate in New York's no-fault
automobile insurance program. Plaintiffs seek to recover from defendants payments that they
made to defendants, pursuant to the no-fault program, for medical services that defendants
rendered to people covered under automobile insurance policies that plaintiffs issued. Plaintiffs
contend that they are entitled to recover the payments that they made, because defendants
violated various statutes pertaining to the organization of medical corporations and because of
fraudulent billing.

The "PC Defendants" include Belt Parkway Imaging, P.C., Parkway MRI, P.C.,
Diagnostic Imaging, P.C., and Metroscan Imaging P.C. The PC Defendants each purport to be a
New York medical professional corporation providing diagnostic testing and other patient
services, and their certificates of incorporation state that the owner is defendant Dr. Herbert
Rabiner, a New York State-licensed physician, but the real owner and principal shareholder is a
layperson -- defendant Jay Katz, with no health provider's license.

The "Management Company Defendants" include Parkway Magnetic Resonance
Imaging, Inc. and Metroscan Resonance Imaging, Inc. Katz owns the Management Company
Defendants, both of which contracted to provide management services to the PC Defendants.

The "Individual Defendants" include (1) Rabiner, (2) Katz, (3) Vladimir Shtrakhman, an

---

1 The complaint and the proposed amended complaint refer to the causes of actions
"Claims for Relief."

2

individual who allegedly conspired with Katz and others to pay remuneration (including

kickbacks, bribes, and rebates) in cash and in kind to induce referrals to the PC Defendants, and

(4) John Does 1-20, the names of which are not yet known to plaintiffs, who allegedly conspired

to, and assisted in, the fraudulent, improper and unlawful conduct that the complaint alleges.

The "ABC Corp. Defendants" include additional business entities, the names of which are

not yet known to plaintiffs, that conspired to, and assisted in, the fraudulent, improper and

unlawful conduct that the complaint alleges.

Plaintiffs also allege that, in violation of Section 1507 of the Business Corporation Law,

Rabiner has sold, or lent the use of his name and medical license, to Katz to form medical

corporations in Rabiner's name, so that Katz could ostensibly own or control medical practices,

profit from them, bill no-fault insurers for medical services, and, in so doing, facilitate fraudulent

billing practices. Allegedly, once Rabiner fraudulently formed the PC Defendants with Katz, he

did not have the type of involvement in those entities that would be expected of a real owner.

Plaintiffs also allege that the PC Defendants regularly submitted no-fault claims to the

plaintiffs, falsely representing that they were valid medical professional corporations. Plaintiffs

paid substantial amounts of money to the PC Defendants based upon their justifiable and good

faith reliance that the PC Defendants comported with applicable statutes and administrative

regulations governing the provision of health services. In addition, defendants' fraudulent

conduct encompassed improper multiple billings and the providing of improper, unwarranted, or

medically unreliable testing.

Plaintiffs claim further that defendants implemented a scheme to provide financial

kickbacks to medical providers in exchange for referrals to the PC Defendants for diagnostic

3

testing.  Plaintiffs assert that certain nonparty individuals pled guilty to enterprise corruption in connection with kickbacks the PC Defendants made.

In the Prior Decision, the Court granted Motion Sequence Number 002 in its entirety, dismissing the complaint against defendants Parkway Magnetic Resonance Imaging, Inc., Metroscan Resonance Imaging, Inc., Jay Katz, and Vladimir Shtrakhman, and granted Motion Sequence Number 003, to the extent of dismissing the first, second, and seventh causes of action and dismissing the complaint as against Rabiner.

Plaintiffs assert that the proposed amended complaint recognizes that the Prior Decision is "controlling law of the case" as to the portion of plaintiffs' first cause of action (common law fraud) relating to defendants' lack of standing, the second cause of action (General Business Law § 349), and with respect to the scope of plaintiffs' Public Health Law § 238 claims (third through sixth causes of action).  Plaintiffs state that the proposed amended complaint only retains these claims to preserve plaintiffs' appellate rights.  Thus, they assert, the only issue here pertains to the amended fraudulent billing allegations contained in the first cause of action and the request for clarification of the eighth cause of action.

The PC Defendants argue that, because the proposed amended complaint only seeks to amend a dismissed cause of action, plaintiffs are no longer entitled to amend as of right.  The PC Defendants also argue, as do the "Non-PC Defendants," that leave to amend should be denied, because the proposed amended complaint does not rectify the pleading problems of the original complaint.

4

### Discussion

*Amendment of the First Cause of Action*

As a preliminary matter, as to the PC Defendants, plaintiffs are entitled to amend their

pleading once, without leave of court, because the time period in which these defendants have to

respond to the original complaint has not yet expired (CPLR 3025 [a]; *Johnson v Spence*, 286

AD2d 481). It is undisputed that plaintiffs cannot amend the complaint as of right against the

Non-PC Defendants, because the complaint was dismissed as to them, and, therefore, a

responsive pleading is no longer required (*see* CPLR 3025 [a] ["A party may amend his pleading

once without leave of court within twenty days after its service, or at any time before the period

for responding to it expires, or within twenty days after service of a pleading responding to it."]).

Even if defendants were correct in asserting that plaintiffs do not have the right to amend

the complaint as to the previously dismissed cause of action, the Court grants them leave to do so

regarding the billing fraud component of the first cause of action. The amended complaint

contains sufficient particularity regarding the allegations of billing fraud, including the

performance of unnecessary services, as part of an alleged scheme among the PC Defendants and

other nonparty entities (*see e.g.*, ¶¶ 98-99, 150-155). The complaint describes the interlocking

relationship of the defendants and nonparties, such as the "Bronx Clinic," Tatiana Rybuk, and the

"Rybuck PCs," and alleges, in adequate detail, that defendants participated in the fraud

(*Tompkins PLC v Bangor Punta Consol. Corp.*, 194 AD2d 493, *lv dismissed* 82 NY2d 888).

Additionally, the allegations in the proposed amended complaint are broad enough to encompass

the Non-PC Defendants (*see e.g.*, ¶¶ 79-85, 130-135, 146-155).  Contrary to defendants'

assertion, the record contains evidence indicating that the individual defendants were involved in

5

the medical services at issue (*see e.g.,* Exhibit L to Reply Affidavit of William J. Natbony, Esq.).

Unlike the conclusory allegations pertaining to billing fraud in the original complaint, the allegations are now sufficient to withstand this motion to dismiss addressed to the pleading (*Goldberg v Lee Express Cab Corp.*, 227 AD2d 241). The court should not interpret CPLR 3016 (b) so strictly to strike an otherwise valid cause of action where it may be impossible for the plaintiff to state in detail the circumstances constituting the fraud (*Oxford Health Plans (N.Y.) v Bettercare Health Care Pain Mgt. & Rehab PC*, 305 AD2d 223). This is particularly true here where the plaintiffs, insurance companies reimbursing covered persons, were not directly involved in the transactions constituting the alleged fraud.

Moreover, although much of the specificity in the amended complaint pertains to alleged unlawful kickbacks, that claim does not duplicate the third through sixth causes of action, because the complaint also alleges, in specificity, that defendants performed unnecessary services as part of the kickback scheme.

Further, plaintiffs have attached exhibits to the moving papers, as well as affidavits of two doctors that purport, for purposes of this motion addressed to the pleadings, to establish merit (*see e.g.,* Affidavits of Lawrence K. Spitz, M.D. and Mark Mishkin, M.D.). Plaintiffs' counsel also represents that he verified the complaint, pursuant to CPLR 3020 (d), because plaintiffs are located outside the county where his office is located. Counsel represents that he has specific personal knowledge of many of the allegations based upon his participation in the due diligence preparation of the complaint, and that many of the allegations are based, in part, upon publicly available documents that counsel obtained (Reply Memorandum, at 23). Plaintiffs also submitted the affidavit of L. Dennis Chambers, an "Analyst" with the "Special

6

Investigations Unit" of plaintiff Allstate Insurance Company, that, together with the exhibits attached to the affidavit, support the allegations of fraud for the purpose of demonstrating a meritorious claim.

Defendants also argue that the claims regarding the quality of scans or the accuracy of readings are untimely, because plaintiffs failed to object within a 30-day period Insurance Law § 5106 (a) and 11 NYCRR 65.15 (g) (3) require. Defendants acknowledge that, in the Prior Decision, the Court "suggested that allegations of fraud would not be precluded by the 30-day rule," but assert that the Court did not opine on the applicability of the 30-day rule to claims relating to the quality of scans or the accuracy of readings. This assertion is unpersuasive, however, because the proposed amended complaint cites the accuracy of the diagnostic testing as indicative of fraud.

### Clarification of Eighth Cause of Action

The eighth cause of action, asserted against the PC Defendants, seeks a declaration that their activities are unlawful and that plaintiffs have no obligation to pay pending, previously denied and future no-fault claims of any of the PC defendants.

On the prior motion, defendants argued that plaintiffs are not entitled to declaratory relief, because the alleged conduct does not obviate plaintiffs' obligation under the no-fault law, and the scope of the declaration plaintiffs sought was overly broad. In the Prior Decision, the Court stated that defendants had not moved for dismissal of the third through sixth causes of action, alleging a violation of the Public Health Law, and, thus, defendants had not established why the declaration plaintiffs sought could not pertain to the claims in those third through sixth causes of action. Hence, dismissal of this cause of action would be premature.

7

Plaintiffs argue that the Court should clarify the scope of the eighth cause of action. No clarification is necessary. According to the Prior Decision, to the extent that the eighth cause of action for declaratory relief related to the surviving causes of action, *i.e.*, the third through sixth causes of action (none of which the Court had dismissed), the claim stated a cause of action. It appears that, in effect, plaintiffs are seeking expansion, rather than clarification, of the scope of this cause of action by deeming it applicable to the portions of the complaint that the Court had dismissed (*see* Affidavit of William J. Natbony, Esq., at ¶ 30).

Accordingly, it is

ORDERED that plaintiffs' motion is granted to the extent of (1) deeming their amended complaint served upon defendants Belt Parkway Imaging, P.C., Diagnostic Imaging P.C., Metroscan Imaging, P.C., and Parkway MRI, P.C., pursuant to CPLR 3025 (a), and directing these defendants to answer the amended complaint within 20 days after service of their order with notice of entry; (2) vacating any judgment entered in favor of defendants Herbert Rabiner, M.D., Jay Katz, Vladimir Shtrakhman, Metroscan Resonance Imaging, Inc., and Parkway Magnetic Resonance Imaging, Inc., granting plaintiffs leave to serve the amended complaint upon those defendants, pursuant to CPLR 3025 (b), deeming the amended complaint served upon those defendants, and directing them to answer the amended complaint within 20 days after service of the order with notice of entry.

Dated: December 27, 2004

FILED

JAN - 3 2005

NEW YORK
COUNTY CLERK'S OFFICE

ENTER:

_____
J.S.C.

8

**EXHIBIT B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                        **REPORT   AND
                        RECOMMENDATION**

                    Plaintiff,

                        04 CV 4631 (CBA)

          - against -

VALERY KALIKA, M.D., et al.,

                   Defendants.
-------------------------------------------------------X

      On October 27, 2004, plaintiff State Farm Mutual Automobile Insurance Company

("State Farm") commenced this action against Valery Kalika, M.D., P.C. ("Kalika, P.C."), and

eight individually named physicians (the "prescribing physicians"),[1] seeking to recover payments

made to the defendants and others based on automobile insurance policies issued in accordance

with New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §

5101 et seq., and the regulations promulgated thereunder, 11 N.Y.C.R.R. § 65 et seq. (the "No-

Fault laws").  Plaintiff alleges that the defendants submitted thousands of fraudulent charges for

unnecessary ultrasound tests performed on individuals who were injured in automobile accidents

and who were eligible for coverage under State Farm's insurance policies.  Plaintiff asserts

claims based on common law fraud, unjust enrichment and the Racketeering Influenced and

Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 et seq.  Plaintiff also seeks a declaratory

---

[1]The named prescribing physicians include Valery Kalika, M.D., Adeliya Issakorna
Akpan, M.D., John Ravikanth Gavini, M.D., Yury George Krementsor, M.D., Harry Montazem,
M.D., Robert M. Mooney, M.D., Alexander Tverskoy, M.D. and Richard Yaldizian, M.D. Since
the filing of the Complaint, Dr. Montazem has passed away and plaintiff has settled with Dr.
Mooney.

judgment pursuant to 28 U.S.C. § 2201, declaring that State Farm is not obligated to pay Kalika, P.C. for claims not yet paid.

By Notice of Motion, dated February 4, 2005, Dr. Kalika and Kalika, P.C. (collectively, the "Kalika defendants") move to dismiss the Complaint, arguing that since the relationship between State Farm and the prescribing physicians is governed by the No-Fault law, plaintiff's claims are barred by the statutory provision that requires disputes as to billings to be raised within 30 days or they are waived. See N.Y. Ins. Law § 5106. Defendants also assert that: (1) plaintiff's equitable claims are barred by laches; (2) plaintiff's declaratory judgment action fails as a matter of law; (3) plaintiff's fraud claims fail to state a claim under Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure; and (4) plaintiff has failed to satisfy the pleading requirements for the RICO claim and the unjust enrichment claim. Finally, defendants urge the Court to decline to exercise supplemental jurisdiction over plaintiff's state law claims.

On May 27, 2005, the motion to dismiss was referred to the undersigned to prepare a Report and Recommendation. For the reasons set forth below, it is respectfully recommended that defendants' motion to dismiss be denied.

## FACTUAL BACKGROUND

The Complaint alleges that beginning in October 2000 and continuing up through the date the Complaint was filed, defendants engaged in a fraudulent scheme to defraud State Farm by submitting "thousands" of fraudulent charges for ultrasound tests which plaintiff alleges were medically unnecessary. (Compl. ¶¶ 1, 6).[2] Plaintiff alleges that these medically unnecessary

---

[2]Citations to "Compl." refer to plaintiff's Complaint, dated October 27, 2004.

2

ultrasound procedures were prescribed purportedly for diagnostic purposes in connection with the treatment of individuals who had been injured in automobile accidents and who were eligible to collect no-fault benefits under State Farm insurance policies. (Id. ¶¶ 1–2).

Under the No-Fault laws, insurers are required to reimburse insureds for necessary medical and other services incurred as a result of an automobile accident. N.Y. Ins. Law § 5106. The law permits insureds to assign their rights to no-fault benefits directly to the medical providers ("Assignee Providers"), who may then submit claims for reimbursement directly to the insurer. (Compl. ¶ 9).

Plaintiff alleges that in this case, the prescribing physicians prescribed medically unnecessary ultrasound tests to State Farm insureds and thereafter Dr. Kalika submitted charges to State Farm through Kalika P.C. as the Assignee Provider. (Id. ¶¶ 2–4). State Farm reviewed the claims, which appeared to be facially valid, and paid the claims within the 30 day period prescribed by law.[3] (Id. ¶ 25).

State Farm subsequently determined that the payments were fraudulently induced by misrepresentations made by the Kalika defendants as to the need for these tests. (Id. ¶¶ 10, 17, 22). Plaintiff alleges that the Kalika defendants not only misrepresented that the tests were needed when they were not, but they also used false billing codes to disguise the nature of the tests performed and misrepresented the seriousness of the insureds' conditions to induce payment. (Id. ¶ 22). Plaintiff further alleges that the Kalika defendants misrepresented that every insured who received a kidney ultrasound had blood in their urine when they did not, and that each of Dr. Kalika's interpretive reports contain the same boilerplate treatment plan which

---

[3]See discussion infra at 4–10.

3

included the following language: "'Please correlate clinically.  Recommend repeat examination following therapy, if needed.'" (Id. ¶¶ 22–23).

In the first count of its Complaint, State Farm seeks an order stating that it is not required to pay Kalika, P.C. for claims not yet paid.  The remaining four counts allege claims of substantive RICO violations, RICO conspiracy, common law fraud and unjustment enrichment.  The Kalika defendants move to dismiss the Complaint in its entirety.

DISCUSSION

A. The 30-Day Rule

The Kalika defendants contend that plaintiff's claims should be dismissed because under the No-Fault laws, an insurer is barred from disputing a claim unless the claim is rejected within thirty days after the claim has been submitted and verified (the "30-day Rule").  Plaintiff argues that the 30-day Rule does not apply where, as here, the insurer is attempting to recoup payments made as a result of fraud.

New York Insurance Law § 5106 provides that No-Fault benefits are "overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." N.Y. Ins. Law § 5106(a).  The regulations applicable to this statutory section similarly state that "[w]ithin 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part."  N.Y. Comp. Codes R. & Regs. tit. 11 § 65-3.8(c) (2003).  See also Presbyterian Hosp. v. Maryland Cas. Co., 90 N.Y.2d 274, 278–9, 683 N.E.2d 1, 660 N.Y.S.2d 536 (1997).

Defendants argue that even though plaintiff's claims of fraud may be properly asserted as

4

defenses to the invoices at the time the invoices were submitted, plaintiff's failure to raise those

defenses and deny the claims within the thirty-day period prescribed by the statute and

regulations precludes them from raising those claims at this time. (Defs.' Mem.[4] at 7).

Defendants cite numerous cases which hold that an insurer waives the right to object to a no-fault

claim if the objection is not timely made within thirty days. See, e.g., Presbyterian Hosp. v.

Maryland Cas. Co., 90 N.Y.2d 274, 683 N.E.2d 1, 660 N.Y.S.2d 536 (rejecting defense that the

insured was intoxicated at the time of the accident,[5] which would have relieved the insurer of its

obligation to pay no-fault benefits, and precluding the insurer from interposing a statutory

exclusion defense based on the insurer's failure to deny the claim within 30 days as required by

the No-Fault law). As the court pointed out, "No-fault reform was enacted to provide prompt

uncontested, first-party insurance benefits. . . . [t]hat is part of the price paid to eliminate

common-law contested lawsuits." 90 N.Y.2d at 285 (internal citation omitted). See also Bonetti

v. Inegon Nat'l Ins. Co., 269 A.D.2d 413, 414, 703 N.Y.S.2d 217 (2d Dep't 2000); Mt. Sinai

Hosp. v. Triboro Coach, Inc., 263 A.D.2d 11, 16, 699 N.Y.S.2d 77 (2d Dep't 1999); Metro

Medical Diagnostics, P.C. v. Lumbermens Ins. Co., 189 Misc. 2d 597, 598-99, 734 N.Y.S.2d

368, 369 (Sup. Ct. 2001). Defendants argue that the 30-day Rule precludes plaintiff from

asserting any of its common-law claims in this action, including the RICO claims and claims

based on fraud and unjust enrichment. (Defs.' Mem. at 7).

---

[4]Citations to "Defs.' Mem." refer to the Kalika Defendants' Memorandum of Law in Support of Motion to Dismiss the Plaintiff's Complaint, dated February 4, 2005.

[5]The court noted that at the time the insurer received the hospital's request for payment, the insurer "'already had reason to believe that applicant was operating a motion vehicle while intoxicated,'" and yet the insurer made no request for verification or proof as allowed by the statute. Id. at 279-80.

5

However, as plaintiff correctly points out, there is no mention in either New York

Insurance Law Section 5106 or the applicable regulations, N.Y. Comp. Codes R. & Regs. tit. 11

§ 65-3.8(c), that precludes an affirmative suit such as this to recover payments made as a result of

fraud discovered after the expiration of the 30-day period. (Pl's. Mem.[6] at 5–6). Moreover, the

New York State Department of Insurance (the "DOI"), which is authorized to promulgate

regulations and issue statutory interpretations, see N.Y. Comp. Codes R. & Regs. tit. 11 §§ 2.1,

2.5, has rendered an opinion that where fraud is involved, a violation of the 30-day Rule does not

prevent the initiation of a civil action. See DOI Opinion (Nov. 29, 2000). The DOI Opinion

specifically states that the "New York No-Fault reparations law . . . is in no way intended and

should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently

obtained benefits from a claimant, where such action is authorized under the auspices of any

other statute or common law." Id. The opinion further notes that to interpret the 30-day Rule

otherwise would result in "higher premiums based upon the resultant increased costs arising from

the fraudulent actions." Id. Courts have held that the DOI has "broad power to interpret, clarify

and implement the legislative policy," and the DOI's interpretation, "if not irrational or

unreasonable, will be upheld in deference to [its] special competence and expertise unless it runs

counter to the clear wording of a statutory provision." N.Y. Pub. Interest Research Group, Inc. v.

N.Y. State Dep't of Ins., 66 N.Y.2d 444, 448 488 N.E.2d 466 , 469, 497 N.Y.S.2d 645, 648

(1985).

Several courts, including this Court, have considered the language and intent of Section

5106 and reached a conclusion similar to the interpretation issued by the DOI. Indeed, Justice

---

[6]Citations to "Pl's. Mem." refer to Plaintiff's Memorandum of Law in Opposition to
Motion to Dismiss, dated April 15, 2005.

6

Gammerman, in <u>Progressive Northeastern Insurance Co. v. Advanced Diagnostic & Treatment Medical, P.C.</u>, explicitly rejected the argument that Section 5106 is a bar to an action brought by an insurer to recoup benefits paid pursuant to fraudulent claims. 226 N.Y.L.J. at 18 (Sup. Ct. N.Y. Cty. Aug. 2, 2001) (holding that claims of common law fraud and unjust enrichment were not barred "where, as here, the insurer has already paid those benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims"). This Court reached the same conclusion, noting in *dicta* its "skepticism that an insurer is precluded from bringing an actionable fraud claim to recover benefits previously paid." <u>State Farm Mut. Auto Ins. Co. v. Mallela</u>, 175 F. Supp. 2d 401, 417 n.15 (E.D.N.Y. 2001) (Sifton, J.). The court explained:

> That the court would preclude an insurer from raising most defenses, including most frauds, as a defense to a claim where the defense is not timely raised [under the 30-day Rule] in order to ensure the timely payment of claims *does not imply* that [this Court] would preclude an insurer from bringing suit at some later point, after the insured received his benefits, on the basis of actionably fraudulent behavior.

<u>Id.</u>

In <u>Dermatossian v. New York City Transit Authority</u>, the New York Court of Appeals held that when a challenge to the legitimacy of a claim is raised in an action brought after benefits have been paid, "the fact of payment cannot in any sense be taken as a concession that the [No-Fault] claim is legitimate." 67 N.Y.2d 219, 224, 492 N.E.2d 1200, 1203, 501 N.Y.S.2d 784, 787 (1986). The court explained that if payment was construed as a waiver, it would work against the primary purpose underlying the No-Fault Law - "to assure claimants of expeditious compensation for their injuries through prompt payment of first-party benefits without regard to fault and without expense to them." <u>Id.</u> at 224–25, 492 N.E.2d at 1203, 501 N.Y.S.2d at 787.

7

Defendants have cited several cases to support their interpretation of Section 5106 requiring the insurer to issue a denial on the basis of fraud within the 30-day period or be forever barred. Careful examination of these cases demonstrates that none of these cases deal directly with the issues presented by the instant case; rather, they are either distinguishable from the case at hand or are inapposite to the situation here. Indeed, the majority of the cases cited by defendants did not involve an action brought after payment had already been made, as in this case, but rather involved actions to obtain payment of benefits where the insurer had failed to either pay or deny the claim within the 30-day limit. See, e.g., Bonetti v. Integon Nat'l Ins. Co., 269 A.D.2d 413, 703 N.Y.S.2d 217 (2d Dep't 2002) (holding, in action seeking benefits, that defense that injury did not arise from covered incident was precluded where not timely raised within 30-day period); Mt. Sinai v. Triboro Coach Inc., 263 A.D.2d 11, 17, 699 N.Y.S.2d 77 (2d Dep't 1999) (holding that defense that injury did not arise from covered incident could not stand where insurer neither paid or denied claim within 30-day period, nor did it request additional information); Loudermilk v. Allstate Ins. Co., 178 A.D.2d 897, 577 N.Y.S.2d 935 (3d Dep't 1991) (holding that insurer's denial was untimely as a matter of law if the claim was not paid or denied within 30 days of claim, even though plaintiff was intoxicated at the time of the accident); Yellin v. Liberty Mut. Ins. Co., 192 Misc. 2d 285, 288–89, 746 N.Y.S.2d 244, 247 (Sup. Ct. Queens Cty. 2002) (holding that where the claim was not timely rejected within 30-day period, insurer was precluded from denying a claim for payment based on the defense that the services were improperly delegated to another service provider); Vinings Spinal Diagnostic, P.C. v. Liberty Mutual Ins. Co., 186 Misc. 2d 287, 717 N.Y.S.2d 466 (Sup. Ct. Nass. Cty. 2000) (citing Central Gen. Hosp. v. Chubb Group of Ins. Cos., 90 N.Y.2d 195, 681 N.E.2d 413, 659 N.Y.S.2d

8

246 (1997) and holding that where denial was not made within 30 days, defendant may only come forward with facts to show there was no coverage for the person or event). Cf. Liberty Queens Med., P.C. v. Tri-State Consumer Ins., 188 Misc. 2d 835, 729 N.Y.S.2d 882 (Sup. Ct. Nass. Cty. 2001) (holding that one-day deviation from 10 day period to request additional information did not serve to deprive insurer entirely of opportunity to deny claim; it simply reduces the time by the period of delinquency).

None of these cases directly addresses the question presented when an insurer timely pays a claim only to discover later that the claim was fraudulent and that no monies were actually owed. However, the New York Court of Appeals has made it clear that the preclusion rule of Section 5106 does not apply to a defense that there was no coverage at all. See Presbyterian Hosp. v. Maryland Cas. Co., 90 N.Y.2d at 283, 683 N.E.2d at 6, 660 N.Y.S.2d at 541 (stating rule); Central Gen. Hosp. v. Chubb Group, 90 N.Y.2d at 199, 681 N.E.2d at 418, 659 N.Y.S.2d at 248 (same); see also Metro Medical Diagnostics, P.C. v. Eagle Ins. Co., 293 A.D.2d 751, 741 N.Y.S. 284 (2d Dep't 2002) (holding insurer not precluded from raising defense of fraud in coverage action despite failure to timely deny claim, because collision at issue was a deliberate event in furtherance of an insurance fraud scheme and thus it was not a "covered accident"); Mt. Sinai Hosp. v. Triboro Coach Inc., 263 A.D.2d at 18, 699 N.Y.S.2d at 82 (summarizing line of cases holding that "the preclusion remedy did not apply to a defense of no coverage at all"). These cases suggest that there are exceptions to the 30-day Rule that would apply to allow the insurer to raise certain defenses even when the 30-day Rule has been violated, in order to prevent payment when there was no coverage under the policy or where the injury did not arise from the incident. Certainly, where an insurer complies with the 30-day Rule and makes a timely

9

payment, there appears to be no policy which would seek to protect an insured or health care provider who has submitted false claims as part of a scheme to defraud the insurer.

Having considered the statutory language and the policies behind the No-Fault law, this Court agrees with the interpretation of Section 5106 expressed not only by the DOI but by Justice Gammerman in the Progressive case and by Judge Sifton in Mallela. The policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit. Although defendants contend that the 30-day Rule simply requires that an insurer raise such an issue within the 30 day period through a proper denial of the fraudulent claim, often the nature of fraud is such that it is not easily discovered within that short period of time. Indeed, the New York legislature, in providing for a six year statute of limitations for fraud actions, has recognized the difficulty often encountered in unearthing a fraudulent scheme. See N.Y. C.P.L.R. § 213(8). Here, plaintiff has alleged that the Kalika defendants took specific steps in an effort to conceal their fraudulent scheme and made false representations to induce payment of the fraudulent claims. Thus, as a consequence, plaintiff timely paid benefits on these claims, only to discover later the full nature and extent of the fraud after hundreds of thousands of dollars had been paid for allegedly unnecessary medical services.

Under these circumstances, the Court respectfully recommends that defendants' motion to dismiss for failure to comply with the 30-day Rule be denied.

10

B. Laches

The Kalika defendants also argue that State Farm's claims are barred by laches,

contending that the insureds' no-fault claims accrued in mid-2001, but this action was not

initiated until 2004. (Defs.' Mem. at 14–15). State Farm argues that laches is an affirmative

defense that must be raised in the answer and requires a factual inquiry, making it inappropriate

for a motion to dismiss. (Pl.'s Mem. at 12). Moreover, since laches serves as a bar to equitable

relief, State Farm argues that it does not apply to State Farm's claims of RICO or fraud, which

are governed by statutorily enacted statutes of limitation. (Id. at 13). Finally, State Farm

contends that any delay in the discovery of the wrongdoing and commencement of this action

was due to the defendants' active concealment of the fraud. (Id.)

Laches[7] "is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty

of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" Brennan

v. Nassau Cty., 352 F.3d 60, 64 (2d Cir. 2003) (quoting Ikelionwu v. United States, 150 F.3d

233, 237 (2d Cir. 1998)); see also Liebowitz v. Elsevier Science Ltd., 927 F. Supp. 699, 704

(S.D.N.Y. 1996) (holding that "[l]aches is a party's unexcused and unreasonable delay in

asserting its rights and prejudice therefrom to another") (citations omitted). Laches is a doctrine

which has been "developed and designed to protect good-faith transactions against those who

have slept on their rights." Ewert v. Bluejacket, 259 U.S. 129, 138 (1922).

The first prong of the test requires that the court determine whether the delay was

reasonable, see Stone v. Williams, 873 F.2d 620, 625 (2d Cir.) (holding that plaintiff must show

"justified ignorance of facts" constituting cause of action), cert. denied, 493 U.S. 959, vacated on

---

[7]Defendants spell it "latches" but this appears to be a typographical error.

reh'g on other grounds, 891 F.2d 401 (2d Cir. 1989), cert. denied, 496 U.S. 937 (1990), or

whether the plaintiff had knowledge or reason to know of his legal rights and failed to act

diligently to pursue them.  See Liebowitz v. Elsevier Science Ltd., 927 F. Supp. at 704.  One

factor demonstrating reasonable delay is "fraudulent conduct on the part of the defendant," which

"may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to

equity because of mere lapse of time."  Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946).

        Under the second prong of the test, the party seeking to establish laches as a defense must

show that it has been prejudiced by the delay.  See Majorica, S.A. v. R.H. Macy & Co., Inc., 762

F.2d 7, 8 (2d Cir. 1985).  In determining whether there has been prejudice to the defendant,

courts consider, among others things, whether it would be inequitable because of the defendant's

reliance interest, see Holmberg v. Armbrecht, 327 U.S. at 396, Saratoga Vichy Spring Co., Inc. v.

Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980), or whether defendants have a "decreased ability . .

. to vindicate themselves [resulting from unavailable witnesses] or on account of fading

memories or stale evidence."  Stone v. Williams, 973 F.2d at 625.

        The law is clear, however, that "laches is an equitable defense, employed instead of a

statutory time-bar." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 190 (2d Cir. 1996).

Thus, laches may be raised as "a defense only against claims in equity and not at law,"

Liebowitz v. Elsevier Science Ltd., 927 F. Supp. at 704 (citing County of Oneida, N.Y. v. Oneida

Indian Nation of N.Y. State, 470 U.S. 226, 266 n.16 (1985) (stating that "application of the

equitable defense of laches in an action at law would be novel indeed")); United States v.

Gordon, 78 F.3d 781, 786-87 (2d Cir. 1996), and can not cut short statutorily enacted statutes of

limitation.  See Conopco, Inc. v. Campbell Soup Co., 95 F.3d at 190.  Thus, plaintiff's laches, if

                                                12

any, is not a bar to plaintiff's fraud claims or claim for damages under RICO, both of which are actions at law.

In this case, plaintiff's fraud claims are governed by the six-year statute of limitations for fraud set out in New York's Civil Practice Law and Rules. N.Y. C.P.L.R. 213(8). Under New York law, fraud actions accrue "from the time the plaintiff, or the person under whom the plaintiff claims, discovered the fraud, or could with reasonable diligence have discovered it." Id.

The statute of limitations for civil RICO claims is four years. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 156 (1987). The period of limitation for RICO action accrues, or begins to run, at the time that plaintiff discovered or should have discovered the RICO injury. Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 35 (2d Cir. 2002); Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 485 (E.D.N.Y. 1998).

Plaintiff alleges that defendants' actions began "as early as October 2000." (Compl. ¶ 6). As this case was filed on October 27, 2004, this action was brought well within the six year limitations period for fraud. Moreover, even if plaintiff's RICO claims were held to have accrued as of the date of the injury, plaintiff's claims would only be time-barred as to those claims which occurred prior to October 27, 2000. However, central to plaintiff's case is the argument that it was not possible to discover defendants' fraudulent acts at the time that they were committed. Thus, the statute of limitations would not have accrued at the date of injury, as this is not the date that plaintiff "discover[ed] or should have discovered the injury." In re Merrill Lynch Ltd. P'ships Litig. v. Merrill Lynch & Co., Inc., 154 F.3d 56, 58 (2d Cir. 1998). Rather, the accrual date occurred at a later date, which would clearly be within the four years prior to the date of filing. Thus, based on a review of defendants' submissions, the Court finds

13

that the fraud and RICO claims were brought in a timely fashion under the applicable limitations periods and dismissal of these claims on the basis of laches would be inappropriate.

Plaintiff's unjust enrichment claim sounds in equity. Thus, laches is a possible defense. However, the court must look to the applicable statute of limitations in determining whether laches may be applied. See Ikelionwu v. United States, 150 F.3d at 238 (noting that "[i]n an equity action, if the applicable legal statute of limitations has not expired, there is rarely an occasion to invoke the doctrine of laches and the burden remains on the defendant to prove all the elements of the defense"). Where a cause of action is governed by a statutory time-bar, that statute of limitations governs the time within which suit must be brought. See Holmberg v. Armbrecht, 327 U.S. at 395–96. If there is no limitations period set by statute for a particular claim, the court looks to the most analogous period. Conopco, Inc. v. Campbell Soup Co., 95 F.3d at 190. When a claim is brought within the applicable limitations period, "'the burden is on the defendant to show . . . circumstances exist which require the application of the doctrine of laches.'" Id. (quoting Leonich v. Jones & Laughlin Steel Corp., 258 F.2d 48, 50 (2d Cir. 1958)).

In New York, courts apply a six-year limitations period to claims of unjust enrichment, as set forth in New York Civil Practice Law and Rules Section 213(1). See Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 518 (2d Cir. 2001), cert. denied, 126 S. Ct. 621 (2005); N.Y. C.P.L.R. § 213(1). The cause of action for unjust enrichment accrues "upon occurrence of the wrongful act." Plitman v. Leibowitz, 990 F. Supp. 336, 337 (S.D.N.Y. 1998). As discussed supra, all alleged wrongful acts occurred within the limitations period. Thus, prior to the running of the statute of limitations, as here, the defendant bears the burden to show why laches should apply under the circumstances. At this juncture, where discovery is not yet complete and where it is

14

clear that plaintiff's unjust enrichment claim is well within the statute of limitations period, the Court finds that dismissal of these claims on the basis of laches is premature, but likely is an inappropriate remedy.

Dismissal of State Farm's claims on grounds of laches is also inappropriate under Rule 8(c) of the Federal Rules of Civil Procedure. The defense of laches is an affirmative defense which "properly should be raised in the defendant's answer and not upon a motion to dismiss." Karlen v. N.Y. University, 464 F. Supp. 704, 708 (S.D.N.Y. 1979); see Fed. R. Civ. P. 8(c); see also Deere & Co. v. MTD Prods., Inc., No. 00 CV 5936, 2001 WL 435613, at *2 (S.D.N.Y. Apr. 30, 2001); cf. Lennon v. Seaman, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999) (citing Karlen but noting that "when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss") (citations omitted). Dismissal on the basis of laches is also inappropriate where, as here, issues of fact exist. Deere & Co. v. MTD Prods., Inc., 2001 WL 435613 at *2; Karlen v. N.Y. Univ., 464 F. Supp. at 708. As the court in Lennon v. Seaman noted, "a ruling on the defendant's defense of laches would necessarily involve a fact-intensive analysis and balancing of equities that would require the Court to consider matters outside of the pleadings that are in dispute." 63 F. Supp. 2d at 439. In Lennon, the plaintiff alleged, among other things, that defendant actively attempted to conceal material information, thus causing the delay. Similarly, the plaintiff here alleges that the reason it did not commence this action sooner was because defendants took steps to fraudulently conceal their misconduct. Thus, the Court concludes that numerous issues of fact preclude the Court from considering defendants' defense of laches as to plaintiff's unjust enrichment claim at this time.

Accordingly, the Court respectfully recommends that as to the RICO and fraud claims, defendants' motion to dismiss for laches be denied with prejudice, and as to the unjust enrichment claim, defendants' motion to dismiss for laches be denied without prejudice as premature.

## C. The Fraud Claim

Defendants move to dismiss State Farm's fraud claim for failure to comply with Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

### 1) Failure to State a Case of Fraud under Rule 12(b)(6)

Defendants move to dismiss the fraud claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, based on plaintiff's failure to plead the elements of fraud as required under New York law. (Defs.' Mem. at 19–22).

When deciding a motion to dismiss a complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court should dismiss a complaint only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); accord Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71–72 (2d Cir. 1995). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996).

16

The Second Circuit has stated that in deciding a Rule 12(b)(6) motion, a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); accord Scheuer v. Rhodes, 416 U.S. at 236 (stating that "it is well established that . . . the allegations of the complaint should be construed favorably to the pleader"). In addition, the court must give plaintiff's claims "a liberal construction." Johnson v. N.Y. City Transit Auth., 639 F. Supp. 887, 891 (E.D.N.Y. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520–21 (1972)), judgment aff'd in part, vacated in part, 823 F.2d 31 (2d Cir. 1987). After construing plaintiff's claims liberally, a court may grant dismissal "only if it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997); accord Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996), cert. denied, 520 U.S. 1264 (1997).

Under New York law, a party claiming fraud must demonstrate five elements: 1) a material misrepresentation; 2) made by defendant knowing that it was false when made; 3) with the intent to defraud; 4) upon which plaintiff reasonably relies; and 5) which causes plaintiff injury. See Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (1996)); Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000).

### 2) The Fraud Claim - Rule 9(b)

The defendants also contend that the Complaint fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. (Defs.' Mem. at 20).

Rule 9(b) is an exception to the liberal pleading requirements of Rule 8 of the Federal

Rules of Civil Procedure. It requires that when a complaint alleges fraud, "the circumstances

constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); see Luce v.

Edelstein, 802 F.2d 49, 54 (2d Cir. 1986); Tuscano v. Tuscano, 403 F. Supp. 2d 214, 221

(E.D.N.Y. 2005). Specifically, the complaint must: "'(1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent.'" Shields v. Citytrust Bancorp, Inc.,

25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175

(2d Cir. 1993)). See also Carlucci v. Owens-Corning Fiberglass Corp., 646 F. Supp. 1486, 1489

(E.D.N.Y. 1986) (holding that among those "circumstances" that must be alleged with

particularity are the "time, place and contents of purportedly false representations, as well as the

identity of persons making such representations"). On the other hand, "[m]alice, intent,

knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P.

9(b). Thus, under the Rule, even though the requisite intent of the defendant need not be alleged

with great specificity, see Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994), the "actual

fraudulent statements or conduct and the fraud alleged must be stated with particularity." Chill v.

Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996); accord Gold v. Morrison-Knudsen Co., 68

F.3d 1475, 1476–77 (2d Cir. 1995), cert. denied, 517 U.S. 1213 (1996).

A plaintiff must also allege facts that give rise to a "strong inference of fraudulent intent"

either a) by "alleging facts to show that defendants had both motive and opportunity to commit

fraud, or b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d at 1128; see

18

also Barclay Arms, Inc. v. Barclay Arms Assocs., 144 A.D.2d 287, 288, 534 N.Y.S.2d 168, 169

(1st Dep't 1988) (noting that the practice of the New York courts to require specificity in the

pleading of fraud has been codified in N.Y.C.P.L.R. § 3016(b) because "the allegation of fraud

necessarily raises a question respecting the subjective intent informing the charged party's

conduct," which may be demonstrated through the objective circumstances of the fraud).

Thus, conclusory allegations of fraud are not sufficient under Rule 9(b), see id., and the

Second Circuit has held that a court should not allow allegations of fraud to stand unless a

plaintiff is both "in a position and is willing to put himself on record as to what the alleged fraud

consists of specifically." Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972) (citation omitted).

Similarly, courts have held that "[a]llegations of fraud cannot ordinarily be based 'upon

information and belief,' except as to 'matters peculiarly within the opposing party's

knowledge.'" Luce v. Edelstein, 802 F.2d at 54 n.1 (quoting Schlick v. Penn-Dixie Cement

Corp., 507 F.2d 374, 379 (2d Cir. 1974), cert. denied, 421 U.S. 976 (1975)).


### 3) Analysis

The Kalika defendants argue that plaintiff's fraud claim here fails because all of the

diagnostic tests ordered by the prescribing physicians were medically necessary and because Dr.

Kalika, as the radiologist, was bound to perform the prescribed tests. (Defs.' Mem. at 20). Thus,

the Kalika defendants argue that the alleged misrepresentations and fraudulently concealed facts

are not material and plaintiff was, in any event, bound to pay for these necessary medical

expenses. (Id.) The Kalika defendants further argue that even if the issue of medical necessity is

not determined, the Complaint fails to comport with Rule 9(b), in that State Farm has failed to

specify the false and fraudulent statements allegedly made to induce plaintiff to pay and the nature of plaintiff's reliance on these alleged false statements.  (Id. at 22).[8]

A review of the Complaint demonstrates that State Farm has alleged in specific detail the nature of defendants' fraudulent scheme, as well as the persons involved, the timing and the place for each of the 1256 fraudulent claims submitted by the Kalika defendants to State Farm. (See Compl. ¶ 5; App. A).  Appendix A to the Complaint lists each claim number, the prescribing doctor, type of mailing and date, and a description of the unnecessary ultrasound tests ordered for each claim.  (See App. A).

The Complaint further alleges that the Kalika defendants misrepresented material facts in the course of submitting charges for the ultrasound tests allegedly performed by Dr. Kalika, including a misrepresentation that the tests were necessary, misrepresentations as to the nature of the insureds' injuries, their prognosis and treatment plans, and a misrepresentation that insureds who received kidney ultrasounds had blood in their urine.  (See Compl. ¶¶ 22, 56).  Moreover, State Farm alleges that defendants utilized a code on the insurance form that misrepresented or failed to accurately describe the spinal ultrasounds that were performed on the insureds.  (Id. ¶ 22).  State Farm alleges that these misrepresentations were not only made knowingly and intentionally by defendants but they were material in that they induced State Farm to pay for these fraudulent charges when State Farm was required only to pay for medically necessary testing.  (Compl. ¶¶ 22, 25).

Rule 9(b) does not require that a specific date and time be alleged as to each

---

[8]Defendants also reiterate their argument that the Complaint is untimely and that State Farm's claims are barred by the 30-day Rule.  (Id. at 21).  This issue was fully addressed supra at 6–10.

20

misrepresentation. See Lehman Bros. Comm. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., No. 94 CV 8301, 1995 WL 608323, at *2–*3 (S.D.N.Y. Oct. 16, 1995) (noting that the purpose of Rule 9(b) is to afford defendants fair notice of the fraud alleged against them and holding that "[w]here the misstatements are alleged to have occurred over a period of time, . . . the pleadings are not required 'to provide the date and time of every communication'") (quoting Pollack v. Laidlaw Holdings, Inc., No. 90 CV 5788, 1995 WL 261518, at *9 (S.D.N.Y. May 3, 1995) (holding that to require the plaintiffs to specify the date and time of every communication that occurred over a five-year period would be "impossible")). Here, plaintiff has alleged specific dates based on the claim forms submitted; this is sufficient for purposes of Rule 9(b).

Moreover, to the extent that plaintiff has based certain allegations on "information and belief," allegations as to defendants' state of mind, their intentions, and the state of defendants' knowledge, may be pled in this fashion since the defendants' state of mind is a "matter[ ] peculiarly within [defendants'] knowledge." Schlick v. Penn-Dixie Cement Corp., 507 F.2d at 379.[9]

Under Rule 9(b), these allegations in the Complaint are more than sufficient to satisfy the pleading requirements of Rule 9(b) and to state a claim for common law fraud. See Chanayil v. Gulatti, 169 F.3d 168, 171 (2d Cir. 1999); Resource N.E. of Long Island, Inc. v. Town of Babylon, 80 F. Supp. 2d 52, 63 (E.D.N.Y. 2000). Moreover, to the extent that the Kalika

---

[9]Even if plaintiff failed to adequately state the nature of the fraudulent representations with sufficient particularity, courts generally do not dismiss a complaint outright for failure to comply with Rule 9(b). "In fact, dismissal of a complaint for failure to satisfy Rule 9(b) without granting leave to amend may, under certain circumstances, be deemed a reversible abuse of discretion." Carlucci v. Owens-Corning Fiberglass Corp., 646 F. Supp. at 1490 (citing Luce v. Edelstein, 802 F.2d at 56–57).

defendants contend that the Complaint fails to state a claim and is subject to dismissal under

Rule 12(b)(6) because Dr. Kalika was bound by the orders of the prescribing physicians to

perform tests they had determined were medically necessary, this is not an issue appropriate for

resolution on a motion to dismiss. Instead, because this argument disputes the factual allegations

of the Complaint and because the Court is required on a motion to dismiss to accept as true all

allegations in the Complaint, see IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1058

(2d Cir. 1993), cert. denied, 513 U.S. 822 (1994), the Court respectfully recommends that

defendants' motion to dismiss the fraud claims under Rules 9 and 12(b)(6) be denied.


D.  Unjust Enrichment

        Defendants argue that State Farm's claims for unjust enrichment must also be dismissed

under Rule 12(b)(6) for failure to state a claim. Defendants contend that plaintiff has not and

cannot establish that it ever paid defendants for unnecessary medical treatments.

        It is clear that "a party who pays money, under a mistake of fact to one who is not entitled

to it should, in equity and good conscience, be permitted to recover it back." Manufacturers

Hanover Trust Co. v. Chem. Bank, 160 A.D.2d 113, 117, 559 N.Y.S.2d 704, 707 (1st Dep't

1990). This is so "even if the mistake is due to the negligence of the payor." Id. The equitable

principle of unjust enrichment "'is an obligation which the law creates, in the absence of any

agreement, when and because the acts of the parties or others have placed in the possession of

one person money . . . under such circumstances that in equity and good conscience he ought not

to retain it.'" Id. (quoting Miller v. Schloss, 218 N.Y. 400, 407 (1916)). The Second Circuit has

held that "[t]o prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1)

22

that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good

conscience' require restitution." Kaye v. Grossman, 202 F.3d at 616 (citing Dolmetta v. Uintah

Nat'l Corp., 712 F.2d 15, 20 (2d Cir. 1983)); see also Golden Pac Bancorp v. FDIC, 273 F.3d at

519; State Farm v. Mallela, 175 F. Supp. 2d at 419.

Here, plaintiff has alleged that it was fraudulently induced to pay monies to defendants

for services that were not medically necessary and that, as a result, defendants were enriched in

the amount of the fraudulent claims paid. (Compl. ¶¶ 61–65). Plaintiff further alleges that these

payments were made at plaintiff's expense and that given defendants' fraudulent

misrepresentations, it would be "'against equity and good conscience'" to allow defendants to

retain these funds. See State Farm v. Mallela, 175 F. Supp. 2d at 419 (quoting Lake Minnewaska

Mountain Houses Inc. v. Rekis, 259 A.D.2d 797, 798, 686 N.Y.S.2d 186, 187 (3d Dep't 1999)).

Defendants argue that these allegations, like those in the Mallela case, are insufficient

because plaintiff cannot establish that it ever paid defendants for unnecessary treatments.

However, plaintiff has alleged that it paid defendants for unnecessary treatments (see Compl. ¶¶

1, 25, 47, 53, 58, 64), an allegation that must be accepted as true for purposes of determining a

motion to dismiss. As noted earlier, the issue as to the medical necessity for these treatments is a

question of fact not appropriate for decision on a motion to dismiss. Similarly, the question of

whether fairness or equity requires return of the funds is not an appropriate issue for a motion to

dismiss.

Accordingly, it is respectfully recommended that defendants' motion to dismiss the unjust

enrichment claim be denied.

F. The RICO Claim

Defendants argue that the plaintiff's RICO claim should be dismissed because plaintiff failed to allege that the Kalika defendants conducted the RICO scheme or committed the predicate acts which harmed plaintiffs. (Defs.' Mem. at 22).

1) RICO Elements

The RICO Act imposes civil liability, pursuant to 18 U.S.C. § 1964, upon persons who engage in certain "prohibited activities," each of which is defined to include, as a necessary element, proof of a "pattern of racketeering activity." 18 U.S.C. § 1962(c). The Act provides for treble damages where a person has sustained injury as a result of the defendant's use of income derived from racketeering to acquire or control an enterprise in or affecting interstate or foreign commerce. See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 495–96 (1985). To state a claim for civil damages based on a RICO violation, plaintiff must allege: "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invest[ ] in, or maintain[ ] an interest in, or participate[ ] in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025 (1984); see also Rosendale v. Citibank, N.A., No. 94 CV 8591, 1996 WL 175089, at *2 (S.D.N.Y. Apr. 15, 1996) (citing 18 U.S.C. § 1962(a)–(c)); McRoberts Sales Co. v. Quality Fish Co., No. 90 CV 3204, 1995 WL 87259, at *3 (E.D.N.Y. Feb. 16, 1995). The plaintiff must also allege that he was "injured in his business or property by reason of a violation of Section 1962." Moss v. Morgan Stanley, Inc., 719 F.2d at 17. Each of these elements must be alleged in order to

24

state a claim under RICO, see Sedima, S.P.R.L. v. Imrex Co., 473 U.S. at 496, and "[f]ailure to

allege an element of a substantive RICO violation as to any one cause of action requires

dismissal of that part of the complaint." United States v. Private Sanitation Ind. Ass'n of

Nassau/Suffolk, Inc., 793 F. Supp. 1114, 1126 (E.D.N.Y. 1992) (citing Albany Ins. Co. v. Esses,

831 F.2d 41, 44 (2d Cir. 1987)).

Here, State Farm has alleged in Count Two of the Complaint that Dr. Kalika committed a

substantive RICO violation in that he and the other defendants were engaged in a pattern of

racketeering activity involving mail fraud in violation of 18 U.S.C. § 1962(c). In Count Three,

plaintiff alleges that Dr. Kalika conspired with the prescribing physicians to commit a RICO

conspiracy in violation of 18 U.S.C. § 1962(d).

As an initial matter, "racketeering activity" means "any act or threat involving" certain

state law crimes, any act indictable under specified federal statutes, and certain other federal

offenses. 18 U.S.C. § 1961(1). The predicate acts of racketeering activity necessary for a civil

action under RICO are defined as acts which "involve conduct that is 'chargeable' or

'indictable,' and 'offense[s]' that are 'punishable,' under various criminal statutes." Sedima

S.P.R.L. v. Imrex Co., 473 U.S. at 488 (quoting 18 U.S.C. § 1961(1)). The relevant criminal

statutes are delineated in Section 1961(1) and define those criminal acts which may form the

basis of racketeering activity. "[I]n order to constitute a predicate act under Section 1961(1)(B),

the conduct that is the subject of the allegation must be 'indictable' under one of several federal

criminal provisions specifically listed in Section 1961(1)(B)." United States v. Private Sanitation

Ind. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. at 1133 (quoting United States v. Ruggiero, 726

F.2d 913, 920 (2d Cir.), cert. denied, 469 U.S. 831 (1984)).

25

One of the predicate acts set forth in 18 U.S.C. § 1961(1) is mail fraud. See ReSource NE of Long Island, Inc. v. Town of Babylon, 80 F. Supp 2d 52, 59–60 (E.D.N.Y. 2000). In pleading a predicate act of mail fraud, plaintiff must allege a scheme to defraud involving money or property and the use of the mails in furtherance of the scheme. See 18 U.S.C. § 1341 (defining mail fraud); In re Sumitomo Copper Litig., 104 F. Supp. 2d 314, 319 (S.D.N.Y. 2000). Plaintiff must not only allege how the alleged act of mail fraud furthered the alleged scheme to defraud, but must allege that the defendants had the requisite intent or reckless indifference to the truth necessary to commit the alleged predicate acts. See O'Malley v. N.Y. City Transit Auth., 896 F.2d at 706; see also In re Crazy Eddie Securities Litig., 812 F. Supp. 338, 347–48 (E.D.N.Y. 1993). Intent to defraud may be inferred from facts establishing a motive and an opportunity to commit the fraud. See Beck v. Mfrs Hanover Trust Co., 820 F.2d 49, 50 (2d Cir. 1987), cert. denied, 484 U.S. 1005 (1988), overruled in part on other grounds, United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989).

Plaintiff must also allege facts necessary to show the existence of an "enterprise." Under Section 1961(4), "enterprise" has been defined as "a group of persons associated together for a common purpose of engaging in a course of conduct," which may be established "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." First Capital Asset Mgmt, Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)); see 18 U.S.C. § 1961(4). In the Second Circuit, the term "enterprise" is construed liberally. See United States v. Indelicato, 865 F.2d at 1382 (analyzing RICO's legislative history and language and concluding that "Congress sought to define the term as broadly as possible").

26

Plaintiff must also allege that defendants engaged in a "pattern" of racketeering activity. A "pattern" requires "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). "The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. 04 CV 2933, 2005 WL 3710370, at *6 (E.D.N.Y. Feb. 22, 2005) (citing First Capital Asset Mgmt Inc. v. Satinwood, Inc., 385 F.3d at 173). In the leading case to discuss the pattern requirement, the Supreme Court held that in order to establish a "pattern" of activity under RICO, a plaintiff must demonstrate that the predicate racketeering acts "are related, and that they amount to or pose a threat of continued activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989).

With respect to the requirement that the alleged predicate acts be related, there must be a showing that the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or [they must] otherwise [be] interrelated by distinguishing characteristics." Id. at 240. With respect to continuity, the second element of the "pattern" requirement, the Supreme Court has noted that "'continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241. Whether "the predicate acts proved establish a threat of continued racketeering activity depends on the facts of each case." Id. at 242.

2) Pleading Requirements Under Rules 8(a) and 9(b)

The notice pleading requirements of Fed. R. Civ. P. 8(a) "are applicable to RICO, and 'it

27

is imperative that the court and the defendants be placed on clear notice as to what is being alleged, and what the substance of the claim is, in order to facilitate a decision on the merits of the case.'" United States v. Bonanno Org. Crime Family of La Cosa Nostra, 683 F. Supp. 1411, 1428 (E.D.N.Y. 1988) (quoting Ralston v. Capper, 569 F. Supp. 1575, 1581 (E.D. Mich. 1983)), aff'd, 879 F.2d 20 (2d Cir. 1989); see also United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. at 1124 (stating that "the exceptional mandate of Federal Rule of Civil Procedure 9(b) that allegations of fraud and of mistake be pleaded with particularity is inapplicable to RICO actions that do not involve claims of fraud"). Under Rule 8(a), the complaint should contain a "short and plain statement of the [plaintiff's] claim," Fed. R. Civ. P. 8(a), so that a defendant is given "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. at 1123–24 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to comply with Rule 8(a) - - that is, failure to place a defendant and the court on adequate notice of the plaintiff's claim -- generates a basis for dismissing the complaint." Id. at 1124 (citing United States v. Bonanno Org. Crime Family of La Cosa Nostra, 683 F. Supp. at 1428).

Thus, the Complaint must only satisfy the notice pleading requirements of Rule 8(a) in alleging the existence of the enterprise, the pattern of racketeering activity and the defendants' interest or participation in the enterprise. See In re Sumitomo Copper Litig., 995 F. Supp. 451, 454 (S.D.N.Y. 1998). Where, as here, the RICO claims involve fraud, the pleading requirements of particularity set forth in Rule 9(b) apply to the fraud elements. See United States v. Bonanno Org. Crime Family, 638 F. Supp. at 1428; United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc., 793 F. Supp. at 1124. (See discussion supra at 16–17).

28

### 3) Application

Here, State Farm alleges that defendants knowingly engaged in a scheme to defraud State Farm of monies paid for insureds' claims based on defendants' false and fraudulent misrepresentations. (Compl. ¶ 22; Pl.'s Mem. at 2). State Farm has also alleged that in furtherance of the scheme to defraud, defendants submitted claims forms and received payments through the mails, satisfying the necessary elements of the mail fraud statute. (Compl. ¶¶ 2–5, 23–25, App. A; Pl.'s Mem. at 15). Given that the false claims forms "were ultimately the very communication by which defendants defrauded [State Farm], it is fair to accept both that defendants either foresaw or could have foreseen the use of the mails, and that the mailings were undertaken for the purpose of executing the scheme." AIU Ins Co. v. Olmecs Med. Supply Inc., 2005 WL 3710370, at *11. State Farm has also clearly alleged that Dr. Kalika committed two or more acts constituting a "pattern" of racketeering activity. Indeed, in Appendix A, State Farm alleges that Dr. Kalika, through Kalika P.C., submitted over 1,256 fraudulent claims in furtherance of the scheme to defraud, clearly satisfying the "pattern" requirement, as well as the need to allege two or more predicate acts.

As for the element of continuity, plaintiff has adequately alleged open-ended continuity, alleging 1,256 separate fraudulent claims submitted over a four-year period, that are continuing to today in that defendants are seeking to collect additional amounts on claims submitted but not yet paid. Even if there were no outstanding claims, State Farm's allegations of four years of fraudulent claims more than satisfy the requirements of closed-ended continuity. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 241–42. To establish closed-ended continuity, the plaintiff must show "a series of related predicates extending over a substantial period of time." Id. at 242. A

substantial period of time means more than a "few weeks or months." Id. Here, State Farm's allegations of almost four years of continuous activity involving 1,256 claims more than satisfies the requirement of closed-ended continuity. See DeFalco v. Bernas, 244 F. 3d 286, 321 (2d Cir.) (analyzing cases), cert. denied, 534 U.S. 891 (2001); First Interregional Adv. Corp. v. Wolff, 956 F. Supp. 480, 486 (S.D.N.Y. 1997) (finding continuity requirement met where there were "numerous predicate acts . . . over a period of almost fourteen months"). State Farm's claims demonstrate that defendants committed the predicate acts as a "regular way of conducting the defendants' ongoing business," H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. at 250, and that the defendants "operated as part of a long-term association that exists for criminal purposes." Id. at 243; see also Metro. Transp. Auth. v. Contini, No. 04 CV 104, 2005 WL 1565524, at *1, 3–4 (E.D.N.Y. July 6, 2005).

Defendants assert that although the Complaint contains "broad based" claims that Dr. Kalika and the prescribing doctors operated through Kalika, P.C. as the enterprise, the Complaint fails to adequately allege how the individual defendants associated themselves with the particular predicate acts. (Defs.' Mem. at 24). As the court in United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc. noted, the "focus of Section 1962(c) is on the individual pattern of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed" by the RICO statute. 793 F. Supp. at 1128 (quoting United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987), cert. denied, 486 U.S. 1022 (1988)). Where a plaintiff fails to articulate with any degree of specificity what the individual defendants are alleged to have done or known about the alleged racketeering enterprise, plaintiff has failed to comply with the notice pleading requirements of Rule 8(a). See id. at 1130 (stating "[t]he lack of

clarity as to which defendants are alleged to have engaged in particular acts plagues almost every page of the complaint. This problem would by itself have certainly required dismissal of many of the alleged racketeering acts under Rule 8(a) simply for failure to put each defendant on notice as to the claim against him").

In the Complaint, State Farm alleges that Dr. Kalika, is not only the Chief Executive Officer of Kalika, P.C., but that he individually performed and interpreted the unnecessary tests that form the basis for the 1,256 fraudulent claims submitted to State Farm. (Compl. ¶¶ 4–5). He is alleged not only to have prepared and signed the fraudulent claim forms containing misrepresentations as to the medical necessity of the tests and medical condition of the insureds, but he is also alleged to have misrepresented the nature of the actual tests performed by citing the wrong billing code on the claims form. (Id. ¶¶ 4, 22). These allegations more than suffice for purposes of notice pleading. See, e.g., U.S. Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 453–54 (S.D.N.Y. 2004); Bulkmatic Transport Co v. Pappas, No. 99 CV 12070, 2001 WL 882039, at *9 (S.D.N.Y. May 11, 2001).

Under the Supreme Court's decision in Reves v. Ernst & Young, 507 U.S. 170 (1993), RICO liability applies only to actors who "participate in the operation or management of the enterprise itself." Id. at 185. The Second Circuit has interpreted this to require that a defendant have "appreciable discretionary authority" for RICO liability to be found. United States v. Viola, 35 F.3d 37, 43 (2d Cir. 1994), cert. denied, 513 U.S. 1198 (1995). To the extent that defendant Kalika argues that he was only performing professional services ordered by others and not involved in the management or direction of the enterprise, see, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512, 521–22 (2d Cir. 1994) (dismissing RICO claim against attorneys on

31

grounds they were not involved in management of RICO enterprise); Hayden v. Paul, Weiss,

Rifkind, Wharton & Garrison, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) (holding that the

allegation that a professional provided services to the enterprise "is insufficient to satisfy the

participation requirement of RICO, since participation requires some part in directing the affairs

of the enterprise itself"), the Complaint alleges that Dr. Kalika not only ran Kalika, P.C., but that

he was a vital component in the scheme to treat insureds with unnecessary tests and then

providing false documentation to support the tests.

Similarly, the Complaint sufficiently alleges the existence of an enterprise, Kalika, P.C.,

through which a group of individuals are alleged to have shared a common purpose, namely, to

defraud State Farm of money through fraudulent claims under the No-Fault laws. "[I]t is

sufficient that the defendant know the general nature of the enterprise and know that the

enterprise extends beyond his individual role." United States v. Rastelli, 870 F.2d 822, 828 (2d

Cir.), cert. denied, 493 U.S. 982 (1989).  A review of the Complaint establishes that these

elements have been adequately alleged.


G. Declaratory Judgment

Plaintiff has also alleged a claim for a declaratory judgment pursuant to the Federal

Declaratory Judgment Act (the "Act") 28 U.S.C. § 2201, seeking a judgment stating that Kalika,

P.C. may not collect for any claims submitted to State Farm that are still pending. (Compl. ¶ 43).

To state a claim for a declaratory judgment, the Complaint must merely allege that there is "'a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment.'" Kristensons-Petroleum, Inc. v.

Sealock Tanker Co., Ltd., 304 F. Supp. 2d 584, 589 (S.D.N.Y. 2004) (quoting Niagara Mohawk

Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996)).

Defendants correctly point out the Act ""'is an enabling act, which confers a discretion on

the court rather than an absolute right upon the litigants.''" (Defs.' Mem. at 16 (quoting State

Farm v. Mallela, 175 F. Supp. 2d at 412 (quoting Public Service Comm'n of Utah v. Wycoff Co.,

Inc., 344 U.S. 237, 247 (1952))). Defendants argue that State Farm's motion for a declaratory

judgment must fail, based on the court's rationale for denying a declaratory judgment in Mallela

and the recent decisions in Hellander v. State Farm, 6 Misc. 3d 579, 785 N.Y.S.2d 896 (N.Y.

Civ. Ct. 2004), Hellander v. Progressive Ins. Co., No. 02 CV 570054, 2002 WL 31415453 (1st

Dep't Oct. 21, 2002), and Hellander v. Allstate, 227 N.Y.L.J. 24 (2002).

A review of Mallela demonstrates that it is distinguishable in that Judge Sifton rejected a

request for a declaratory judgment on the basis that it was not necessary for plaintiff to pay

claims to medical corporations that were improperly owned by non-physicians; he did not

consider the request made here for a judgment that there was no need to pay for medically

unnecessary services. State Farm v. Mallela, 175 F. Supp. 2d at 413–15. As for the various

Hellander decisions, those cases dealt with whether the paraspinal ultrasound test as a diagnostic

tool was ineffective as a diagnostic modality and therefore medically unnecessary in all cases.

Here, the claim is that with respect to these tests that were performed on individual insureds, the

test was not medically necessary under the circumstances of each individual's case and that there

were misrepresentations made as to the tests and test results.

Given the allegations in the Complaint, the Court finds that plaintiff has satisfied the

pleading requirements necessary to survive a motion to dismiss the claim for a declaratory

33

judgment and respectfully recommends that defendants' motion be denied.

### H. Supplemental Jurisdiction

Finally, the Kalika defendants seek to have the court decline to exercise supplemental jurisdiction over plaintiff's state law claims. Since this Court has recommended that defendants' motion to dismiss be denied in its entirety, the Court sees no reason to decline to exercise supplemental jurisdiction over the state law claims which are inextricably intertwined with the federal claims. Accordingly, the Court respectfully recommends that the Kalika defendants' motion regarding the exercise of supplemental jurisdiction be denied as well.

### CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Kalika defendants' motion to dismiss be denied in their entirety.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

34

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        March 16, 2006

Cheryl L. Pollak
United States Magistrate Judge

**EXHIBIT C**



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
25 BEAVER STREET
NEW YORK, NEW YORK 10004

George E. Pataki
Governor

Howard Mills
Superintendent

The Office of General Counsel issued the following opinion on May 12, 2006, representing the position of the New York State Insurance Department.

**RE: No-Fault Assignment**

**Question Presented**:

May a health care provider who has accepted a No-Fault assignment of benefits from an eligible injured person (the patient) bill the person directly in the event that a claim for services rendered is denied by the insurer as medically unnecessary, if the assignment states that "in the event that the no-fault carrier fails or refuses to pay for the services provided then I, the patient, agree that I will be responsible for the value of services rendered by said Doctor"?

**Conclusion**:

No, a health care provider who has accepted a no-fault assignment of benefits from a no-fault claimant may not pursue the patient directly for health services rendered that have been denied as medically unnecessary, notwithstanding the language of the assignment, which states "in the event that the no-fault carrier fails or refuses to pay for the services provided then I, the patient, agree that I will be responsible for the value of services rendered by said Doctor." The use of such language is prohibited under N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.11(b)(2) (2005) (Regulation 68-C).

**Facts**:

No specific facts provided.

**Analysis**:

N.Y. Comp. Codes R. & Regs. tit. 11, § 65-3.11(b)(2) (2005) (Regulation 68-C) states:

> (b) In order for a health care provider…to receive direct payment from the insurer, the health care provider…must submit to the insurer:…

> (2) a properly executed assignment on:

> (i) the prescribed verification of treatment by attending physician or other provider of service form (NYS form NF-3); or

       (iii) the prescribed no-fault assignment of benefits form (NYS form NF-AOB) contained in Appendix 13…

The relevant language of NYS Form NF-3 concerning no-fault assignment is found in item 21 which states:

ASSIGNMENT OF BENEFITS

I HEREBY ASSIGN TO THE HEALTH CARE PROVIDER INDICATED BELOW ALL RIGHTS, PRIVILEGES AND REMEDIES TO PAYMENT FOR HEALTH CARE SERVICES PROVIDED BY THE ASSIGNEE TO WHICH I AM ENTITLED UNDER ARTICLE 51 (THE NO-FAULT STATUTE) OF THE INSURANCE LAW. THE ASSIGNEE HEREBY CERTIFIES THAT THEY HAVE NOT RECEIVED ANY PAYMENT FROM OR ON BEHALF OF THE ASSIGNOR AND SHALL NOT PURSUE PAYMENT DIRECTLY FROM THE ASSIGNOR FOR SERVICES PROVIDED BY SAID ASSIGNEE FOR INJURIES SUSTAINED DUE TO THE MOTOR VEHICLE ACCIDENT, NOTWITHSTANDING ANY PRIOR WRITTEN AGREEMENT TO THE CONTRARY. THIS AGREEMENT MAY BE REVOKED BY THE ASSIGNEE WHEN BENEFITS ARE NOT PAYABLE BASED UPON THE ASSIGNOR'S LACK OF COVERAGE AND/OR VIOLATION OF A POLICY CONDITION DUE TO THE ACTIONS OR CONDUCT OF THE ASSIGNOR.

The relevant language of NYS Form NF-AOB concerning assignment of No-Fault benefits to a health care provider contains the same language.

The assignment language found in Regulation 68-C, NYS Form NF-3 and NYS Form NF-AOB precludes the assignee from pursuing the assignor for medically unnecessary health services, unless the denial of benefits is based on a lack of coverage or violation of policy based on the conduct of the assignor. Statements within assignments such as "in the event that the no-fault carrier fails or refuses to pay for the services provided then I, the patient, agree that I will be responsible for the value of services rendered by said Doctor," are prohibited under the No-Fault regulation. Such language should be given no legal effect and the assignee may not pursue the assignor directly for unnecessary services.

For further discussion of this issue, see General Counsel Opinion Nos. 02-09-02 (September 4, 2002), 03-01-26 (January 13, 2003), and 03-04-36 (April 30, 2003).

For further information you may contact Supervising Attorney Lawrence M. Fuchsberg at the New York City Office.