UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

                         Plaintiff,

    -against-

ACCURATE MEDICAL, P.C., J.P.
MEDICAL, P.C., QUALITY MEDICAL
HEALTH CARE PROVIDER, P.C.,
JADWIGA PAWLOWSKI, M.D., DAVID
M. BURKE, M.D., and HISHAM             07 CV 0051 (ENV)
ELZANATY,

                   Defendants.     Served: July 10, 2007
----------------------------------

---

## Memorandum In Support Of Defendants' Pre-Answer Motion

---

Wolodymyr M. Starosolsky (WS 6067)
W.M. Starosolsky & Associates, P.C.
*Attorneys for Defendants*
**ACCURATE MEDICAL, P.C., J.P. MEDICAL,
P.C., QUALITY MEDICAL HEALTH CARE
PROVIDER, P.C., JADWIGA PAWLOWSKI,
M.D. and HISHAM ELZANATY**
40 Exchange Place, Suite 1706
New York, New York 10005
(212) 232 0292

Neal Wiesner
*Of Counsel*

TABLE OF CONTENTS

Table of Authorities  . . . . . . . . . . . . . . . . . . i-v

Preliminary Statement . . . . . . . . . . . . . . . . . . 1

Statement Of Facts  . . . . . . . . . . . . . . . . . . . 2

ARGUMENT

    POINT I

    A. The History Of The New York No-Fault System . . . . . . 4

    B. The Standard For Dismissal  . . . . . . . . . . . . . 6


    POINT II

Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity

    A. In General  . . . . . . . . . . . . . . . . . . . . 7

        *(a) Plaintiff's Category 3 Claims Are Barred
        Under Principals Of Res Judicata, Collateral
        Estoppel Or Otherwise* . . . . . . . . . . . . . . . 9

        *(b) Plaintiff's Category 1 and 2 Claims Are
        Barred By Its Failure To Timely Disclaim Under
        The Thirty-Day Rule* . . . . . . . . . . . . . . . 11

    B. Plaintiff's Claims Of Overbilling Or Lack Of Medical
    Necessity As Failing To Support Its Cause Of Action For
    Fraud . . . . . . . . . . . . . . . . . . . . . . . 16

    C. Plaintiff's Claims Of Overbilling Or Lack Of Medical
    Necessity As Failing To Support Its Cause Of Action For
    Unjust Enrichment . . . . . . . . . . . . . . . . . 18

    D. Plaintiff's Claims Of Overbilling Or Lack Of Medical
    Necessity As Failing To Support  Its RICO Claim  . . . . 20

    E.  Plaintiff's Claims Of Overbilling Or Lack Of Medical
    Necessity As Failing To Support A Cause For Declaratory
    Relief . . . . . . . . . . . . . . . . . . . . . . 22

POINT III

Plaintiff's Claims Relating To Alleged "Fraudulent Incorporation"

A. In General . . . . . . . . . . . . . . . . . . . . .   27

B. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Its Cause Of Action For Fraud . . . .   31

C. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Its Cause Of Action For Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . .   35

D. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Its RICO Claim . . . . . . . . . . .   36

E.  Plaintiff's Claims Of "Fraudulent Incorporation As Failing To Support A Cause For Declaratory Relief . . .   38


POINT IV

To The Extent The Complaint Is Not Otherwise Dismissed, Relief Should Be Granted Under Rule 12 (f), Federal Rules Of Civil Procedure, Ordering Portions Of Plaintiff's Complaint Stricken . . . . . . . . . . . . . . . . . .   39


POINT V

This Action Should Be Dismissed Pursuant to Rule 12 (b) (7), Federal Rules Of Civil Procedure, For Failing To Join Parties Under Rule 19 . . . . . . . . . . . . . . .   41


Conclusion . . . . . . . . . . . . . . . . . . . . . . .   43

# TABLE OF AUTHORITIES

## Cases

Aetna Life Ins. Co. v Haworth, 300 U.S. 227 (1937) . . . . . 22

Allstate Ins. Co. v Belt Parkway Imaging P.C., 33 A.D.3d 407, 823 N.Y.S.2d 9 (1st Dept.2006) . . . . . . . . . . . . . . . . 29

Allstate Insurance Company, et al. v Valley Physical Medicine & Rehabilitation, P.C., 475 F.Supp.2d 213 [E.D.N.Y. 2007] . . . . . . . . . . . . . . . . . . . . . 12, 13, 16, 17-18, 21, 25, 27, 29, 30

Amron v Morgan Stanley Investment Advisors, Inc., 464 F.3d 338 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Application of Park Radiology P.C. v Allstate Ins. Co. 2 Misc.3d 621 (Rich.Cty. Civ.Ct. 2003) . . . . . . . . . . . . . . . . 15

AT Medical P.C. v. Utica Mut. Ins. Co., 11 Misc.3d 142(A), 819 N.Y.S.2d 846 (App. Term 2006) . . . . . . . . . . . . . . . . 17

BBS Norwalk One, Inc. v Raccolta, Inc, 117 F.3d 674 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Benson Med. P.C. v. Progressive Northeastern Ins. Co., 12 Misc.3d 144(A), 824 N.Y.S.2d 760 (App. Term 2006) . . . . . . . . . . 17

Bonetti v. Integon Nat. Ins. Co., 269 A.D.2d 413, 703 N.Y.S.2d 217 (2d Dept.2000) . . . . . . . . . . . . . . . . . . . . . . . 17

Boston Firefighters Union Local 718 v. Boston Chapter, N.A.A.C.P., Inc., 468 U.S. 1206, 104 S.Ct. 3576 (1984) . . . . . . . . . 26

Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 464 N.Y.S.2d 712 (1983) . . . . . . . . . . . . . . . . . . . 34

Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95, 113 S.Ct. 1967 (1993) . . . . . . . . . . . . . . . . . . . . 22, 23

Careplus Med. Supply Inc. v State-Wide Ins. Co., 11 Misc.3d 29, 812 N.Y.S.2d 736 (App. Term 2005) . . . . . . . . . . . . . . . . 18

Central General Hospital v Chubb, 90 N.Y.2d 195, 659 N.Y.S.2d 246 (1997) . . . . . . . . . . . . . . . . . . . 5, 11, 12, 13, 14

i

Charlebois v Weller Assocs._, 72 N.Y.2d 587, 535 N.Y.S.2d 356 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Citibank v Walker, 12 A.D.3d 480, 787 N.Y.S.2d 48 (2nd Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Country-Wide Ins. Co. v Zablozki_, 257 A.D.2d 506, 684 N.Y.S.2d 229 (1st Dept. 1999) . . . . . . . . . . . . . . . . . . . . . . 17

Devonshire Surgical Facility v GEICO, 14 Misc.3d 1208[A], 2006 WL 3770886 (N.Y.Cty. Civ.Ct. 2006) (unreported disposition) . . 15

Fair Price Medical Supply Corp. v Travelers Indem. Co., ___AD3d ___, 2007 WL 1704621 (June 12, 2007, 2nd Dept.) . . . . . 14, 16

Fair Price Medical Supply Corp. v Travelers Indem. Co._ (9 Misc3d 76 [App. Term, 2nd Dept. 2005) . . . . . . . . . . 14, 15, 16

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Global View Ltd. Venture Capital v Great Central Basin Exploration, LLC, 288 F.Supp.2d 473 (S.D.N.Y. 2003) . . . . . . . . . . . 39

Goldman v Garofalo, 71 A.D.2d 650, 418 N.Y.S.2d 803 (2nd Dept. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Insurance Company v 563 Grand Medical, P.C., 4 Misc.3d 1020(A), 798 N.Y.S.2d 345 [table], 2004 WL 2008605 (Sup. Ct., Oswego Cty. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Jacobson v Fireman's Fund Ins. Co., 111 F.3d 261 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Jenkins v McKeithen, 395 U.S. 411 (1969) . . . . . . . . . . . 7

Kent v Avco Corporation, 815 F.Supp 67 (D.Conn. 1992) . . . . 41

Khandhar v Elfenbein_, 943 F.2d 244 (2nd Cir. 1991) . . . . . 10

ii

King v Simpson, 189 F.3d 284 (2nd Cir. 1999) . . . . . . . . . 7

Laborers Local 17 Health and Benefit Fund v Philip Morris, Inc., 191 F.3d 229 (2nd Cir. 1999) . . . . . . . . . . . . . . . . 32

Lebowich v O'Connor 309 F.2d 111 (2nd Cir. 1962) . . . . . . 22

Lerner v. Fleet Bank, N.A., 318 F.3d 113 (2nd Cir. 2003) . . 37

Lloyd Capital Corp. v Pat Henchar, Inc., 80 N.Y.2d 124, 589 N.Y.S.2d 396 (1992) . . . . . . . . . . . . . . . . . . . . 35

LMK Psych. Serv. P.C. v Liberty Mut. Ins. Co., 30 A.D.3d 727, 816 N.Y.S.2d 587 (3d Dept. 2006) . . . . . . . . . . . . . . . . 17

Maryland Cas. Co. v  Pacific Coal & Oil Co., 312 U.S. 270  (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Matter of American Ins. Co.[Messinger-Aetna Cas. & Sur. Co.], 43 N.Y.2d 184, 401 N.Y.S.2d 36 (1977) . . . . . . . . . . . . . 9

Matter of Rani, 58 N.Y.2d 715, 458 N.Y.S.2d 910 (1982) . . . . 9

Medical Society v Serio, 100 N.Y.2d 854,  768 N.Y.S.2d 423 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Metroscan Imaging, P.C. v Geico Ins. Co., 13 Misc.3d 35, 823 N.Y.S.2d 818 (App.Term, 2nd & 11th Jud. Dists. 2006). . . 28, 30

MGM Psych. Care P.C. v Utica Mut. Ins. Co., 12 Misc.3d 137(A), 824 N.Y.S.2d 763 (App. Term 2006) . . . . . . . . . . . . . . 17–18

Montgomery v Daniels, 38 N.Y.2d 41, 378 N.Y.S.2d 1 (1975) . . 15

Morin v Trupin, 711 F.Supp. 97 (S.D.N.Y. 1989) . . . . . . . 20

Mount Sinai Hosp. v Triboro Coach Inc., 263 A.D.2d 11, 699 N.Y.S.2d 77 (2d Dept. 1999) . . . . . . . . . . . . . . . . . . . . . 17

National Union Fire Insurance Co. of Pittsburgh, PA. v Karp, 108 F.3d 17 (2nd Cir. 1997) . . . . . . . . . . . . . . . . . . 25

Nextel of New York v City of Mount Vernon, 361 F.Supp.2d 336 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . 40

Norris v Grosvenor Mktg. Ltd.. 803 F.2d 1281 (2d Cir. 1986) .  10

Paramount Film Distr. Corp. v State of New York, 30 N.Y.2d 415, 334 N.Y.S.2d 388 (1972), *cert. denied* 414 U.S. 829 (1973) . . 18

Pike v MedApproach, 266 F.3d 78 (2nd Cir. 2001) . . . . . . . . 9

Presbyterian Hospital in the City of New York v Maryland Casualty Company, 90 N.Y.2d 274 (1997) . . . . . . 5, 12, 13, 14, 15, 16

Preiser v Newkirk, 422 U.S. 395, 95 S.Ct. 2330 (1975) . . . . 23

Reither's Beer Distributors, Inc. v Christian Schmidt Brewing Co., 657 F.Supp. 136 [E.D.N.Y 1987] . . . . . . . . . . . . . . . 41

Rotella v Wood, 528 U.S. 549, 120 S.Ct. 1075 (2000) . . . . . 21

Salyton v Amer. Exp. Co., 460 F.3d 215 (2d Cir.2006) . . . . 21

Schank v. Schuchman, 212 N.Y. 352, 106 N.E. 127 (1914) . . . 36

Simon v Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 96 S.Ct. 1917 (1976) . . . . . . . . . . . . . . . . . . . . . . 26

Small v Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State Farm Mutual Automobile Insurance Company v Grafman, 04 CV 2609 [E.D.N.Y. May 22, 2007] . . . . . . . . . . . . . . . . 15

State Farm Mut. Auto. Ins. Co. v Mallela, 4 N.Y.3d 313, 794 N.Y.S.2d 700 (2005) . . . . . . . . 19, 27, 28, 29, 30, 33, 35

St. Paul Travelers Ins. Co. v Nandi, 15 Misc.3d 1145(A), 2007 WL 1662050 (N.Y.Sup., May 25, 2007) (slip copy, unpublished disposition) . . . . . . . . . . . . . . . . . . . . . . . . 33

Tahir v Progressive Cas. Ins. Co., 12 Misc.3d 657, 814 N.Y.S.2d 507 (Civ.Ct., N.Y. City 2006) . . . . . . . . . . . . . . . 18, 33

Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Tho Dinh Tran v Alphonse Hotel Corp., 281 F.3d 23 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

iv

Universal Acupuncture Pain Services, P.C. v State Farm Mutual Automobile Insurance Company, 196 F.Supp.2d 378 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . 32, 34, 36

Valley Psychological, P.C. v Liberty Mut. Ins. Co., 30 AD3d 718, 816 N.Y.S.2d 239 (3rd Dept. 2006) . . . . . . . . . . . 13, 17

**Codes & Rules**

11 NYCRR 65.15 [d][1] . . . . . . . . . . . . . . . 11

11 NYCRR 65.15 [d][2] . . . . . . . . . . . . . . . 11

11 NYCRR 65.15(g)(3) . . . . . . . . . . . . . . . 11

11 N.Y.C.R.R. 65-3.16 (a)(12) . . . . . . . . . . . 27

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 1961 (1) (B) . . . . . . . . . . . . . 20

28 USC § 2201 [a] . . . . . . . . . . . . . . . . . 22

Federal Rule of Civil Procedure 12 (b) (1) . . . . . . . . . 36

Federal Rule of Civil Procedure 12 (b) (6) . . . . . . . . 6, 36

Federal Rule of Civil Procedure 12 (b) (7) . . . . . . . . 6, 41

Federal Rule of Civil Procedure 12 (f) . . . . . . . . . . 39

Federal Rule of Civil Procedure 19 . . . . . . . . . . . 41

New York Business Corporation Law § 1503 . . . . . . . . . 32

New York Civil Practice Law & Rules 213 . . . . . . . . . 19

New York Insurance Law § 5106(a) . . . . . . . . . . . . 4, 11

**Treatises**

D.Siegel, New York Practice, ¶ 456, p 767 (4th Ed.) . . . . . . 9

## Preliminary Statement

Plaintiff has filed a complaint alleging seven causes of action and seeking damages or credits from defendants in excess of $7 million.[1]

Plaintiff insurer in this case has alleged causes of action - including under RICO - against the defendants who are involved, *inter alia*, in providing medical services under New York's no-fault law. Plaintiff has alleged entitlement, again *inter alia*, to $1.75 million in compensatory damages from defendants arising from claims for services plaintiff now alleges it should not have paid (Exhibit 1, ¶¶ 36, 61) and seeks a declaration that it does not have to pay an unenumerated number of pending claims (*id.*, ¶¶ 48-50, 86 [a]). Annexed to its complaint is a chart indicating 350 alleged RICO acts relating to services billed for 350 pseudonymously identified patients. Plaintiff's theories, asserted in its complaint, include fraud and unjust enrichment (*id.*, Fourth through Seventh Causes of Action).

For the reasons that follow, it is respectfully submitted that plaintiff can prove no set of facts which would entitle it to

---

[1]This action is presently stayed as against defendant Jadwiga Pawlowski, M.D. as the result of a pending bankruptcy proceeding.

1

relief under its complaint, and defendants' motion should be granted in all respects. Indeed, defendants submit that plaintiff has failed to present even one properly justiciable claim that it has ever been wrongfully deprived of one penny.

## Statement Of Facts

According to its complaint, plaintiff seeks to recover payments it made for neurological consultations and diagnostic tests rendered to its insureds by defendants under New York no-fault law since 1998 (Exhibit 1, ¶¶ 1, 3, 55, 61). Plaintiff apparently alleges that all of such tests administered to its insureds, who were involved in motor vehicle accidents, were a) unnecessary, b) disapproves of what it alleges to be defendants' testing pattern, and c) asserts "secret" ownership and control of the medical P.C. defendants by defendant Hisham Elzanaty or what it terms to be "fraudulent incorporation" (*id.*).

Plaintiff alleges to have accumulated $1.75 million in damages since 1998 (*id.* at ¶¶ 3, 55, 61, 66, 71).

Plaintiff seeks a declaration from this Court that it does not have to pay an unenumerated number of pending charges for professional services rendered to its insureds (*id.*, ¶¶ 48-50).

Plaintiff has alleged RICO violations, both substantive (*id.* at ¶¶ 52-56 and conspiracy (*id.* at ¶¶ 58-62) and seeks to treble its $1.75 million damage claim as a result of these causes of action, along with costs and attorneys' fees (*id.* at ¶¶ 56, 62) .

Plaintiff also asserts two distinct causes of action for common law fraud as well as two distinct causes of action for unjust enrichment.

Under one theory, plaintiff asserts a cause of action for fraud arising from alleged over billing or unnecessarily provided services (*id.* at ¶ 64) and for unjust enrichment arising from allegations of the same kind of "fraud" (*id.* at ¶ 70). In addition to its $1.75 million in alleged damages going back to 1998 on both its claims, it seeks punitive damages as well on its fraud claim (¶ 67).

Plaintiff further asserts a separate and second cause of action for fraud arising from an alleged "fraudulent" incorporation and seeks punitive damages - along with $1 million in alleged damages - arising from that as well (*id.* at ¶¶ 76-80).

Finally, plaintiff alleges a second cause of action for unjust

enrichment, this time centered on the claim that defendants operated through "fraudulently incorporated" professional corporations (*id.* at 82-86). Here it also seeks recovery of the claimed $1 million in fees it paid to defendants since April 4, 2002 (*id.* at ¶¶ 78, 83).

Although plaintiff has identified in its complaint 350 exemplary claims it alleges to be "RICO" acts, it has refused to informally provide even a rough enumeration as to the total number of claims which underlie its complaint.  It appears fair to conclude that individuated patients exceed one thousand, and the individuated bills and provider-patient interactions they represent, near ten thousand.  These claims may be parsed into classes of common facts which permit discussion of the legal principles that guide their disposition.

**ARGUMENT**

**POINT I**

**A. The History Of The New York No-Fault System**

In 1973, the Legislature enacted the Comprehensive Automobile Insurance Reparations Act (*see* L. 1973, ch. 13), which supplanted common-law tort actions for most victims of automobile accidents with a system of no-fault insurance. Under the no-fault system, payments of benefits "shall be made as the loss is incurred" (Insurance Law § 5106[a]).  The primary aims of this new system were to ensure prompt compensation for losses

4

incurred by accident victims without regard to fault or
negligence, to reduce the burden on the courts and to
provide substantial premium savings to New York motorists
(*see* Governor's Mem. approving L. 1973, ch. 13, 1973
McKinney's Session Laws of N.Y., at 2335).

(Medical Society v Serio, 100 N.Y.2d 854, 860, 768 N.Y.S.2d 423
[2003])

Indeed, a product of legislative compromise, no-fault laws

were:

> * * * enacted to provide prompt uncontested, first-party
> insurance benefits.  That is part of the price paid to
> eliminate common-law contested lawsuits. * * *  The
> tradeoff of the no-fault reform still allows carriers to
> contest ill-founded, illegitimate and fraudulent claims,
> but within a strict, short-leashed contestable period and
> process designed to avoid prejudice and red-tape dilatory
> practices.

(Presbyterian Hospital in the City of New York v Maryland Casualty
Company, 90 N.Y.2d 274, 286 [1997] [citation omitted])

Pursuant to New York no-fault law, claims must be paid within

thirty days ("the thirty day rule"):

> [New York] Insurance Law § 5106(a) provides that
> "[p]ayments of first party benefits * * * are overdue if
> not paid within thirty days after the claimant supplies
> proof of the fact and amount of loss sustained."  This
> statute corresponds with Insurance Department regulation
> 11 NYCRR 65.15(g)(3), which prescribes that "[w]ithin 30
> calendar days after proof of claim is received, the
> insurer shall either pay or deny the claim in whole or in
> part."

(Central General Hospital v Chubb, 90 N.Y.2d 195, 199-200, 659
N.Y.S.2d 246 [1997])

Defendants submit that this action arises as a result of State Farm's effort to make an end-run around the constraints of New York's statutory and regulatory structure.

## B. The Standard For Dismissal

Rule 12 (b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> * * *[T]he following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.  A motion making any of these defenses shall be made before pleading if a further pleading is permitted. * * *

On a motion to dismiss pursuant to 12 (b) (6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff (King v Simpson, 189 F.3d 284, 287 [2nd Cir. 1999]).  A complaint should not be dismissed unless it appears that no set of facts that plaintiff could prove would entitle it to relief (Jenkins v McKeithen, 395 U.S. 411, 422 [1969]).  Nevertheless, "a plaintiff must allege, as the Supreme Court has held, those facts *necessary* to a finding of liability" (Amron v Morgan Stanley Investment Advisors, Inc., 464 F.3d 338, 343 [2nd Cir. 2006] [citation omitted] [emphasis in original]).

As set forth herein, it is submitted that as a matter of law on the facts alleged (or that plaintiff has failed to allege) in its complaint, plaintiff has failed to state a claim upon which relief can be granted.

## POINT II

**Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity**

**A. In General**

Separating the two threads of plaintiff's theory of defendants' alleged wrongdoing for the purposes of analysis, we deal in this point with its claims of "fraud" based upon alleged overbilling or lack of medical necessity (together herein at times, "medical necessity grounds").  It is clear that despite the thousands of claims involved, they may be divided into three broad classes as follows:

> 1) Claims where no timely denial (or timely demand for additional verification) on medical necessity grounds was made and they were paid;
>
> 2) Claims where no timely denial (or timely demand for additional verification) on medical necessity grounds was made and they were not paid;
>
> 3) Claims which were timely denied (or additional verification was timely demanded) on medical necessity grounds and they were not paid.[2]

---

[2]This subsection does not discuss claims that may be viewed as in repose or pending - and thus falling within the ambit of plaintiff's claim for declaratory relief - which is discussed

**(a) Plaintiff's Category 3 Claims Are Barred Under Principals Of Res Judicata, Collateral Estoppel Or Otherwise**

Of the third category above, one of two factual outcomes arose:

      I) The claims were subject to arbitration and decided favorably to defendants;[3]

      ii) The claims were subject to arbitration and decided favorably to plaintiff.[4]

In either (I) or (ii) above, such claims cannot be part of this action. In the first instance, where arbitration has occurred and resulted in a conclusion favorable to defendants, plaintiff is barred from resurrecting its worn and adversely decided claim by the doctrine of *res judicata* or collateral estoppel:

      Turning to the arbitration award, we may note that the claim preclusion doctrine clearly applies to it. The award gets res judicata treatment* * *. Any other conclusion would undermine the important and expanding arbitration process, which has done much to prevent the

_____

separately herein.

   [3]Alternatively, they might have been settled between the parties prior to arbitration which, of course, would exclude them from any cause of action now.

   [4]A third subset of Category 3 might exist - where demand for additional verification was timely made but not provided - but that subset would fall under plaintiff's declaratory cause of action as pending claims.

total collapse of the overworked judicial process by
drawing a good part of the dispute resolution business to
itself.

(D.Siegel, <u>New York Practice</u>, ¶ 456, p 767 [4th Ed.]).


Indeed:

It is settled that the doctrine of *res judicata* is
applicable to arbitration awards and may serve to bar the
subsequent relitigation of a single issue or an entire
claim (see *Matter of American Ins. Co.* [*Messinger-Aetna
Cas. & Sur. Co.*], 43 N.Y.2d 184, 189-190, 401 N.Y.S.2d
36, 371 N.E.2d 798). "Claim preclusion" refers to the
bar against relitigating a claim or cause of action (see
*id.*, at p. 189, n. 2, 401 N.Y.S.2d 36, 371 N.E.2d 798).
"Issue preclusion" is more limited, barring only the
relitigation of a discrete factual or legal issue (see
*id.*).

(<u>Matter of Rani</u>, 58 N.Y.2d 715, 717, 458 N.Y.S.2d 910 [1982])


In fact, "[a]rbitration is not a trial run in which a party
may sit quietly by without raising pertinent issues, wait to see if
the result is in his favor and then seek judicial relief as an
afterthought" (<u>Pike v MedApproach</u>, 266 F.3d 78, 89 [2nd Cir. 2001]).
The Second Circuit holds "that res judicata and collateral estoppel
apply to issues resolved by arbitration (<u>Jacobson v Fireman's Fund
Ins. Co.</u>, 111 F.3d 261, 267-268 [2nd Cir. 1997]).


In <u>BBS Norwalk One, Inc. v Raccolta, Inc</u>, 117 F.3d 674 [1997])
the Second Circuit set forth the standard for the application of

9

collateral estoppel as applied to matters arbitrated in New York:

> Under New York law, in order to invoke the doctrine of collateral estoppel, a party must show that "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991) (citation and internal quotation marks omitted).   The party invoking collateral estoppel "bears the burden of proving the identity of the issues...." *Id.* The prior decision need not have been explicit on the point, since "[i]f by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." *Norris v. Grosvenor Mktg. Ltd..* 803 F.2d 1281, 1285 (2d Cir.1986) (construing New York law) (citations and internal quotation marks omitted).

Thus, to the extent plaintiff's identified and unidentified claims have been subject to adverse arbitration decisions on medical necessity grounds, plaintiff fails to state a claim upon which relief may be granted with respect to this class of claims.[5]

On the other hand, where plaintiff prevailed in arbitration on medical necessity grounds - thereby avoiding payment of the claim - it cannot here seek recovery for what it did not have to pay.

---

[5]Although on this pre-answer motion defendants do not seek to go beyond the face of the pleading, in their papers predicating the instant motion, defendants provided an exemplar of a claim that was arbitrated, found to be medically necessary, and plaintiff was ordered to pay.  Of course, plaintiff cannot relitigate claims of this class again, at least insofar as it seeks to challenge medical necessity.

10

Thus, here too plaintiff fails to state a claim upon which relief may be granted with respect to this distinct class of claims.  This is discussed further in sections below.

### (b) Plaintiff's Category 1 and 2 Claims Are Barred By Its Failure To Timely Disclaim Under The Thirty-Day Rule

Plaintiff is barred from relief relating to the first two categories as well:

> [New York] Insurance Law § 5106(a) provides that "[p]ayments of first party benefits * * * are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained."  This statute corresponds with Insurance Department regulation 11 NYCRR 65.15(g)(3), which prescribes that "[w]ithin 30 calendar days after proof of claim is received, the insurer shall either pay or deny the claim in whole or in part."

(Central General Hospital v Chubb, 90 N.Y.2d 195, 199-200, 659 N.Y.S.2d 246 [1997])

Thus, as recognized by New York's highest Court, as well as by New York's statutes and regulations, an insurer is required to pay or deny a claim for no-fault benefits within 30 days of its receipt (N.Y. Insurance Law § 5106 [a], 11 NYCRR 65.15 [d][1], [2]) and is precluded from asserting a right of non-payment where it has failed to do so:

* * * Under a line of cases commencing with *Presbyterian*

11

> *Hospital in the City of New York v Maryland Casualty Company*, 90 N.Y.2d 274 (1997) and *Central General Hospital v Chubb Group of Insurance Companies*, 90 N.Y.2d 195 (1997), the New York Court of Appeals has held that the failure of an insurer to comply with the thirty-day rule will result in the insurer being precluded from rasing any defense to a claim for payment, other than defenses premised on lack of coverage.

(Allstate Insurance Company, et al. v Valley Physical Medicine & Rehabilitation, P.C., et al., 475 F.Supp.2d 213, 223 [E.D.N.Y. 2007] [Hurley, J.])[6]

Thus, insofar as plaintiff seeks to complain of "excessive" (see, e.g., Exhibit 1, ¶ 25) or medically unnecessary (see, e.g. Exhibit 1, ¶ 26) tests or treatments, characterizing them as "fraudulent," it fails to state a claim upon which relief may be granted.  Tracking Judge Hurley's *ratio decedendi* in Valley where the plaintiff there sought to recover payments for alleged medically unnecessary treatments made from 1996 to 2002 (Valley, *supra* at 218), plaintiff is barred here from seeking recovery for the claims alleged.

Indeed, "where the defense implicate the degree of treatment - such as whether an eligible injured person needs five rather than ten treatments - the absence of a timely disclaimer will result in

---

[6]As stated above, "The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, but within a strict, short-leashed contestable period and process" (Presbyterian Hospital, supra at 286).

preclusion" (id. at 224).   Here, no timely disclaimer has been pleaded with respect to the claims of "excessive" or "unnecessary" treatment or tests (see, e.g., Exhibit 1, ¶ 16, 17, 20, 25), and where such disclaimer was made, the claims were either arbitrated or payment has not been made and therefore plaintiff can not have sustained any damage as a result.

"Applying preclusion to untimely defenses of fraud based in excessive billing or unnecessary services or service provided by unlicensed individuals, seems to this Court to comply with the reasoning of the New York Court of Appeals in *Central General and Presbyterian Hospital*" (Valley, *supra* at 225).   Indeed, "the Court of Appeals expressly noted that the fraud exception from preclusion for untimely denials does not apply to a defense that the provider's treatment was excessive, as that defense does not ordinarily implicate a coverage matter" Valley Psychological, P.C. v. Liberty Mut. Ins. Co., 30 A.D.3d 718, 719, 816 N.Y.S.2d 239 [3rd Dept. 2006] [citation and internal quotation omitted]).

Judge Hurley's conclusion is far from unique and, indeed, fails to apprehend the full breadth of *Central General* and *Presbyterian Hospital* (both *supra*) preclusion principles.   Indeed, Judge Hurley's Valley ruling is at odds with a recent Second

Department pronouncement in a manner even more adverse to plaintiff's position.  In <u>Valley</u>, Judge Hurley sided, to some extent, with the dissent in <u>Fair Price Medical Supply Corp. v. Travelers Indem. Co.</u> (9 Misc3d 76, [App. Term, 2nd Dept 2005]) ("<u>Fair Price I</u>").  In <u>Fair Price I</u> the dissent would have permitted the carrier to seek recovery for fraud in the nature of billing for services that were never provided (an allegation not present in the instant action).  In the last month in <u>Fair Price Medical Supply Corp. v. Travelers Indem. Co.</u> (___AD3d ___, 2007 WL 1704621 [June 12, 2007, 2nd Dept.] [slip opinion] ["<u>Fair Price II</u>"]), in reviewing <u>Fair Price I</u> (and considering Judge Hurley's ruling [*id.* at *4), the Second Department unanimously rejected the view of the dissent in <u>Fair Price I</u> which was aligned with Judge Hurley's unnecessarily broad grant of the kinds of fraud which plaintiff would not be precluded from asserting.  <u>Fair Price II</u> (as did the majority in <u>Fair Price I</u>) found preclusion warranted for violation of the thirty-day rule even where services were billed for and paid by the carrier, but never rendered (*id.* at *5).

Nevertheless, Judge Hurley's finding of preclusion, and even more, the holding in <u>Fair Price II</u>, is the logical progeny of *Central General* and *Presbyterian Hospital* and is consistent with the underlying policy and legislative intent behind New York's no-

fault laws:

> No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits (see, <u>Montgomery v. Daniels</u>, 38 N.Y.2d 41, 378 N.Y.S.2d 1). That is part of the price paid to eliminate common-law contested lawsuits.  Indeed, contrary to the insurer's assertions, preclusion of this type was an available remedy at common law, and if this important facet of the juridical rights and remedies among the various interested parties is to be deemed eliminated, it must be evident more plainly and expressly as this would be in derogation of a common-law protection.  The tradeoff of the no-fault reform still allows carriers to contest ill-founded, illegitimate and fraudulent claims, <u>but within a strict, short-leashed contestable period and process</u> designed to avoid prejudice and red-tape dilatory practices.

> To string out belated and extra bites at the apple is, on the present state of the law, inherently contradictory and unfounded under the statutes, regulations and policies that pertain to and govern this dispute, and we should not countenance such practices on the state of this record and these regulations and statutes.   If more harmony and clarity are to be achieved, we earnestly invite the Legislature to study and remedy the Rube-Goldberg-like maze.

(<u>Presbyterian Hospital in the City of New York v Maryland Casualty Company</u>, 90 N.Y.2d 274, 286 [1997] [emphasis added]; <u>see also</u>, <u>Devonshire Surgical Facility v GEICO</u>, 14 Misc.3d 1208[A], 2006 WL 3770886 *6 [N.Y.Cty. Civ.Ct. [2006] [unreported disposition]; <u>Application of Park Radiology P.C. v Allstate Ins. Co.</u> 2 Misc.3d 621, 625 [Rich.Cty Civ.Ct. 2003] [Vitaliano, J.])

To be sure, there have been Courts in this District that have rejected Judge Hurley's decision and embraced the position of the dissent in <u>Fair Price I</u> (<u>see</u>, <u>e.g.</u>, <u>State Farm Mutual Automobile</u>

Insurance Company v Grafman, 04 CV 2609, May 22, 2007 [Gold, Magistrate Judge] [holding recoupment of fees permissible upon affirmative claims of fraud made outside the thirty-day rule]), but they have done so prior to the further repudiation of the Appellate Term dissent in Fair Price I by the Appellate Division, Second Department in Fair Price II. Further, as the Valley Court found, it is senseless to find fees that cannot be withheld absent timely disclaimer to be recoupable despite the absence of that disclaimer:

> If no-fault insurers are precluded from raising fraudulent billing in the form of unnecessary or excessive services as a defense to non-payment absent a timely denial, then certainly such allegations cannot support an affirmative claim absent a timely denial. *Cf. Presbyterian Hosp.,* 90 N.Y.2d at 285, 660 N.Y.S.2d 536 (stating no-fault's prompt payment of uncontested first party benefits "is part of the price paid to eliminate common law contested actions").

(Valley, supra at 227)

Thus, with respect to its claims falling in the class of Categories 1 and 2, plaintiff is precluded from bringing its claims and fails to state a cause of action upon which relief can be granted.

**B. Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity As Failing To Support Its Cause Of Action For Fraud**

"To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity,

16

scienter, reliance and injury" (<u>Small v. Lorillard Tobacco Co., Inc.</u>, 94 N.Y.2d 43, 57, 698 N.Y.S.2d 615, [1999]). Here, of course, plaintiff can assert no injury with respect to the claims it has not paid whether as a result of a favorably arbitrated decision or otherwise. Further, as set forth above, where plaintiff failed to timely disclaim, the great weight of authority demonstrates that they cannot now seek to recoup payments on lack of medical necessity claims. Indeed, cases gathered in the Valley (*supra*) decision, while far from exhaustive, fairly demonstrate that proposition:

> The lower New York courts have also held that claims of fraud based on schemes to bill for unnecessary or excessive services, the use of improper billing codes or services by unlicensed individuals must be asserted in a timely denial or they are precluded. *See, e.g., Valley Psych. P.C. v. Liberty Mut. Ins. Co.,* 30 A.D.3d 718, 816 N.Y.S.2d 239 (3d Dept.2006) (billing for unlicensed individuals subject to preclusion); *LMK Psych. Serv. P.C. v. Liberty Mut. Ins. Co.,* 30 A.D.3d 727, 816 N.Y.S.2d 587 (3d Dept.2006) (claim that billing misrepresented as treating doctor, a doctor who did not provide services or supervise the services provided, held subject to preclusion); *Bonetti v. Integon Nat. Ins. Co.,* 269 A.D.2d 413, 703 N.Y.S.2d 217 (2d Dept.2000) (claim of excessive surgeries subject to preclusion); *Mount Sinai Hosp. v. Triboro Coach Inc.,* 263 A.D.2d 11, 699 N.Y.S.2d 77 (2d Dept.1999) (discussing generally preclusion of claims for excessive or unnecessary services); *Country-Wide Ins. Co. v. Zablozki,* 257 A.D.2d 506, 684 N.Y.S.2d 229 (1st Dept.1999) (claim that unreasonable and unnecessary tests were performed subject to preclusion); *Benson Med. P.C. v. Progressive Northeastern Ins. Co.,* 12 Misc.3d 144(A), 824 N.Y.S.2d 760 (App. Term 2006) (claim asserting fraud through the use of incorrect billing codes subject to

preclusion); *AT Medical P.C. v. Utica Mut. Ins. Co.,* 11 Misc.3d 142(A), 819 N.Y.S.2d 846 (App. Term 2006) (claims of fraudulent billing and unnecessary and medically inappropriate treatment subject to preclusion); *MGM Psych. Care P.C. v. Utica Mut. Ins. Co.,* 12 Misc.3d 137(A), 824 N.Y.S.2d 763 (App. Term 2006) (claims of fraudulent billing and excessive medical treatment subject to preclusion); *Careplus Med. Supply Inc. v. State-Wide Ins. Co.,* 11 Misc.3d 29, 812 N.Y.S.2d 736 (App. Term 2005) (provider fraud in form of fraudulent billing and excessive medical treatment subject to preclusion); <u>*Tahir v. Progressive Cas. Ins. Co.,* 12 Misc.3d 657, 814 N.Y.S.2d 507 (Civ.Ct., N.Y. City 2006)</u> (claim of medically inappropriate treatment subject to preclusion).

<u>(Allstate Insurance Company, et al. v Valley Physical Medicine & Rehabilitation, P.C., et al.,</u> <u>supra</u> at 224-225)

Thus, for the reasons stated previously and herein, plaintiff's claims of fraud on medical necessity grounds fails to state a claim upon which relief can be granted.

## C. Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity As Failing To Support Its Cause Of Action For Unjust Enrichment

"To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered'" (<u>Citibank v Walker</u>, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48 [2nd Dept. 2004] quoting <u>Paramount Film Distr. Corp. v. State of New York</u>, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388 [1972], *cert. denied* 414 U.S. 829

18

[1973]).

Here, as previously set forth, defendants are precluded from pressing the "equity and good conscience" on medical necessity grounds as to those claims where it failed timely disclaimer under the thirty-day rule (Valley, supra at 227).

Further, plaintiff's claims are barred by *res judicata* or collateral estoppel as the result of arbitral adjudications adverse to it; where it prevailed in arbitration, it cannot recover what it never paid as a result as it fails in the "enrichment" element. Thus, as previously stated, to the extent plaintiff seeks to press a cause of action for claims that were subject to arbitration, it fails to state a claim upon which relief can be granted.

Moreover, plaintiff's pleading makes clear that it seeks recovery under this cause of action for payments it made back to 1998.[7]  The statute of limitations for unjust enrichment is six

---

[7]This is clear from plaintiff's pleading in which it alleges $1.75 million in damages upon its medical necessity ground (Exhibit 1, ¶ 71), as opposed to the alleged $1 million it seeks in its unjust enrichment claim arising from its "fraudulent incorporation" theory (*id.* at 83) in obeisance to the Court of Appeal's holding in State Farm Mut. Auto. Ins. Co. v. Mallela (4 N.Y.3d 313, 794 N.Y.S.2d 700 [2005] that "no cause of action for fraud or unjust enrichment would lie for any payments made by [] carriers before * * * April 4, 2002" (id. at 322).

19

years (CPLR 213 [1]).[8]   Thus, to the extent plaintiff seeks to press this cause of action for claims arising outside of the six year statute, here too it fails to state a claim upon which relief can be granted.

## D. Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity As Failing To Support Its RICO Claim

"Racketeering activity" is defined as certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343 (18 U.S.C. § 1961[1][B]).  Even assuming *arguendo* that plaintiff's medical necessity grounds were valid - and defendants contest that vehemently - it would be utterly senseless to conclude that it could recover treble its claimed damages where, as discussed above, they are precluded from recovering their damages in the singular.

Indeed, absent actionable fraud, defendants cannot use that alleged fraud to underpin their RICO claims: "Because the common law fraud is dismissed, there are no valid allegations of 'fraud' to underpin [* * *] RICO allegations and those claims must be dismissed as well" (Morin v. Trupin, 711 F.Supp. 97, 105 [S.D.N.Y.

---

[8]In light of the discovery exception to the limitation for fraud, a mixed question of law and fact which would require discovery to adjudicate, defendants do not press - nor waive - the application of that statutory limitations in this brief.

1989]).


A portion of plaintiff's claims are barred for other reasons
as well.  The statute of limitations for civil RICO claims is four
years.


> * * * The statute begins to run "when the plaintiff
> discovers or should have discovered the RICO injury." *Tho*
> *Dinh Tran v. Alphonse Hotel Corp.,* 281 F.3d 23, 35 (2d
> Cir.2002) (further quotation omitted), *overruled on other*
> *grounds by Salyton v. Amer. Exp. Co.,* 460 F.3d 215 (2d
> Cir.2006). It is the discovery of the injury, and not of
> the underlying predicate acts, which triggers the statute
> of limitations. *Rotella v. Wood,* 528 U.S. 549, 555-57,
> 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000).
>
> In the Second Circuit there is a separate accrual
> rule. Under that rule "a new claim accrues and the
> four-year limitation period begins anew each time a
> plaintiff discovers or should have discovered a new and
> independent injury." *In re Merrill Lynch Ltd. P'ships*
> *Litig.,* 154 F.3d 56, 59 (2d Cir.1998). "A necessary
> corollary of the separate accrual rule is that a
> plaintiff may only recover for injuries discovered or
> discoverable within four years of the time suit is
> brought.... As long as separate and independent injuries
> flow from the underlying RICO violations-regardless of
> when those violations occurred-plaintiff may wait
> indefinitely to sue, but may then win compensation only
> for injuries discovered or discoverable within the
> four-year window before suit was filed * * *

(Valley, supra at 228)


Accordingly, to the extent plaintiff seeks to incorporate in
its RICO claims alleged injuries outside of the four year statute

21

of limitations, it fails to state a claim upon which relief may be granted for that reason as well.

**E.  Plaintiff's Claims Of Overbilling Or Lack Of Medical Necessity As Failing To Support A Cause For Declaratory Relief**

The Declaratory Judgment Act provides that a court "may declare the rights and other relations of any interested party seeking such declaration" (28 USC § 2201 [a]).  However, the exercise of jurisdiction over claims brought under the Act is discretionary.  "It is within the discretion of the district court to decline to exercise its jurisdiction to grant declaratory relief" (Lebowich v O'Connor, 309 F.2d 111, 112 [2nd Cir. 1962]; see also, e.g., Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95 [FN17], 113 S.Ct. 1967 [1993]).  Nevertheless:

> A dispute of a hypothetical, abstract, or academic nature is not a justiciable controversy.  For an issue to be justiciable it must be definite and concrete, must touch the legal relations of the parties, and must be subject to a judicial grant of a specific relief through a court decree of a conclusive character, Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-241 (1937); and see Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

(Lebowich v O'Connor, supra at 113)

> The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. As the Court noted in North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404 (1971), a

22

> federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' Its judgments must resolve "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

(Preiser v. Newkirk, 422 U.S. 395, 95 S.Ct. 2330 [1975] [citation omitted])

"[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*" (Preiser v. Newkirk, supra quoting Maryland Casualty Co. v. Pacific Co., 312 U.S. 270, 61 S.Ct. 510 [1941] [emphasis in original]).

It is the "party seeking a declaratory judgment [who] has the burden of establishing the existence of an actual case or controversy" (Cardinal Chemical Co. v. Morton Intern., Inc., supra at 95).

Here, plaintiff's abstract prayer for relief seeks that defendants be declared not entitled to collect no-fault benefits for any "unpaid professional charges." Plaintiff's lack of enumeration or qualification of these "unpaid professional charges"

23

underscores their abstract and hypothetical nature.  Indeed, these "unpaid professional charges" are in either one of two states:

1) Presently in the arbitration process.0

2) Presently in repose

As to the latter category, in fact, many - if not virtually all - of these claims are being abandoned by defendants as a matter of economics.  Without an ongoing demand for payment on one side, and a resistance to payment on the other, they present no controversy for this Court to decide.  Indeed, plaintiff has failed to plead the elements of a case or controversy with respect to these "pending" claims for good reason: its existence is too hypothetical.

Nor can plaintiff complain here that such a declaration would establish future or ongoing rights with respect to claims. Presently the defendant P.C.'s are in the process of ceasing operation, although new P.C.'s are likely to take their place. This is not the function of some "doc-in-the-box" scheme as plaintiff might swipe low, but rather a function of economics as plaintiff's vast resources permits it to so burden defendant P.C.'s that their abandonment becomes a business judgment.

24

Thus, largely plaintiff fails to state for declaratory relief as it fails to present a case or controversy. Even assuming *arguendo* an adequate case or controversy was pleaded, defendants submit this Court should properly exercise its discretion and decline to hear plaintiff's claim in any event.

To the extent plaintiff seeks declaration regarding claims in arbitration, once again tracking Judge Hurley's reasoning in <u>Valley</u> (<u>supra</u>), we believe this Court should abstain from adjudicating such portion of plaintiff's declaratory cause.

Here, the no-fault arbitration process has been initiated on a small portion of the outstanding claims which arguably do present an actual case or controversy. Nevertheless, the absence of any federal issues weighs heavily in favor of abstention (<u>National Union Fire Insurance Co. of Pittsburgh, PA. v Karp</u>, 108 F.3d 17, 20-23). Further, "New York has a strong interest in regulating its no-fault system and it would be unnecessarily duplicative for this Court to interfere with ongoing state court proceeding[s] and effectively participate in a race to res judicata" (<u>Valley</u>, supra at 32 [citations and internal quotations omitted]). Indeed, even assuming *arguendo* that none of the outstanding claims were to be abandoned, the state court or arbitration system is far better

25

suited to hear claims which potentially involve numerous mini-trials examining the treatment afforded to hundreds of individual patients.

Finally, to the extent plaintiff seeks a general declaration of rights with respect to past claims for which it can have no remedy (e.g., barred by the thirty-day rule or adjudicated in arbitration), it is barred from doing so:

> [A] complaining party must show "an injury to himself that is likely to be redressed by a favorable decision." Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 96 S.Ct. 1917, 1924 (1976). A ruling that does not provide any relief to the prevailing party ignores the duty of federal courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.
>
> (Boston Firefighters Union Local 718 v. Boston Chapter, N.A.A.C.P., Inc., 468 U.S. 1206, 1209 104 S.Ct. 3576) [1984] [some citations and internal quotation omitted])

Thus, plaintiff has failed to plead the requisite elements of actual controversy with respect to "unpaid professional charges" (for which collection may never be sought) and cannot properly seek a generalized declaration regarding matters not in actual controversy. Thus, inasmuch and to that extent, plaintiff has failed to state a claim upon which relief can be granted. As to

26

the relatively few claims that are presently in the arbitration process, it is respectfully submitted that this Court should exercise its discretion, as it is well-established it properly may, and abstain from hearing plaintiff's claim thereby avoiding the race to *res judicata* that would otherwise result.


**POINT III**

**Plaintiff's Claims Relating To Alleged "Fraudulent Incorporation"**

**A. In General**

Turning now to the second theoretical branch which underlies plaintiff's causes of action, plaintiff claims defendants' alleged "fraudulent" incorporation of defendant corporate entities.


Under State Farm v Mallela (4 NY3d 313 [2005]), assuming *arguendo* predicate facts, plaintiff may properly *withhold* - as opposed to *recover* - reimbursement for claims made subsequent to April 4, 2002, the date of the New York Superintendent of Insurance's revision of 11 N.Y.C.R.R. § 65-3.16 (a) (12).[9] That section provides:

> A provider of health care services is not eligible
> for reimbursement under section 5102(a)(1) of the
> Insurance Law if the provider fails to meet any
> applicable New York State or local licensing requirement

---

[9]Notwithstanding the Court of Appeals' holding, the regulation apparently became effective on April 5, 2002.

necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

Nevertheless, it is clear that plaintiff can properly present nothing in its complaint that arises from alleged fraudulent incorporation grounds prior to April 4, 2002 and, to the extent it does, it fails to state a claim upon which relief can be granted. As stated in <u>Mallela</u>:

> Because we rest our holding on the Superintendent's amended regulation declaring fraudulently licensed corporations ineligible for reimbursement, no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before that regulation's effective date of April 4, 2002.

(<u>Mallela</u>, <u>supra</u> at 322)

In Judge Hurley's February 21, 2007 Decision and Order in <u>Valley</u> (supra), the Court provided a helpful exegesis:

> In a well-reasoned decision with which this Court agrees, the Appellate Term has read *Mallela* as holding that the revised regulation "altered the common law *prospectively* such that an insurance carrier may maintain a cause of action against a fraudulently incorporated medical service corporation to recover assigned first-party no-fault benefits which were paid by the insurer to such medical service corporation after the regulation's effective date." *Metroscan,* 823 N.Y.S.2d at 821-22 (emphasis added).
>
> Allstate's argument that *Mallela* does not preclude the recovery of no-fault payments made prior to April 2, 2004

28

[sic], has also been rejected by the Appellate Division, First Department. *See Allstate Ins. Co. v. Belt Parkway Imaging P.C.,* 33 A.D.3d 407, 823 N.Y.S.2d 9 (1st Dept.2006). In *Belt Parkway,* the First Department upheld the dismissal of Allstate's causes of action for fraud and unjust enrichment to recover for payments made before April 4, 2002 based on the fraudulent licensure of the defendants therein. The *Belt Parkway* Court found <u>*Mallela*</u> dispositive. Further, it rejected Allstate's attempt to distinguish *Mallela* on the ground that its claims rested on the common law, stating such claims are not cognizable under the common law. *Id.* at 408, 823 N.Y.S.2d 9.

Following suit, this Court rejects Allstate's fraud and unjust enrichment causes of action, based on Defendants' alleged fraudulent incorporation and seeking to recover for no-fault payments made to Defendants prior to April 4, 2002. These causes of action fail to state a claim.

(<u>Valley</u>, <u>supra</u> at 222-223 [footnote omitted])

Thus, to the extent plaintiff's seeks recovery for payments under fraud and unjust enrichment theories based upon fraudulent licensure (*compare*, Exhibit 1 ¶¶ 78 and 83) for services paid prior to April 4, 2002, those claims must be dismissed.  Indeed, as set forth below (*infra* III b), substantial authority asserts that no payments made prior to the 2005 decision in <u>Mallela</u> can be recovered.  Of course, absent actionable fraud, none of these alleged events may be predicate for a RICO claim.

Nevertheless, whether plaintiff can assert a right to recover

fees it paid for services subsequent to April 4, 2002[10] - as opposed to withhold them - allegations of fraudulent incorporation notwithstanding, presents a different question:

> * * * The New York Courts have distinguished between denying an unlicensed entity compensation and permitting the recovery of a fee after it has been paid. The lack of a license does not permit the recovery of a fee from the unlicensed provider *after* it has been paid. *Metroscan,* 823 N.Y.S.2d at 821 (citing *Johnston v. Dahlgren,* 166 N.Y. 354 (1901); *Goldman v. Garofalo,* 71 A.D.2d 650, 418 N.Y.S.2d 803 (1979)).

<u>Valley</u>, <u>supra</u> at 222-223 [emphasis in original])


<u>Mallela</u> explicitly did not determine whether State Farm could recover money already paid out, upon an assertion of fraudulent incorporation, either under theories of fraud or unjust enrichment (<u>Mallela</u>, <u>supra</u> at 332). Defendants submit that here, too, the <u>Valley</u> court was more conservative with applying preclusion to plaintiff's claims for recovery relying upon fraudulent incorporation grounds. In doing so, Judge Hurley relied upon the Appellate Term decision in <u>Metroscan Imaging, P.C. v Geico Ins. Co.</u> (13 Misc.3d 35, 823 N.Y.S.2d 818 [App.Term, 2nd and 11th Jud. Dist. 2006]), foregoing contrary Appellate Division authority in <u>Goldman V Garofalo</u> (71 A.D.2d 650, 418 N.Y.S.2d 803 [2nd Dept. 1979])

---

[10]Or the <u>Mallela</u> decision in 2005.

(<u>Valley</u>, <u>supra</u> at 222-223).[11]  It is submitted that to the extent plaintiff seeks to recover fees it already has paid on "fraudulent incorporation" grounds, it fails to state a claim upon which relief can be granted.

## B. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Its Cause Of Action For Fraud

Here, in addition to the reasons set forth above, plaintiff fails to state a cause of action for fraud because it lacks one essential element - harm or injury.

Plaintiff here does not allege that medical services were not provided by duly licensed professionals.  Instead, it alleges that these services were provided by such professionals working for an entity without a technically proper license or were billed for by such entity.  Under its "fraudulent incorporation" theory, plaintiff's harm is impalpable.  At worst, it is that the services of these medical providers, who it would have been otherwise obligated to pay had they been billed for in their own name, were billed for on behalf of an entity whose bona fides plaintiff questions.

---

[11]Of course, for the reasons set forth previously (Point II, A [a]), any claims where alleged fraudulent incorporation grounds were adjudicated in arbitration are barred from re-litigation.

Plaintiff does not allege under this thread of its causes of action that the services themselves were not provided to plaintiff's insureds by otherwise licensed providers and were not otherwise reimbursable under its policy.  Thus, services were rendered, it was liable to pay for those services and, presumably, in some cases did, and therefore it suffered no substantive` injury.  As in Universal Acupuncture Pain Services, P.C. v State Farm Mutual Automobile Insurance Company (196 F.Supp.2d 378, 387 [S.D.N.Y. 2002]) "[h]ere, State Farm has lost no benefit, nor suffered an injury, that exists independently of [defendants'] violation of [New York Business Corporations Law ] section 1503" (*id.* at 387]).

Nor can plaintiff show causation of any injury by defendants' alleged conduct.  "[O]ne notion traditionally included in the concept of proximate causation is the requirement that there be "some direct relation between the injury asserted and the injurious conduct alleged" (Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 235 [2nd Cir. 1999]).  Here, plaintiff apparently alleges that defendants' "fraudulent" incorporation caused it to pay for services to its insured by licensed professionals it would have had to pay had those professionals billed for them directly.  There is no causation of

32

harm here.

Indeed, it is a stretch of definition to characterize "fraudulent incorporation" as fraud at all:

> * * * because of the loose use of the term "fraud" in the no-fault area, care must be taken to distinguish what "fraud" is claimed to be at issue * * * and the "provider fraud" of not being a properly licensed health services facility truly poses an issue of not being eligible to receive reimbursement, rather than fraud (<u>State Farm Mut. Auto. Ins. Co. v. Mallela</u>, 4 N.Y.3d 313, 320, 794 N.Y.S.2d 700 [2005]; 11 N.Y.C.R.R. 65-3.16[a][12], "A provider of health care services is not eligible for reimbursement under section 5102[a][1] of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement"). As these examples illustrate, a "fraud" defense in the no-fault area often actually refers to a challenge to coverage or eligibility for reimbursement.

(<u>Tahir v Progressive Casualty Insurance Company</u>, 12 Misc.3d 657, 662-663, 814 N.Y.S.2d 507 [N.Y. Cty. Civ. Ct. 2006])

In any event, even assuming *arguendo* that plaintiff could articulate an actionable injury - and defendants assert it cannot - following the reasoning of the Court in <u>St. Paul Travelers Ins. Co. v. Nandi</u>, (15 Misc.3d 1145(A), 2007 WL 1662050 [N.Y.Sup., May 25, 2007] [slip copy, unpublished disposition]), it could not recover for any payments made prior to the Court of Appeals' 2005 decision in <u>Mallela</u>:

Although the question certified to the court in *Mallela*

was limited to fraudulent incorporation, prior to *Mallela* no private right of action existed which permitted an insurer to seek enforcement of the governing statutory provisions and regulations or to recover damages based upon the breach of the same. Therefore, Travelers' causes of action for fraud and unjust enrichment to recover no-fault payments, whether based on the fraudulent incorporation, failure to obtain a license to perform acupuncture, or the use of independent contractors to perform the acupuncture services is limited to payments made after April 2, 2004.[sic] Travelers may not seek to recover no-fault payments it made the defendants prior to that date.

(<u>ida</u> at *8)

The decision of the Court in <u>St. Paul's</u> was not unique.  In <u>Universal Acupuncture Pain Services, P.C. v State Farm Mutual Automobile Insurance Company</u> (supra), the Court noted:

> The ban on the corporate practice of medicine was intended to protect consumers of health care services, not insurers who pay for those services.  Section 1503 of the Business Corporation Law was therefore not intended to serve as "a cause of action for an [insurer] injured by its violation," but rather "as a general police regulation, with its violation made punishable solely as a public offense." *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 324, 464 N.Y.S.2d 712, 451 N.E.2d 459 (1983) (citation, quotation marks omitted). Thus, a cause of action is not implied and State Farm cannot sue for damages based upon Universal's violations of section 1503 of the BCL.

(<u>Universal Acupuncture Pain Services, P.C.,</u> supra at 386 [some citations and internal quotations omitted]; <u>see</u> <u>also</u>, <u>Insurance Company v 563 Grand Medical, P.C.</u>, 4 Misc.3d 1020(A), 798 N.Y.S.2d 345 [table], 2004 WL 2008605 [Sup. Ct., Oswego Cty, 2004] [insurer in could not recover under a theory of common law fraud for a violation of BCL § 1503 because the statute provides no private right of action for a violation thereof and because the insurer alleged no substantive injury apart from the violation])

34

Further, of course, to the extent plaintiff alleges corporate "fraud" as a result of mere technical violations, it fails to state a claim for that reason as well:

In <u>Mallela</u>, the Court of Appeals made clear that:

In the licensing context, carriers will be unable to show "good cause" unless they can demonstrate behavior tantamount to fraud. Technical violations will not do. For example, a failure to hold an annual meeting, pay corporate filing fees or submit otherwise acceptable paperwork on time will not rise to the level of fraud.

(<u>Mallela</u>, <u>supra</u> at 322)

## C. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Its Cause Of Action For Unjust Enrichment

In addition to the bars to fraud claims premised upon "fraudulent incorporation" which are equally applicable here, as set forth above, plaintiff's assertion of this claim would leave *it* unjustly enriched.

* * * In general, New York courts are reluctant to require the return of sums previously paid, or even to void one party's duty to perform under a contract, for lack of a statutorily required license. *See Lloyd Capital Corp. v. Pat Henchar, Inc.,* 80 N.Y.2d 124, 128, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992); *Charlebois v. Weller Assocs.,* 72 N.Y.2d 587, 595, 535 N.Y.S.2d 356, 531

35

N.E.2d 1288 (1988).   That premise is particularly
relevant here, where State Farm's insureds received the
benefits of acupuncture services rendered by Universal's
duly qualified acupuncturists.   As Justice Cardozo
explained, while:

> [t]he law may at times refuse to aid a
> wrongdoer in getting that which good
> conscience permits him to receive[,] it will
> not for that reason aid another in  taking
> away from him that which good conscience
> entitles him to retain.

*Schank v. Schuchman,* 212 N.Y. 352, 359, 106 N.E.  127
(1914).   Universal may not have been eligible for the
benefits in the first place, but good conscience entitles
it to retain the money paid for services rendered.

(Universal Acupuncture Pain Services, P.C., v State Farm Mutual
Automobile Insurance Company, 196 F.Supp.2d 378, 387-388 [S.D.N.Y.
2002])

Once again, "[h]ere, State Farm has lost no benefit, nor

suffered an injury, that exists independently of [defendants']

violation of [New York Business Corporations Law] section 1503"

(Universal, supra at 387).   Thus, plaintiff has suffered no

cognizable injury from defendants' "fraudulent incorporation" which

would permit it to recover fees it already paid which, in any

event, is contrary to the settled law of New York.   Inasmuch, it

has failed to state a claim upon which relief may be granted.


D. Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To

Support Its RICO Claim

It is this same lack of palpable injury that enfeebles

plaintiff's RICO claim.  "To invoke RICO's civil remedies, a plaintiff must have been 'injured in his business or property *by reason of* a violation of section 1962.' § 1964(c)" (<u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d 1335, 1344 [2nd Cir. 1994] [emphasis in original]).

Here, State Farm can point to no substantive injury arising from defendants' alleged licensing violations - it does not plead that services to its insureds were not provided by licensed professionals and would not have been fully compensable had those professionals billed for them directly.  Plaintiff insurer cannot show, causally or in terms of injury, the requisite elements for standing of "an injury to the plaintiff's business or property, and [] causation of the injury by the defendant's violation" (<u>Lerner v. Fleet Bank, N.A.,</u> 318 F.3d 113, 120 [2nd Cir. 2003] [citation omitted]).  Indeed, "despite describing the proximate causation requirement as 'RICO standing,' such standing is not jurisdictional in nature under Fed.R.Civ.P. 12(b)(1), but is rather an element of the merits addressed under a Fed.R.Civ.P. 12(b)(6) motion for failure to state a claim" (id. at 129-130).

Nor, without causation and injury, can a cause of action for RICO conspiracy be maintained:

37

> Because a conspiracy - an agreement to commit predicate
> acts - cannot by itself cause any injury, we think that
> Congress presupposed injury-causing overt acts as the
> basis of civil standing to recover for RICO conspiracy
> violations. * * * [W]e hold that injury from an overt act
> is necessary and sufficient to establish civil standing
> for a RICO conspiracy violation

(Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 [2nd Cir.
1990] [citations omitted]; see, also, First Nationwide Bank v. Gelt
Funding Corp., 27 F.3d 763 , 769 [2nd Cir. 1994] ["In the context
of predicate acts grounded in fraud, the proximate cause
requirement means that the plaintiff must prove both transaction
and loss causation"])


**E.   Plaintiff's Claim Of "Fraudulent Incorporation" As Failing To Support Cause For Declaratory Relief**

For reasons similar to those set forth with respect to plaintiff's medical necessity claims, it is submitted that plaintiff fails to state a claim for declaratory relief or, even assuming *arguendo* that it did, alternatively, this Court should abstain from adjudicating such a claim.  With respect to the bulk of defendants' pending claims that were denied by plaintiff (or where additional verification was sought), they stand in repose and are likely to remain there as a matter of economics.  Of the relatively few that are in arbitration, plaintiff again invites this Court to engage in an unseemly race to *res judicata*

38

**POINT IV**

**__To The Extent The Complaint Is Not Otherwise Dismissed, Relief**

**Should Be Granted Under Rule 12 (f), Federal Rules Of Civil**

**Procedure, Ordering Portions Of Plaintiff's Complaint Stricken**

Rule 12 (f) provides "* * * the Court may order stricken from any pleading any * * * redundant, immaterial, impertinent, or scandalous matter."

The complaint in this case is rife with objectionable language like "doc-in-a box," "shell game" and "Fraudulently Incorporated PC's" (see, e.g., Exhibit 1, *infra* ¶ 10). Where allegations amount to nothing more than name-calling and do not contribute to plaintiff's substantive claims, the allegations should be stricken (Global View Ltd. Venture Capital v Great Central Basin Exploration, LLC, 288 F.Supp.2d 473, 481 [S.D.N.Y. 2003]).

Worse, whole swaths of the complaint discusses impertinent policy recommendations of outside medical associations. For instance, plaintiff alleges:

19.    The American Association of Neuromuscular Electrodiagnostic Medicine (AANEM"), which consists of thousands of neurologists and physiatrists and is dedicated solely to the scientifically based advancement of neuromuscular medicine, has adopted a Recommended Policy ("Recommended Policy") regarding the optimal use

39

of electrodiagnostic medicine to diagnose various forms
of neuropathies, including radiculopathies.  A copy of
the Recommended Policy is attached hereto as Exhibit A.
* * *

(Exhibit 1, ¶ 19)

Plaintiff then goes on to use this "Recommended Policy" as
what it would make to be the touchstone for proper diagnostic
procedures (see, e.g., Exhibit 1, ¶¶ 20, 25, 27).  These
recommendations are neither binding nor conclusive as to the proper
procedures or standards for the practice of medicine - nor were
they meant to be - and other respected authorities are available
who differ with these recommendations.  These references, as well
as plaintiff's other impertinent references and material, should be
stricken:

In addition to factual allegations, Plaintiff has
included in the First Amended Complaint references to
expert reports, statutory provisions, case law,
legislative histories, as well as exhibits and an
attorney's affidavit.  These references and other
materials are entirely unnecessary to any "short and
plain statement of the claim" Fed R. Civ. P 8 (a) (2),
and, more importantly, would be prejudicial if ever
reviewed by a jury.

(Nextel of New York v City of Mount Vernon, 361 F.Supp.2d 336, 340
[S.D.N.Y. 2005] [granting motion to strike references to expert
reports, case law, statutory provisions, and legislative history,
exhibits and attorney affidavits])

Further, plaintiff further makes prejudicial allegations
implicitly trying to lump defendants in with "other healthcare
providers who purport to render the laundry list of services to

40

patients at the Clinics" (Exhibit 1, *infra* ¶ 13) stating these Clinics "typically have financial kickback arrangements" (id.). Such allegations should be stricken  Reither's Beer Distributors, Inc. v Christian Schmidt Brewing Co. (657 F.Supp. 136, 143-145 [E.D.N.Y 1987]; see also, Kent v Avco Corporation, 815 F.Supp 67, 71 [D.Conn. 1992]).


**POINT V**

**This Action Should Be Dismissed Pursuant to Rule 12 (b) (7), Federal Rules Of Civil Procedure, For Failing To Join Parties Under Rule 19**

Rule 12 (b) (7) of the Federal Rules of Civil Procedure provides that the defense of "failure to join a party under Rule 19 made be made prior to answer.


Rule 19 provides, in pertinent part:

(a) Persons to be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to

41

do so, the person may be made a defendant, or, in a
proper case, an involuntary plaintiff.  If the joined
party objects to venue and joinder of that party would
render the venue of the action improper, that party shall
be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible.
If a person as described in subdivision (a)(1)-(2) hereof
cannot be made a party, the court shall determine whether
in equity and good conscience the action should proceed
among the parties before it, or should be dismissed, the
absent person being thus regarded as indispensable.  The
factors to be considered by the court include: first, to
what extent a judgment rendered in the person's absence
might be prejudicial to the person or those already
parties;  second, the extent to which, by protective
provisions in the judgment, by the shaping of relief, or
other measures, the prejudice can be lessened or avoided;
third, whether a judgment rendered in the person's
absence will be adequate;  fourth, whether the plaintiff
will have an adequate remedy if the action is dismissed
for nonjoinder.

In the instant action, part of plaintiff's claim is that

medical treatment or tests provided by defendants to its insured is

not reimbursable on grounds of fraudulent incorporation.  If such

a determination were to issue, defendants know of nothing that

would prevent the duly licensed providers involved from seeking

recovery of the value of services which they actually received and

were medically necessary and appropriate from plaintiff's insureds

for their services under a quantum meruit or unjust enrichment

theory.


With such a stake in the outcome of this litigation, it is

respectfully submitted that plaintiff's insured must be named in

this action.

Conclusion

As set forth above, defendants submit plaintiff's complaint almost universally fails to set forth claims upon which relief can be granted.  Defendants further submit this Court should abstain from deciding defendants' claim for declaratory relief, to the extent such a claim survives art all.  Assuming *arguendo* plaintiff's complaint might survive, the substance of it should largely be stricken as improper and, in any event, plaintiff fails to join parties necessary for a fair adjudication of its claims.


For the foregoing reasons, it is respectfully submitted defendants' motion should be granted.

Dated:    New York, New York
          July 10, 2007

                         Respectfully submitted,

                              /s/

                         Wolodymyr M. Starosolsky (WS 6067)
                         W.M. Starosolsky & Associates
                         *Attorneys for Defendants*
                         **ACCURATE MEDICAL, P.C., J.P.**
                         **MEDICAL , P.C., QUALITY MEDICAL**
                         **HEALTH CARE PROVIDER, P.C.,**
                         **JADWIGA PAWLOWSKI, M.D. and**
                         **HISHAM ELZANATY**
                         40 Exchange Place, Suite 1706
                         New York, New York 10005
                         (212) 232 0292

Neal Wiesner, Esq.
*Of Counsel*

43