## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

DIRECT DIAL
(212) 735-2450
DIRECT FAX
(917) 777-2450
EMAIL ADDRESS
SHEILA.BIRNBAUM@SKADDEN.COM

FOUR TIMES SQUARE
NEW YORK 10036-6522
——
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

March 9, 2012

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

**VIA ELECTRONIC FILING**
Hon. Marilyn D. Go, United States Magistrate Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:   *State Farm Mut. Auto. Ins. Co. v. Accurate Med.* (1:07-cv-00051-ENV-MDG)

Dear Magistrate Go:

We represent Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") and write in response to the letter dated March 2, 2012 (corrected March 5) from Wolodymyr Starosolsky, counsel for Defendants Dr. Jadawiga Pawlowski, Accurate Med., P.C., J.P. Med., P.C., and Quality Heath Care Prov., P.C. (the "Pawlowski Defendants"), in which they seek approval to move for civil contempt and unspecified "other remedies" against State Farm. (Dkt. Nos. 101-02.)

By way of background, the settlement provision providing for document destruction that the Pawlowski Defendants assert State Farm violated arises from the 2007 settlement of the instant action, in which State Farm sued Mr. Elzanaty (a non-doctor), the Pawlowski Defendants, and another doctor for committing extensive no-fault insurance fraud. Since that time, various consent agreements and orders (Exhibit A), available on New York State's website for Professional Misconduct and Discipline, have been entered against the Pawlowski Defendants requiring that, *inter alia*, (i) they not contest the State's charges that they illegally permitted, aided, or abetted a non-physician to run the professional corporations; (ii) their incorporation would be annulled; (iii) Dr. Pawlowski must provide all documents requested in further investigations; and (iv) Dr. Pawlowski must restrict her license and sever any professional ties with Mr. Elzanaty's medical facilities. It is against this backdrop that the Pawlowski Defendants now seek "equity" through contempt.

Before turning to the matters of law that compel the rejection of the Pawlowski Defendants' request, there is also no factual basis for their suggestion that State Farm engaged in contumacious conduct. First, contrary to the Pawlowski Defendants' conclusory assertions, State Farm's prior retained counsel took steps to destroy documents under the 2007 Settlement Agreement's document destruction provision. It was not until after Mr. Elzanaty filed his lawsuit in 2011 that it was discovered in the course of State Farm's investigation that despite those efforts certain documents were not destroyed, and, that to the best of State Farm's knowledge, the original copy of the fraud investigation file within State Farm's offices remains intact. Moreover, it was not until after Mr. Elzanaty filed his lawsuit, and the undersigned counsel was assigned, that State Farm concluded that the document destruction provision violates New York law and public

Hon. Marilyn D. Go
March 9, 2012
Page 2

policy. On its own initiative months ago, State Farm then affirmatively raised the issues and obtained approval to brief them. (*See* Dkt. No. 89 (11/16/11); Orders dated 11/28/11 and 12/16/11; 2011 *Elzanaty* Dkt. No. 43 (11/3/11).)[1]  Moreover, the alleged basis for Mr. Elzanaty's lawsuit -- that based on his "information and belief" State Farm disclosed documents to GEICO, which caused GEICO to sue him for insurance fraud -- is not true. Contrary to the his allegations, GEICO submitted an affidavit in this proceeding, stating that GEICO based its lawsuit on its own investigation, initiated years before this settlement, and that GEICO did not receive any documents or information from State Farm. (Exhibit B.)  In short, State Farm has not engaged in any conduct warranting a consideration of contempt.

Mr. Starosolsky's request also fails on the law. Civil contempt is a "drastic [measure of] relief," the availability of which has been "carefully limited" only to situations in which it is necessary to "coerce" or to "compensate."[2] Neither use is warranted here as a matter of law. "Coercion" is unnecessary because State Farm is not refusing to comply with an order. Rather, State Farm affirmatively raised these issues regarding the document destruction provision months ago. If State Farm's contentions in its extant motion regarding the document destruction provision are rejected, State Farm naturally intends to comply with any final adjudication and would not need to be "coerced" by being held in contempt. *See, e.g.*, *General Motors Corp. v. Gibson Chem. & Oil Corp.*, 627 F.Supp. 678, 682 (E.D.N.Y. 1986) (deferring issue of contempt sanctions where "[c]oercion of future compliance [is] unnecessary" because defendants would comply in future and there was no proof of actual damage). Nor would contempt be warranted as "compensation." If what the Pawlowski Defendants seek are attorneys' fees, the Settlement Agreement itself permits a prevailing party to seek attorneys' fees (Dkt. No. 92, ¶ 23), and it also provides a mechanism for seeking compensatory damages for alleged breaches, rendering their request for "compensation" through contempt wholly improper. Moreover, as State Farm separately argues in its motion, the document destruction provision should be declared void and unenforceable and thus alleged damages from a purported violation would fail as a matter of law.

The Pawlowski Defendants' request also should be denied on the grounds of judicial economy. Contrary to their assertions, an obligation found to be void and unenforceable cannot give rise to contempt for any period of alleged, past non-compliance. Indeed, based on the abundant precedent,[3] an opinion by Magistrate Mann recently correctly observed, "'[i]t is ... beyond cavil

---

[1] Mr. Elzanaty and the Pawlowski Defendants have received approval to file a cross-motion seeking to declare a letter provided by State Farm's prior retained counsel, purporting to restrict such counsel's practice, to be an enforceable part of the Settlement Agreement.

[2] *See In re Keene Corp.*, 168 B.R. 285, 288 (S.D.N.Y. 1994), ("Civil contempt . . . can be coercive or compensatory."), *appeal dismissed*, 182 B.R. 379 (S.D.N.Y. 1995); *Close-Up Int'l v. Berov*, 2010 WL 5558296, at *4 (2d Cir. Jan. 10, 2010) ("power . . . to impose contempt . . . is carefully limited"); *Freund v. Weinstein*, 2009 WL 4065585, at *1 (E.D.N.Y. Nov. 23, 2009) (Go, M.J.) (declining "at this juncture" to impose "drastic relief of contempt").

[3] *See, e.g.*, *United States v. United Mine Workers*, 330 U.S. 258, 295 (1947) ("right to remedial relief [civil contempt] falls with an injunction which events prove was erroneously issued"); *Buffalo Cour. Expr. v. Buffalo Eve. News, Inc.*, 601 F.2d 48, 59-80 (2d Cir. 1979) (civil contempt could not stand where orders violated were subsequently vacated

Hon. Marilyn D. Go
March 9, 2012
Page 3

that the claim for civil contempt must fall if the order that was disobeyed is subsequently reversed ... or its issuance exceeded the power of the issuing court.'" *Senese v. Hindle*, 2011 WL 4536955 (E.D.N.Y. Sept. 9, 2011) (citation omitted). Accordingly, contrary to Mr. Starosolsky's contentions, a request for civil contempt would be moot if State Farm's motion is granted.[4]

Before closing, Mr. Starosolsky's cryptic statement at page 2 that he intends to seek unspecified "other remedies" in addition to contempt does not provide any information as to what he is seeking in that regard and therefore cannot be evaluated and should be disregarded.

In sum, the Pawlowski Defendants' request fails on the facts and the law. Their attempt to inject civil contempt into these proceedings, before this Court has an opportunity to resolve the issues State Farm raised months ago regarding the document destruction provision, would derail the orderly resolution of this matter, divert the parties' time and resources, and should not be countenanced. Based on the state of the issues before the Court, there is no reason to proceed at this time on any issue relating to purported contempt, and their request should be seen for what it is: an undue strategic effort to attempt to apply pressure on State Farm and avoid the issues that State Farm has raised regarding the unenforceability of the document destruction provision.

Respectfully submitted,

*/s/ Sheila L. Birnbaum*
Sheila L. Birnbaum
Douglas E. Fleming III
Counsel for State Farm Mutual Automobile Ins. Co.

cc: Wolodymyr M. Starosolsky (via electronic filing and electronic mail)
    Steven Talan (via electronic filing and electronic mail)

---

due to legal and factual error); *In re Keene Corp.*, 168 B.R. 285, 290 (S.D.N.Y. 1994) (finding that setting aside order as erroneously issued necessarily vacated contempt for alleged violation of order because "'[i]t adjudges that it never should have passed; that the right which it affected to create was no right at all. To let the liability stand for past contumacy would be to give the plaintiff a remedy not for a right but for a wrong, which the law should not do." (quoting *Salvage Proc. Corp. v. Acme Tank Clean. Proc. Corp.*, 86 F.2d 727, 727 (2d Cir. 1936))).

[4] The Pawlowski Defendants' cases at page 2 actually *support*, or do not address, the foregoing principle that civil contempt sanctions cannot stand based on an obligation that is found to be void. *See Emery Air Freight Corp. v. Local Union*, 356 F. Supp. 974, 975 (E.D.N.Y. 1972) (refusing to find contempt and, although declining to reach issue, finding that Supreme Court's decision in *United Mine Workers, supra,* "makes clear that . . . contempt judgments should be set aside when the order upon which they are based is held on appeal to have been erroneously entered"); *Backo v. Local 281*, 308 F. Supp. 172, 177 (N.D.N.Y. 1969) (considering but then rejecting challenges to contempt finding where, unlike here, court-ordered obligation did not violate "statutory prohibition" or public policy; observing that proper remedy when obligation is called into question is to seek review, as State Farm has done); *Duracell v. Global Imports*, 660 F. Supp. 690, 692-95 (S.D.N.Y. 1987) (considering challenge to contempt finding on ground that consent judgment upon which it was based *later* became against public policy; not addressing whether contempt could stand if order had been unenforceable at time of entry).

# EXHIBIT A



### New York State Board for Professional Medical Conduct
*433 River Street, Suite 303 • Troy, New York 12180-2299 • (518) 402-0863*

Nirav R. Shah, M.D., M.P.H.
  Commissioner
  NYS Department of Health
James W. Clyne, Jr.
  Executive Deputy Commissioner
Keith W. Servis, Director
  Office of Professional Medical Conduct

Public

Kendrick A. Sears, M.D
  Chair
Carmella Torrelli
  Vice Chair
Katherine A. Hawkins, M.D., J.D.
  Executive Secretary

January 31, 2011

***CERTIFIED MAIL-RETURN RECEIPT REQUESTED***

Jadwiga H. Pawlowski, M.D.
19 East 80th Street
New York, NY 10021

RE:   License No. 119256

Dear Dr. Pawlowski:

Enclosed is a copy of Order BPMC #11-20 of the New York State Board for Professional Medical Conduct. This Order and any penalty provided therein goes into effect February 7, 2011.

If the penalty imposed by the Order is a fine, please write the check payable to the New York State Department of Health. Noting the BPMC Order number on your remittance will assist in proper crediting. Payments should be directed to the following address:

Bureau of Accounts Management
New York State Department of Health
Corning Tower, Room 1717
Empire State Plaza
Albany, New York 12237

Sincerely,

REDACTED

Katherine A. Hawkins, M.D., J.D.
Executive Secretary
Board for Professional Medical Conduct

cc: Lourdes Martinez, Esq.
    Garfinkel, Travis, Wild, P.C.
    111 Great Neck Road
    Great Neck, NY 11021

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

IN THE MATTER

OF

JADWIGA PAWLOWSKI, M.D.

CONSENT

ORDER

BPMC No. #11-20

Upon the application of (Respondent) JADWIGA PAWLOWSKI, M.D. in the attached Consent Agreement and Order, which is made a part of this Consent Order, it is

ORDERED, that the Consent Agreement, and its terms, are adopted and it is further

ORDERED, that this Consent Order shall be effective upon issuance by the Board, either

- by mailing of a copy of this Consent Order, either by first class mail to Respondent at the address in the attached Consent Agreement or by certified mail to Respondent's attorney, OR
- upon facsimile transmission to Respondent or Respondent's attorney, whichever is first.

SO ORDERED.

DATE: _1/28/11_

REDACTED

KENDRICK A. SEARS, M.D.
Chair
State Board for Professional Medical Conduct

NEW YORK STATE            DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

---------------------------------------------------------------

IN THE MATTER

OF

JADWIGA PAWLOWSKI, M.D., QUALITY MEDICAL
HEALTHCARE PROVIDER PC, J P MEDICAL PC,
ACCURATE MEDICAL PC, and NOLIA MEDICAL PC

---------------------------------------------------------------

CONSENT

AGREEMENT

AND

ORDER

JADWIGA PAWLOWSKI, M.D., represents that all of the following statements are true:

That on or about March 1, 1974, I was licensed to practice as a physician in the State of New York, and issued License No. 119256 by the New York State Education Department.  I am an officer and shareholder of the four professional service corporations identified in the caption of this consent agreement.  The articles of incorporation for the professional service corporations were filed with the New York State Department of State as follows: QUALITY MEDICAL HEALTHCARE PC (filed on 04/28/05); JP MEDICAL PC (filed on 12/29/95); NOLIA MEDICAL PC (filed on 10/25/07); ACCURATE MEDICAL, P.C. (filed on 10/05/98).

My current address is 19 East 80th Street, New York, New York 10021, and I will advise the Director of the Office of Professional Medical Conduct of any change of address.

I understand that the New York State Board for Professional Medical Conduct (Board) has charged me with one specification of professional misconduct.

A copy of the Statement of Charges, marked as Exhibit "A", is attached to and part of this Consent Agreement.

I agree not to contest the one specification of misconduct, in full satisfaction of the charges against me, and agree to the following penalty:

1

Pursuant to N.Y. Pub. Health Law § 230-a(3), my license to practice medicine in New York State shall be limited to preclude me:

- From being an officer, director and/or shareholder in a professional service corporation or any other type of physician business entity, with the one exception to this limitation being that I may be an officer, director or shareholder in a physician business entity in which I am the sole physician provider of patient care.
- From receiving funds from any third party for the rendering of a physician professional service that is not related to the direct provision of patient care.

Pursuant to N.Y. Pub. Health Law §§ 230-a(7) and (9), I shall be subject to a fine in the amount of fifteen hundred dollars ($1500.00) to be paid in full within one year of the effective date of this Order. Payments must be submitted to:

Bureau of Accounts Management
New York State Department of Health
Empire State Plaza
Corning Tower, Room 1717
Albany, New York 12237

I further agree that the Consent Order shall impose the following conditions:

That I agree to sever any professional relationship I may currently have and/or shall refrain from entering into any professional relationship with the following entities: Uptown Health Care Medical, Inc., New York Neuro and Rehab, Inc., East Tremont Ambulatory Surgical Center, Inc., and Jerome Family Health Center, Inc.

That Respondent shall remain in continuous compliance with all requirements of N.Y. Educ Law § 6502 including but not limited to

2

the requirements that a licensee shall register and continue to be registered with the New York State Education Department (except during periods of actual suspension) and that a licensee shall pay all registration fees. Respondent shall not exercise the option provided in N.Y. Educ. Law § 6502(4) to avoid registration and payment of fees. This condition shall take effect 120 days after the Consent Order's effective date and will continue so long as Respondent remains a licensee in New York State; and

That Respondent shall cooperate fully with the Office of Professional Medical Conduct (OPMC) in its administration and enforcement of this Consent Order and in its investigations of matters concerning Respondent. Respondent shall respond in a timely manner to all OPMC requests for written periodic verification of Respondent's compliance with this Consent Order. Respondent shall meet with a person designated by the Director of OPMC, as directed. Respondent shall respond promptly and provide all documents and information within Respondent's control, as directed. This condition shall take effect upon the Board's issuance of the Consent Order and will continue so long as Respondent remains licensed in New York State.

I stipulate that my failure to comply with any conditions of this Consent Order shall constitute misconduct as defined by N.Y. Educ. Law § 6530(29).

I agree that, if I am charged with professional misconduct in future, this Consent Agreement and Order shall be admitted into evidence in that proceeding.

I ask the Board to adopt this Consent Agreement.

3

I understand that if the Board does not adopt this Consent Agreement, none of its terms shall bind me or constitute an admission of any of the acts of alleged misconduct; this Consent Agreement shall not be used against me in any way and shall be kept in strict confidence; and the Board's denial shall be without prejudice to the pending disciplinary proceeding and the Board's final determination pursuant to N.Y. Pub. Health Law.

I agree that, if the Board adopts this Consent Agreement, the Chair of the Board shall issue a Consent Order in accordance with its terms. I agree that this Consent Order shall take effect upon its issuance by the Board, either by mailing of a copy of the Consent Order by first class mail to me at the address in this Consent Agreement, or to my attorney by certified mail, OR upon facsimile transmission to me or my attorney, whichever is first. The Consent Order, this agreement, and all attached Exhibits shall be public documents, with only patient identities, if any, redacted.  As public documents, they may be posted on the Department's website.

I stipulate that the proposed sanction and Consent Order are authorized by N.Y. Pub. Health Law §§ 230 and 230-a, and that the Board and OPMC have the requisite powers to carry out all included terms.  I ask the Board to adopt this Consent Agreement of my own free will and not under duress, compulsion or restraint.  In consideration of the value to me of the Board's adoption of this Consent Agreement, allowing me to resolve this matter without the various risks and burdens of a hearing on the merits, I knowingly waive my right to contest the Consent Order for which I apply, whether administratively or judicially, I agree to be bound by the Consent Order, and I ask that the Board adopt this Consent Agreement.

I understand and agree that the attorney for the Department, the Director of OPMC and the Chair of the Board each retain complete discretion either to enter

4

into the proposed agreement and Consent Order, based upon my application, or to decline to do so. I further understand and agree that no prior or separate written or oral communication can limit that discretion.

DATE  01 / 17 / 11

REDACTED
JADWIGA PAWLOWSKI, M.D.

5

The undersigned agree to Respondent's attached Consent Agreement and to its proposed penalty, terms and conditions.

DATE: _____

REDACTED

LOURDES MARTINEZ, ESQ.
Garfunkel Wild, P.C.
Attorney for Respondent Pawlowski

DATE: 1/19/11

REDACTED

DANIEL GUENZBURGER
Associate Counsel
Bureau of Professional Medical Conduct

DATE: 1/27/11

REDACTED

KEITH W. SERVIS
Director
Office of Professional Medical Conduct

6

<u>Exhibit A</u>

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| | |
|---|---|
| **IN THE MATTER**<br><br>**OF**<br><br>**JADWIGA PAWLOWSKI,M.D., QUALITY MEDICAL**<br><br>**HEALTHCARE PROVIDER PC, J P MEDICAL PC,**<br><br>**ACCURATE MEDICAL PC, and NOLIA MEDICAL PC** | **STATEMENT**<br><br>**OF**<br><br>**CHARGES** |

JADWIGA PAWLOWSKI, M.D., the Respondent, was authorized to practice medicine in New York State on or about March 1, 1974, by the issuance of license number 119256 by the New York State Education Department.  Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC were authorized as physician professional service corporations  by the New York State Department of State on various dates between December 1995 and October 2007.  Respondent PAWLOSKI is a shareholder, officer and director of the Respondent professional service corporations.

## FACTUAL ALLEGATIONS

A.     Pursuant to Article 15 of the Business Corporation Law, professional service corporations may only render professional services through individuals authorized by law to render such professional services as individuals.

     1.     Respondent Pawlowski permitted individuals who lacked a medical license to organize, operate and/or control Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC.

B.    Respondent QUALITY MEDICAL HEALTH CARE PROVIDER PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

C.    Respondent JP MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

D.    Respondent ACCURATE MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

E.    Respondent NOLIA MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

## SPECIFICATION OF CHARGES

### FIRST SPECIFICATION

**PERMITTING, AIDING OR ABETTING THE UNLICENSED PRACTICE OF MEDICINE**

Respondent PAWLOSKI is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(11) by permitting, aiding, or abetting an unlicensed person to perform activities requiring a license, as alleged in the facts of:

1.    A, A1, B, C, D, and/or E.

2

## SECOND THROUGH FIFTH SPECIFICATIONS

## FAILING TO COMPLY WITH STATE LAW

Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC are charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(16) by willfully and/or grossly negligently failing to comply with substantial provisions of State law governing the practice of Medicine, namely Article 15 of the Business Corporation Law, as alleged in the facts, respectively, of:

2. Paragraph B with regard to Respondent QUALITY MEDICAL HEALTH CARE PROVIDER PC.

3. Paragraph C with regard to Respondent J P MEDICAL PC.

4. Paragraph D with regard to Respondent ACCURATE MEDICAL PC.

5. Paragraph E with regard to Respondent NOLIA MEDICAL PC.

DATE:          January 20, 2011
               New York, New York

REDACTED
_____
Roy Nemerson
Deputy Counsel
Bureau of Professional Medical Conduct

3



### New York State Board for Professional Medical Conduct
433 River Street, Suite 303 • Troy, New York 12180-2299 • (518) 402-0863

Nirav R. Shah, M.D., M.P.H.
  Commissioner
  NYS Department of Health
James W. Clyne, Jr.
  Executive Deputy Commissioner
Keith W. Servis, Director
  Office of Professional Medical Conduct

*Public*

Kendrick A. Sears, M.D
  Chair
Carmella Torrelli
  Vice Chair
Katherine A. Hawkins, M.D., J.D.
  Executive Secretary

January 31, 2011

*CERTIFIED MAIL-RETURN RECEIPT REQUESTED*

Jadwiga H. Pawlowski, M.D.
19 East 80th Street
New York, NY 10021

Re: Nolia Medical, P.C., BPMC No. 11-21
    Quality Medical Healthcare Provider, P.C., BPMC No. 11-22
    Accurate Medical, P.C., BPMC No. 11-23
    J.P. Medical, P.C., BPMC No. 11-24

Dear Dr. Pawlowski:

Enclosed please find Order #'s BPMC 11-21 through BPMC No. 11-24 issued by the New York State Board for Professional Medical Conduct. These orders carry the penalty of annulment of the certificates of incorporation for the professional corporations listed and goes into effect February 7, 2011.

Sincerely,

REDACTED

Katherine A. Hawkins, M.D., J.D.
Executive Secretary
Board for Professional Medical Conduct

Enclosure

cc: Lourdes Martinez, Esq.
    Garfinkel, Travis, Wild, P.C.
    111 Great Neck Road
    Great Neck, NY 11021

NEW YORK STATE          DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

**IN THE MATTER**

**OF**

**JADWIGA PAWLOWSKI,M.D., QUALITY MEDICAL
HEALTHCARE PROVIDER PC, J P MEDICAL PC,
ACCURATE MEDICAL PC, and NOLIA MEDICAL
PC**

ANNULMENT

ORDER

BPMC No. #11-23

Upon the application of JADWIGA PAWLOWSKI, M.D., the licensed physician identified on the certificate of incorporation as the shareholder, officer and director of Respondent ACCURATE MEDICAL PC (professional service corporation #035376 filed on 10/O5/98, it is

ORDERED, that the Certificate of Incorporation of Respondent ACCURATE MEDICAL PC is hereby annulled and it is further

ORDERED, that this annulment order shall be effective upon issuance by the Board, either

- by mailing of a copy of this annulment order by first class mail to Respondent ACCURATE MEDICAL PC at the address registered with the Secretary of State, OR

- by mailing of a copy of this Annulment Order, either by first class mail to Jadwiga Pawlowski, M.D. at the address in the Consent Agreement and Order dated January 17, 2011, executed on behalf of ACCURATE MEDICAL PC by Jadwiga Pawlowski, M.D. or by certified mail to the attorney for Jadwiga Pawlowski, M.D., OR

- upon facsimile transmission to the attorney for Jadwiga Pawlowski, M.D.

SO ORDERED.

DATE: 1/28/11

REDACTED

KENDRICK A. SEARS, M.D.
Chair
State Board for Professional Medical Conduct

STATE OF NEW YORK  :  DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

IN THE MATTER

OF

JADWIGA PAWLOWSKI, M.D., QUALITY
HEALTHCARE PROVIDER PC, J P
MEDICAL PC, ACCURATE MEDICAL PC and
NOLIA MEDICAL PC

CONSENT
AGREEMENT
AND
ORDER

JADWIGA PAWLOWSKI, M.D., on behalf of QUALITY HEALTHCARE PROVIDER PC, J P MEDICAL PC, ACCURATE MEDICAL PC and NOLIA MEDICAL PC, represents that all the following statements are true:

That on or about March I, 1974, I was licensed to practice as a physician in the State of New York and issued License No. 119256 by the New York State Education Department.  I represented in certificates of incorporation that I am an officer, director and sole shareholder for the above-referenced  physician professional service corporations.

Respondent QUALITY HEALTHCARE PROVIDER PC is a professional service corporation that was duly authorized to practice medicine in the State of New York by the filing of its certificate of incorporation (PSC # 056414) with the Department of State on April 28, 2005.

Respondent JP MEDICAL PC is a professional service corporation duly authorized to practice medicine in the State of New York by the filing of its certificate of incorporation (PSC#030409) with the Department of State on December 29, 2005.

Respondent ACCURATE MEDICAL PC is a professional service corporation duly authorized to practice medicine in the State of New York by the filing of its certificate of incorporation (PSC#035376) with the Department of State on October 5, 1998.

Respondent NOLIA MEDICAL PC is a professional service corporation duly authorized to practice medicine in the State of New York by the filing of its certificate of incorporation (PSC#06496) with the Department of State on October 25, 2007.

The Respondents are subject to the jurisdiction of the State Board for Professional Medical Conduct, and the prehearing and hearing procedures of Title II-A of Article 2 of the New York Public Health Law, pursuant to Section 1503(d) of the New York Business Corporation Law.

The Respondents QUALITY HEALTHCARE PROVIDER PC, J P MEDICAL PC, ACCURATE MEDICAL PC and NOLIA MEDICAL PC are respectively applying to the State Board for Professional Medical Conduct for an Order imposing a penalty, pursuant to Section 230-a of the Public Health Law and Section 1503(d) of the Business Corporation Law, of annulment of their certificates of incorporation.

The Respondents QUALITY HEALTHCARE PROVIDER PC, J P MEDICAL PC, ACCURATE MEDICAL PC and NOLIA MEDICAL PC acknowledge that they have been respectively charged with professional misconduct as set forth in the Statement of Charges, annexed hereto, made a part hereof, and marked as Exhibit "A."

Respondent QUALITY HEALTHCARE PROVIDER PC agrees not to contest the allegation and specification set forth in second specification of the Statement of Charges.

Respondent J P MEDICAL agrees not to contest allegation and specification set forth in the third specification of the Statement of Charges.

Respondent ACCURATE MEDICAL PC agrees not to contest the specification and allegation set forth in the fourth specification of the Statement of

2

Charges.

Respondent NOLIA MEDICAL PC agrees not to contest the allegation and specification set forth in the fifth specification of the Statement of Charges.

Each Respondents agrees that, in the event the State Board for Professional Medical Conduct adopts this Consent Agreement, an Order shall be issued annulling the certificates of incorporation, respectively, of QUALITY HEALTHCARE PROVIDER PC, J P MEDICAL PC, ACCURATE MEDICAL PC and NOLIA MEDICAL PC. The Respondents agree that such annulment shall be effective immediately and shall be self-executing, and this Consent Agreement and Order shall be deemed automatically to be the final and operative document annulling Respondents' certificates of incorporation. The Respondents agree, notwithstanding the above, nothing herein shall be construed to absolve the Respondents in any way from paying to the Departments of State, Education, and Taxation and Finance any outstanding taxes, fines and penalties.

The Respondents acknowledge that, in the event that this Consent Agreement is not adopted by the State Board for Professional Medical Conduct, nothing contained herein shall be binding or construed to be an admission of any act of misconduct alleged or charged against Respondents, such proposed agreement shall not be used against Respondents in any way, and shall be kept in strict confidence during the pendency of *any* professional misconduct disciplinary proceeding; and such denial by the State Board for Professional Medical Conduct shall be made without prejudice to the continuance of any disciplinary proceeding and the final determination by a Committee on Professional Medical Conduct pursuant to the provisions of the Public Health Law.

3

The Respondents agree that, if the Board adopts this Consent Agreement, the Chair of the Board shall issue Orders annulling Respondents' certificates of incorporation in accordance with its terms. The Respondents agree that this Consent Order shall take effect upon its issuance by the Board, either by mailing of a copy of the Consent Order by first class mail to the address designated by the Respondents to the New York State Education Department, Office of the Professions, or to JADWIGA PAWLOWSKI, M.D. at 19 East 80th Street, New York, NY 10021, or by certified mail to Respondents attorney Lourdes Martinez Esq., Garfunkel Wild, P.C., or upon facsimile transmission, whichever is first. The Consent Order, this agreement, and all attached Exhibits shall be public documents, with only patient identities, if any, redacted. As public documents, they may be posted on the Department's website.

The Respondents stipulate that the proposed sanction and Consent Order are authorized by N.Y. Pub. Health Law §§ 230 and 230-a, and that the Board and OPMC have the requisite powers to carry out all included terms. The Respondents ask the Board to adopt this Consent Agreement of its own free will and not under duress, compulsion or restraint. In consideration of the value to it of the Board's adoption of this Consent Agreement, allowing it to resolve this matter without the various risks and burdens of a hearing on the merits, the Respondents knowingly waive their right to contest the Consent Order for which it applies, whether administratively or judicially, the Respondents agree to be

4

bound by the Consent Order, and the Respondents ask that the Board adopt this Consent Agreement.

The Respondents understand and agree that the attorney for the Department, the Director of OPMC and the Chair of the Board each retain complete discretion either to enter into the proposed agreement and Consent Order, based upon the Respondents application, or to decline to do so.  The Respondents further understand and agree that no prior or separate written or oral communication can limit that discretion.

Date: 01/17/11 , 2011

QUALITY HEALTHCARE PROVIDER PC, J P MEDICAL PC, ACCURATE MEDICAL PC and NOLIA MEDICAL PC

By: REDACTED

JADWIGA PAWLOWSKI, M.D.
Sole Shareholder, Director and Officer, as identified in the Certificates of Incorporation of the Respondents professional service corporations.

5

Date: _____, 2010

REDACTED

Lourdes Martinez, Esq.
Garfunkel Wild, P.C.
Attorney for Respondents


Date: 1/19/11 _____, 2011

REDACTED

Daniel Guenzburger,
Associate Counsel
Bureau of Professional
      Medical Conduct


Date: 1/27 _____, 2011

REDACTED

Keith W. Servis
Director, Office of
Professional Medical Conduct

6

Exhibit A

NEW YORK STATE         DEPARTMENT OF HEALTH
STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT

| | |
|---|---|
| IN THE MATTER<br>OF<br>JADWIGA PAWLOWSKI,M.D., QUALITY MEDICAL<br>HEALTHCARE PROVIDER PC, J P MEDICAL PC,<br>ACCURATE MEDICAL PC, and NOLIA MEDICAL PC | STATEMENT<br>OF<br>CHARGES |

JADWIGA PAWLOWSKI, M.D., the Respondent, was authorized to practice medicine in New York State on or about March 1, 1974, by the issuance of license number 119256 by the New York State Education Department.  Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC were authorized as physician professional service corporations  by the New York State Department of State on various dates between December 1995 and October 2007.  Respondent PAWLOSKI is a shareholder, officer and director of the Respondent professional service corporations.

## FACTUAL ALLEGATIONS

A.   Pursuant to Article 15 of the Business Corporation Law, professional service corporations may only render professional services through individuals authorized by law to render such professional services as individuals.

1.   Respondent Pawlowski permitted individuals who lacked a medical license to organize, operate and/or control Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC.

B.      Respondent QUALITY MEDICAL HEALTH CARE PROVIDER PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

C.      Respondent JP MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

D.      Respondent ACCURATE MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

E.      Respondent NOLIA MEDICAL PC failed to comply with Article 15 of the Business Corporation Law in that individuals who lacked a medical license operated and/or controlled the professional service corporation.

### SPECIFICATION OF CHARGES

#### FIRST SPECIFICATION

#### PERMITTING, AIDING OR ABETTING THE UNLICENSED PRACTICE OF MEDICINE

Respondent PAWLOSKI is charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(11) by permitting, aiding, or abetting an unlicensed person to perform activities requiring a license, as alleged in the facts of:

1.      A, A1, B, C, D, and/or E.

2

## SECOND THROUGH FIFTH SPECIFICATIONS

### FAILING TO COMPLY WITH STATE LAW

Respondents QUALITY MEDICAL HEALTH CARE PROVIDER PC, JP MEDICAL PC, ACCURATE MEDICAL PC, and NOLIA MEDICAL PC are charged with committing professional misconduct as defined in N.Y. Educ. Law § 6530(16) by willfully and/or grossly negligently failing to comply with substantial provisions of State law governing the practice of Medicine, namely Article 15 of the Business Corporation Law, as alleged in the facts, respectively, of:

2.    Paragraph B with regard to Respondent QUALITY MEDICAL HEALTH CARE PROVIDER PC.

3.    Paragraph C with regard to Respondent J P MEDICAL PC.

4.    Paragraph D with regard to Respondent ACCURATE MEDICAL PC.

5.    Paragraph E with regard to Respondent NOLIA MEDICAL PC.


DATE:    January 20 , 2011
         New York, New York


REDACTED
_____
Roy Nemerson
Deputy Counsel
Bureau of Professional Medical Conduct


3

# EXHIBIT B

## AFFIDAVIT OF SUNIL KHANDPUR

STATE OF NEW YORK      )
                          : s.s.
COUNTY OF NASSAU      )

SUNIL KHANDPUR, being duly sworn, deposes and states the following:

1. I have personal knowledge of the statements that are made in this affidavit and would testify as to them in a court of law if called upon to do so.

2. I currently am employed by GEICO as a Claims Manager, a position that I have held since January 2011. Between December 2008 and January 2011, I wa employed by GEICO as a Special Investigations Unit ("SIU") Supervisor. The information set forth in this affidavit is based upon my personal knowledge acquired during my tenure as a employee of Government Employees Insurance Company ("GEICO"), as well as from personal knowledge that I have acquired from my review of GEICO's business records that are maintained in the regular course of GEICO's business.

3. I give this affidavit voluntarily.

4. This affidavit is not intended to be an exhaustive account of my experiences.

5. GEICO's SIU first began to investigate East Tremont Medical Center ("ETMC") and its owner, Hisham Elzanaty ("Elzanaty"), in 2005, after receiving referrals from GEICO's Claims Department based on ETMC's apparently fraudulent billing practices. The original GEICO SIU investigator assigned to the case in 2005 was Albert Interlicchio.

6. From about 2006 through 2009, another GEICO SIU investigator, Joan Bischoff, assumed responsibility for the Elzanaty-ETMC investigation.

7. During the course of GEICO SIU's investigation into Elzanaty and ETMC, GEICO SIU performed – among other things – the following tasks:

(i)     ascertained the statutory and regulatory requirements for healthcare facilities, such as ETMC, that are organized and existing under Article 28 of the New York Public Health Law;

(ii)    collected numerous statements from patients who treated through ETMC, and conducted numerous interviews at the ETMC facilities;

(iii)   created reports documenting ETMC's unlawful referral practices;

(iv)    obtained an interview with a whistleblower physician who formerly had practiced through ETMC, disagreed with its practices, and left the practice;

(v)     reviewed medical records generated by ETMC; and

(vi)    identified and reviewed publicly-available background information regarding ETMC.

8.      Based solely on this investigation, GEICO determined that Elzanaty and ETMC were engaged in various types of fraudulent insurance billing practices.

9.      Accordingly, GEICO contacted Rivkin Radler LLP ("Rivkin Radler"), a law firm with which it previously had worked on affirmative litigation against healthcare providers engaged in fraudulent activity. GEICO sought Rivkin Radler's assistance in pursuing affirmative litigation against Elzanaty, ETMC, and their associates.

10.     Rivkin Radler thereafter drafted a Complaint against Elzanaty, ETMC, and their associates, which was filed on March 23, 2011.

11.    The Complaint does not include any information other than that which was obtained during the GEICO SIU investigation into Elzanaty and ETMC, or that which was present in GEICO's own claims files. GEICO neither sought nor obtained any documents or information from any State Farm entity, Rivkin Radler, or from Katten Muchin during the course of its investigation or in the course of preparing its litigation against Elzanaty, ETMC, and their associates.

I declare under penalty of perjury that the foregoing is true and correct.


SUNIL KHANDPUR


Sworn to before me this 19th day of October, 2011.


NOTARY PUBLIC

ERICA AVELLA
Notary Public, State of New York
No. 02AV6138611
Qualified in Queens County
Commission Expires December 27, 2013