UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**                    :

              **Plaintiff,**               :

       *-against-*                     :

**ACCURATE MEDICAL, P.C., et al.,**      :

             **Defendants.**            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. 1:07-cv-00051 (ENV) (MDG)

ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF STATE FARM AUTO'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

Sheila L. Birnbaum
(Sheila.Birnbaum@skadden.com)
Douglas E. Fleming III
(Douglas.Fleming@skadden.com)
Hayden A. Coleman
(Hayden.Coleman@skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for Plaintiff State Farm*
*Mutual Automobile Insurance*
*Company*

March 7, 2012

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 5

    A.    The Instant Action:  State Farm Auto's 2007 Action Against Mr. Elzanaty
          for Insurance Fraud (*State Farm Mut. Auto. Ins. Co. v. Accurate Med.,*
          *P.C.*, No. 1:07-cv-00051-ENV-MDG (E.D.N.Y. 2007)) ........................................ 5

    B.    GEICO's 2011 Action Against Mr. Elzanaty for Insurance Fraud (*GEICO
          v. Uptown Health Care Mgmt*, No. 1:11-cv-01453-FB-RLM (E.D.N.Y.
          2011)) ................................................................................................................... 6

    C.    Mr. Elzanaty's 2011 Action Against State Farm Alleging Violations of the
          Settlement Agreement (*Elzanaty v. State Farm Mut. Auto. Ins. Co.*, No.
          1:11-cv-04878-ENV-MDG (E.D.N.Y. 2011)) ...................................................... 7

ARGUMENT ................................................................................................................ 9

I.    THIS COURT HAS ANCILLARY AND CONTINUING JURISDICTION
     OVER THE SETTLEMENT AGREEMENT AND ORDER ............................................ 9

II.    THE DOCUMENT DESTRUCTION PROVISION SHOULD BE DECLARED
      VOID AND UNENFORCEABLE ................................................................................ 10

    A.    The Operation of Section 406 of New York's Insurance Frauds Prevention
          Act Voids the Document Destruction Provision ................................................... 10

    B.    New York Law and Public Policy Regarding the Investigation and
          Reporting of Suspected Insurance Fraud Also Void the Document
          Destruction Provision .......................................................................................... 13

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Allstate Insurance Co. v. Rozenberg,*
  590 F. Supp. 2d 384 (E.D.N.Y. 2008) ................................................... 16

*American Commerce Insurance Co. v. Martinez,*
  2011 WL 5931483 (N.Y. Sup. Ct. Nov. 17, 2011) .................................. 12

*Kokkonen v. Guardian Life Insurance Co. of America,*
  511 U.S. 375 (1994) ............................................................................ 9, 10

*Liljeberg v. Health Services Acquisition Corp.,*
  486 U.S. 847 (1988) ................................................................................ 10

*Marrero Pichardo v. Ashcroft,*
  374 F.3d 46 (2d Cir. 2004) ...................................................................... 10

*McConnell v. Commonwealth Pictures Corp.,*
  166 N.E.2d 494 (N.Y. 1960) ................................................................ 13, 14

*Stamford Board of Education* v. *Stamford Education Association,*
  697 F.2d 70 (2d Cir. 1982) ...................................................................... 13

*Szerdahelyi v. Harris,*
  490 N.E.2d 517 (N.Y. 1986) .................................................................... 13

*Valley Physical Medical & Rehabilitation P.C. v. New York
  Central Mutual Insurance Co.,*
  753 N.Y.S.2d 289 (2d Dep't 2002) .......................................................... 16

*Village of Upper Nyack v. Christian & Missionary Alliance,*
  540 N.Y.S.2d 125 (Sup. Ct. 1988), *aff'd,* 155 A.D.2d 530, 547 N.Y.S.2d 388 (2d
  Dep't 1989) ............................................................................................... 13

*Zellermaier v. Travelers Indemnity Co. of Illinois,*
  739 N.Y.S.2d 922 (Sup. Ct. 2002) .......................................................... 11

## STATUTES AND REGULATIONS

Federal Rule of Civil Procedure 60(b)(6) ...................................................... 10

N.Y. Comp. Codes R. & Regs. tit. 11 § 243.2(b)(4) (1996) ........................... 14

N.Y. Comp. Codes R. & Regs. tit. 11 § 243.2(b)(8) (1996) ........................... 14

N.Y. Comp. Codes R. & Regs. tit. 11 § 243.2(e) (1996) ...................................................14

N.Y. Comp. Codes R. & Regs. tit. 11 § 86.1-86.7 (1981)................................................14

N.Y. Fin. Serv. § 405 (McKinney 2011) ...............................................................................4

N.Y. Ins. Law § 340 (McKinney 1996)................................................................................11

N.Y. Ins. Law § 405(a) (McKinney 1984) ...........................................................................14

N.Y. Ins. Law § 406 (McKinney 1984)...............................................................3, 4, 10-13

N.Y. Ins. Law § 409 (McKinney 1996)................................................................................15

N.Y. Ins. Law § 3432 (McKinney 1984)..............................................................................11

## OTHER AUTHORITIES

N.Y. Ins. Dep't Circular Letter No. 2007-1, 2007 WL 286276 (January 29, 2007) ...............14-15

N.Y. Ins. Dep't G.C. Op. No. 7-26-2000, 2000 WL 34630118 (July 26, 2000)............................11

N.Y. Ins. Dep't G.C. Op. No. 7-19-2007, 2007 WL 2325381 (July 19, 2007)............................15

Pursuant to this Court's retention of continuing jurisdiction in its Stipulation and Order of Dismissal dated June 11, 2008 (Dkt. Nos. 85-86) ("Stipulation and Order"), as well as this Court's Minute Entry Orders dated December 16, 2011 and February 24, 2012, Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm Auto") respectfully submits this memorandum of law in support of its motion to declare a document destruction provision contained in the settlement agreement resolving this action to be unenforceable and void as violative of New York law and New York's public policy against insurance fraud.[1]

## PRELIMINARY STATEMENT

In 2007, State Farm Auto brought this action against Mr. Hisham Elzanaty and others, alleging that Mr. Elzanaty -- a non-doctor -- secretly owned, and illegally controlled, several medical facilities. (Dkt. No. 1.) State Farm Auto further alleged that Mr. Elzanaty used that unlawful control to fraudulently obtain over one million dollars from State Farm Auto by submitting hundreds of bills for unnecessary -- and highly expensive -- medical tests and neurological consultations. Mr. Elzanaty settled State Farm Auto's claims for insurance fraud against him in December 2007, and this Court entered the Stipulation and Order on June 11, 2008, which incorporated by reference the terms of the settlement and dismissed the action. (Dkt.

---

[1]   As discussed further below, the document destruction provision that is the subject of this Motion provides:

> State Farm agrees that all documents that it has obtained as a result of its investigation or otherwise, pertaining to the activities of the other parties hereto, and documents that it obtained through discovery from third parties in [the instant action] and *Accurate Medical PC, et al v. State Farm Mutual Insurance Company, et al.,* Index No. 24883/04 or copies thereof will be destroyed within 30 days of the date of this Agreement and no such documents may be retained by State Farm, its employees and counsel. Breach by State Farm of this provision will be deemed a material breach of this agreement.

> (Dkt. No. 92, ¶ 16.) *See also Elzanaty v. State Farm Mut. Auto. Ins. Co.,* No. 1:11-cv-04878-ENV-MDG, Dkt. No. 1 (E.D.N.Y. 2011) (hereinafter, *"Elzanaty* Dkt. No. _") (*Elzanaty* Compl. ¶ 19). Throughout this memorandum, unless otherwise indicated, any citation to a docket refers to the docket in the instant action commenced by State Farm Auto in 2007, *i.e., State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.,* No. 1:07-cv-00051-ENV-MDG (E.D.N.Y. 2007).

Nos. 85-86.) In the Stipulation and Order, this Court "retain[ed] jurisdiction over this matter for the limited purpose of enforcing the Settlement Agreement entered into by the Parties." (the "Settlement Agreement") (Dkt. Nos. 85-86, ¶ 2.)

Three years later, in 2011, another insurer (GEICO), represented by one of the same law firms (Rivkin Radler LLP) that represented State Farm Auto in the instant action against Mr. Elzanaty, brought an action in the Eastern District of New York, alleging that Mr. Elzanaty, his medical facilities, and others also committed insurance fraud against GEICO. *See GEICO v. Uptown Health Care Mgmt.*, No. 1:11-cv-01453-FB-RLM, Dkt. No. 1 (E.D.N.Y. 2011) (hereinafter, "*GEICO* Dkt. No. __"). Mr. Elzanaty posits in a vague and conclusory manner, based on his "information and belief," that a variety of State Farm defendants (collectively, "State Farm") and/or its prior outside counsel breached the Settlement Agreement by providing GEICO with documents and/or information from State Farm's fraud investigation of Mr. Elzanaty, which he alleges should have been destroyed under the Settlement Agreement. More specifically, Mr. Elzanaty asserts that State Farm failed to destroy its investigatory files relating to its fraud lawsuit against Mr. Elzanaty and improperly tipped GEICO off to State Farm's allegations of fraud in purported violation of the Settlement Agreement. As a result, Mr. Elzanaty asserts that if he is found to have committed insurance fraud against GEICO and is forced to pay GEICO damages for such fraud, State Farm must pay him for his fraud.[2]

---

[2] The respective parties to the 2007 and 2011 actions are as follows. In the instant action filed by State Farm Auto, the defendants are Mr. Elzanaty, three professional corporations (Accurate Medical, P.C.; JP Medical, P.C.; and Quality Medical Health Care Provider, P.C.), and two doctors (Jadawiga Pawlowski, M.D.; and David Burke, M.D.). In Mr. Elzanaty's 2011 action, the plaintiffs are Mr. Elzanaty, as well as one of his medical facilities (Uptown Health Care Management, d/b/a East Tremont Medical Center ("East Tremont"). The defendants in Mr. Elzanaty's 2011 action are: State Farm Auto, State Farm Fire & Casualty Company ("State Farm Fire") and three former or current employees (Mr. Ribando, Ms. Kiernan, and/or Ms. Madalone). The signatories to the Settlement Agreement were all of the parties to the 2007 action, as well as East Tremont and State Farm Fire. To the extent necessary to protect their rights, State Farm Fire, Mr. Ribando and Ms. Madalone also join in this Motion because Mr. Elzanaty also asserts his claims arising under the document
*(cont'd)*

State Farm denies that it provided any documents or information to GEICO. Indeed, GEICO has submitted an affidavit in this proceeding stating that GEICO based its lawsuit on GEICO's own investigation, which, according to the affidavit, GEICO conducted for a period of years, beginning long before State Farm Auto commenced its lawsuit against Mr. Elzanaty in 2007. (*See* Affidavit of Sunil Khandpur of GEICO, dated October 19, 2011 ("Khandpur Aff."), ¶¶ 5-6, 11, attached as Exhibit A to Declaration of Douglas E. Fleming III, dated March 6, 2012 ("Fleming Decl.").) Moreover, GEICO states that it did not seek or obtain any documents or information from State Farm or State Farm's counsel in GEICO's investigation of, or in its preparation for litigation against, Mr. Elzanaty, East Tremont, or their associates. (*Id.*, Ex. A, Khandpur Aff. ¶ 11.)

Nevertheless, this matter can be resolved on the law because, even if Mr. Elzanaty's allegations were accepted as true, Mr. Elzanaty's claims under the document destruction provision fail as a matter of law. Even assuming *arguendo* that such documents were provided to GEICO, the document destruction provision should be declared unenforceable and void. New York unequivocally confers statutory immunity on State Farm and others for sharing information about suspected insurance fraud with other insurance companies, like GEICO, as well as state and federal officials. Specifically, Section 406 of the New York Insurance Frauds Prevention Act mandates that no one "shall be subject to civil liability, *and no civil cause of action of any nature shall arise*" as a result of sharing "*any information relating to suspected fraudulent*

---

*(cont'd from previous page)*
destruction provision against them. Moreover, State Farm has argued in opposition to remand in the 2011 action that the three individual defendants have been fraudulently joined and should be dismissed. The unenforceability of the document destruction provision established in this memorandum further demonstrates the failure of Mr. Elzanaty's claims against the individual defendants and supports State Farm's opposition to remand. Finally, all of the defendants in the 2011 action reserve their right to move for judgment on the pleadings in the 2011 action on all of these and additional grounds when permitted.

*insurance transactions* . . . ." N.Y. Ins. Law § 406 (McKinney 1984) (emphasis added).[3] In addition, as established below, the State of New York has enacted laws and has a strong public policy requiring the reporting of suspected insurance fraud, as well as the retention of documents, which squarely conflict with the document destruction provision.

State Farm Auto acknowledges that it originally agreed with Mr. Elzanaty, and the other parties to the Settlement Agreement, to the terms of the document destruction provision. However, as State Farm raised with Magistrate Go at the hearing on November 29, 2011, upon examining this provision in connection with Mr. Elzanaty's lawsuit, State Farm concluded that such a provision is void and unenforceable under New York law and that neither State Farm Auto nor any of the other parties, including Mr. Elzanaty, should have agreed to that provision. We also should note that after Mr. Elzanaty's lawsuit was filed in 2011, in doing its investigation, State Farm discovered that while outside counsel had taken steps to dispose of documents in connection with the document destruction provision, certain documents were not destroyed, and, to the best of State Farm's knowledge, the original copy of the fraud investigation file within State Farm Auto's offices remains intact.

In addition, this Motion is not seeking to invalidate the entire Settlement Agreement, only the document destruction provision, which is void. Under the Settlement Agreement, the parties expressly agreed that provisions of the Settlement Agreement could later be declared void or

---

[3]  The above-referenced version of § 406 was in effect in 2007. As of October 3, 2011, its text was incorporated into § 405 of the Financial Services Law consolidating the Departments of Insurance and Banking. The text is substantively identical. Section 405 states in part: "In the absence of fraud or bad faith, no person subject to the provisions of this chapter, the banking law or the insurance law shall be subject to civil liability, and no civil cause of action of any nature shall arise against such person for any . . . information relating to suspected violations of the . . . insurance law furnished to . . . other persons subject to the provisions of this chapter . . . ." N.Y. Fin. Serv. Law § 405 (McKinney 2011)

otherwise invalid and that in such case, the validity of every other provision would not be affected. (Dkt. No. 92, ¶ 22.)

In short, Mr. Elzanaty's allegations, even if taken as true for purposes of this Motion, are legally insufficient, and they have put into sharp focus why the document destruction provision cannot be reconciled with New York law or public policy. Accordingly, as a matter of law, the document destruction provision should be declared unenforceable.

## BACKGROUND

A.     **The Instant Action:  State Farm Auto's 2007 Action Against Mr. Elzanaty for Insurance Fraud (*State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, No. 1:07-cv-00051-ENV-MDG (E.D.N.Y. 2007))**

In 2007, State Farm Auto commenced the instant action against Mr. Elzanaty, his fraudulently incorporated medical facilities, and others in this Court, alleging that they were violating the Racketeer Influenced Corrupt Organizations Act ("RICO"), federal mail fraud statutes, and common law fraud statutes.  Specifically, based on its fraud investigation, State Farm Auto alleged that Mr. Elzanaty's facilities and co-conspirators performed medically unnecessary tests and consultations in a concerted effort to fraudulently maximize charges and claim unearned no-fault benefits from State Farm Auto.  (Dkt. No. 1, ¶¶ 17-33, 52, 64.)  State Farm Auto further alleged that Mr. Elzanaty not only misrepresented that the consultations and tests were necessary, but also used false billing codes to exaggerate the level of services provided.  (*Id.* ¶¶ 15, 64.)  State Farm Auto also alleged that Mr. Elzanaty and his co-conspirators fraudulently represented that the facilities were owned and controlled by a licensed physician, when, in fact, they were unlawfully owned and controlled by Mr. Elzanaty.  (*Id.* ¶¶ 9-10, 52, 76.)  State Farm Auto's Complaint further asserted that the various medical facilities participating in the fraud and controlled by Mr. Elzanaty were created with different names and

tax identification numbers in an attempt to evade detection of the volume and pattern of fraudulent charges submitted. (*Id.* ¶¶ 10, 52.)

On or about December 12, 2007, Mr. Elzanaty and the other defendants entered into a settlement of State Farm Auto's claims for insurance fraud against them, which is memorialized in the Settlement Agreement. On June 11, 2008, this Court entered the Stipulation and Order. (Dkt. Nos. 85-86.)

## B. GEICO's 2011 Action Against Mr. Elzanaty for Insurance Fraud (*GEICO v. Uptown Health Care Mgmt*, No. 1:11-cv-01453-FB-RLM (E.D.N.Y. 2011))

GEICO's separate action, filed in this District three years later in 2011, alleges that Mr. Elzanaty illegally obtained control of East Tremont (a party to the Settlement Agreement) and used it to fraudulently bill for unnecessary services. GEICO alleges that Mr. Elzanaty obtained *de facto* control of patient care by making improper payments to an actual physician, Dr. Pawlowski (also a defendant here and party to the Settlement Agreement), to (i) utilize the physician's license, (ii) falsely designate her as the Medical Director, and (iii) represent that she performed the Medical Director's duties. (*GEICO* Dkt. No. 1, ¶¶ 39, 44-48.)[4] To support this allegation, GEICO cites a consent agreement with New York State in which Dr. Pawlowski pled no contest to unlawfully permitting a non-doctor to supervise a medical facility and submitted to a host of penalties and sanctions for professional misconduct. (*Id.* ¶ 49.) Finally, GEICO alleges that Mr. Elzanaty developed an unlawful kickback scheme whereby his unlicensed facility treated no-fault insureds to maximize illicit profit and over-bill insurance charges. (*Id.* ¶¶ 50-64.)

---

[4] The complaint paragraphs cited in section "B" above are to GEICO's initial complaint, a copy of which was submitted to this Court by Mr. Elzanaty's counsel in his 2011 action. (*Elzanaty* Dkt. No. 26, Ex. 4.)

**C.    Mr. Elzanaty's 2011 Action Against State Farm Alleging Violations of the Settlement Agreement (*Elzanaty v. State Farm Mut. Auto. Ins. Co.*, No. 1:11-cv-04878-ENV-MDG (E.D.N.Y. 2011))**

On June 8, 2011, after having been sued by GEICO, Mr. Elzanaty and East Tremont sued State Farm in the Supreme Court of the State of New York for Bronx County, asserting in a conclusory manner, based "[u]pon information and belief," that State Farm breached the Settlement Agreement by purportedly sharing documents and/or information with GEICO that allegedly should have been destroyed under the Settlement Agreement. (*See, e.g., Elzanaty* Compl. ¶¶ 38-42, 44-46.)  State Farm subsequently removed the action, and it is now a related case separately pending before this Court.  Mr. Elzanaty's Complaint demonstrates why the document destruction provision cannot be reconciled with New York law or public policy and should be declared unenforceable.

First, Mr. Elzanaty claims that State Farm breached the Settlement Agreement by disclosing documents relating to State Farm's fraud investigation rather than destroying the documents pursuant to the document destruction provision. (*Elzanaty* Compl. ¶¶ 39, 44-47, 53, 56-57.)  Paragraph 16 of the Settlement Agreement provides:

> State Farm agrees that all documents that it has obtained as a result of its investigation or otherwise, pertaining to the activities of the other parties hereto, and documents that it obtained through discovery from third parties in [the instant action] and *Accurate Medical PC, et al v. State Farm Mutual Insurance Company, et al.*, Index No. 24883/04 or copies thereof will be destroyed within 30 days of the date of this Agreement and no such documents may be retained by State Farm, its employees and counsel.  Breach by State Farm of this provision will be deemed a material breach of this agreement.

(*Id.* ¶ 19; Dkt. No. 92, ¶ 16.)[5]

---

[5]    The Settlement Agreement was declared confidential.  Mr. Elzanaty's counsel handed a copy to the Court at the hearing before Magistrate Go on November 29, 2011, and at Magistrate Go's direction, State Farm subsequently filed a copy under seal. (Dkt. No. 92.)

Second, Mr. Elzanaty claims that State Farm converted the documents that purportedly should have been destroyed under the document destruction provision by making them available and/or providing the information contained within them to GEICO, which then sued Mr. Elzanaty for insurance fraud based on the alleged disclosure. (*Elzanaty* Compl. ¶ 85.)[6]

Third, Mr. Elzanaty asserts a "respondeat superior" cause of action alleging that an attorney with one of State Farm's prior retained counsel, Rivkin Radler LLP, who is now representing GEICO in its lawsuit against Mr. Elzanaty, breached a representation that he made to Mr. Elzanaty's counsel in a letter dated November 15, 2007. (*Id.* ¶¶ 47, 49, 76; *id.* p. 10.) Mr. Elzanaty asserts that such letter prohibited the Rivkin Radler attorney from representing other insurers suing Mr. Elzanaty or his co-conspirators in the future based on claims or other events preceding the date of the Settlement Agreement. (*Id.*) Mr. Elzanaty further alleges that the initial complaint filed by GEICO contained claims concerning the period of time proscribed by the letter, and that GEICO subsequently amended the complaint in an attempt to delete the claims allegedly pertaining to the period proscribed by the letter. (*Id.* ¶¶ 49-50.)

Based on these three causes of action, Mr. Elzanaty's Complaint seeks $ _____ under the Settlement Agreement and indemnity from State Farm for any judgment he is required to pay GEICO. More specifically, Mr. Elzanaty wants State Farm to reimburse him for any judgment (and fees and costs) he is required to pay to GEICO in GEICO's fraud lawsuit (or any other insurers' fraud lawsuit) resulting from the purported disclosure of documents that allegedly should have been destroyed under the Settlement Agreement. (*Elzanaty* Compl. Wherefore ¶¶ (a)-(d), (f).) Mr. Elzanaty also wants State Farm to pay him for any increased costs he might

---

[6]  Mr. Elzanaty's conversion claim fails for the additional reasons set forth in State Farm's opposition to Mr. Elzanaty's motion to remand in his 2011 action. (*Elzanaty* Dkt. No. 31.)

incur in attempting to collect billings from GEICO or other insurers as a result of the purported disclosure of such documents. (*Id.* ¶¶ (e), (g).)[7]

***

State Farm Auto files this motion by agreement of the parties and the Court's Orders. (Min. Entries dated Dec. 16, 2011 and Feb. 24, 2012; Dkt. No. 100.) Also, by agreement of the parties and the Court's orders, Mr. Elzanaty, certain other Defendants, and East Tremont will cross-move on April 4, 2012 for an order declaring that the letter representation that State Farm's prior retained counsel provided to Mr. Elzanaty's counsel in 2007, as discussed above, forms an enforceable part of the Settlement Agreement. (*Id.*) State Farm will separately address that contention relating to prior retained counsel's letter, which fails as a matter of law, in State Farm's briefing opposing the cross-motion.

**ARGUMENT**

## I. THIS COURT HAS ANCILLARY AND CONTINUING JURISDICTION OVER THE SETTLEMENT AGREEMENT AND ORDER

This Court's express retention of jurisdiction (Dkt. Nos. 85-86) provides it with exclusive jurisdiction to rule on the terms of the document destruction provision. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (Jurisdiction exists where there is a "provision [in the order of dismissal] 'retaining jurisdiction' over the settlement agreement."); *Elzanaty* Dkt. No. 35 at 1 ("The [alleged] breach of the agreement underlying the settlement and dismissal of the action obviously is within the dismissing court's retention of jurisdiction.").[8]

---

[7]    Strangely, Mr. Elzanaty's request for relief in his 2011 action against State Farm does not seek an order requiring that documents be destroyed under the document destruction provision. Rather, Mr. Elzanaty seeks $_____and reimbursement by State Farm if GEICO prevails in establishing that Mr. Elzanaty engaged in insurance fraud against GEICO.

[8]    In addition to this Court's express retention of continuing jurisdiction, Federal Rule of Civil Procedure 60(b)(6) "'confers broad discretion . . . to grant relief when appropriate to accomplish justice [and] it constitutes a grand
                                                                                                        *(cont'd)*

9

Accordingly, while this Court has independent subject matter jurisdiction on both federal question and fraudulent joinder grounds sufficient to defeat remand in Mr. Elzanaty's separately filed action, this Court also has jurisdiction to address the issues raised in the instant action under principles of ancillary jurisdiction and this Court's retention of continuing jurisdiction. *See Kokkonen*, 511 U.S. at 381.

## II.   THE DOCUMENT DESTRUCTION PROVISION SHOULD BE DECLARED VOID AND UNENFORCEABLE

The document destruction provision contained in the Settlement Agreement conflicts with New York's Insurance Laws and its public policy against insurance fraud and therefore should be declared void and unenforceable.

### A.   The Operation of Section 406 of New York's Insurance Frauds Prevention Act Voids the Document Destruction Provision

The document destruction provision should be declared void and unenforceable because any claim for relief based on the alleged disclosure of documents that purportedly should have been destroyed is barred as a matter of law by Section 406 of New York's Insurance Frauds Prevention Act. Under Section 406, State Farm and others are protected from liability for sharing information related to suspected insurance fraud:

> In the absence of fraud or bad faith, *no person* shall be subject to civil liability, and no civil cause of action of any nature shall arise against such person (i) for any information relating to suspected fraudulent insurance transactions furnished to law enforcement officials, their agents and employees; and (ii) *for any information relating to suspected fraudulent insurance transactions furnished to other persons subject to the provisions of this chapter*; and (iii) for any such

---

*(cont'd from previous page)*
reservoir of equitable power to do justice in a particular case.'" *See Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (citation omitted) (second alteration in original); *see also id.* at 56 ("[Rule 60(b)(6)] is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship[.]") (citation omitted) (second alteration in original); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (finding that Rule 60(b)(6) affords courts broad authority to accomplish justice).

> information furnished in reports to the insurance frauds bureau, its agents or
> employees or any state agency investigating fraud or misconduct relating to
> workers' compensation insurance, its agents or employees.

N.Y. Ins. Law § 406 (McKinney 1984) (emphasis added).[9] Thus, State Farm and others have

statutory immunity "in the absence of fraud or bad faith, from any civil action arising as a result

of their sharing information for the purpose of investigation of suspected fraudulent insurance

practices."[10] *See* N.Y. Ins. Dep't G.C. Op. No. 7-26-2000, 2000 WL 34630118 (July 26, 2000).

Other insurers (like GEICO here) are persons subject to the insurance laws to whom such

disclosures may be made within the scope of the immunity conferred by the statute. *Id.*; N.Y.

Ins. Law § 406 (McKinney 1984).

Section 406 reflects New York's strong public policy against insurance fraud by

providing that insurers and others are immune from any civil liability for sharing information

about wrongdoers whom they in good faith suspect are defrauding insurance companies. *See*

*Zellermaier v. Travelers Indem. Co. of Ill.*, 739 N.Y.S.2d 922, 923 (Sup. Ct. 2002) ("A broad

reading of the immunity provided by the statute . . . accords with the legislative intent.").

Indeed, the statute's legislative history demonstrates that one of its purposes is to "more

effectively discover and investigate insurance fraud and to assist law enforcement in the

prosecution of fraudulent insurance claims." *Id.* (granting summary judgment for defendant

insurance company and holding that under Section 406, the insurer could not be subject to civil

---

[9]  As noted above, the 2011 Session Laws consolidated the Department of Insurance and Banking to create the
Department of Financial Services. Several changes were made to the Insurance Laws. The provisions in this
memorandum reflect the statutes in effect in December 2007 when the Settlement Agreement was signed.

[10]  Several other New York insurance laws immunize insurers from civil liability for sharing information. *See* N.Y.
Ins. Law § 340 (McKinney 1996) (granting civil immunity to insurers that furnish certain information regarding
claims for bodily injury, wrongful death and death benefits to a central reporting organization); N.Y. Ins. Law §
3432 (McKinney 1984) (granting civil immunity to insurers or hospitals that furnish reports to certain public
officials and designated organizations in order to, among other things, assist in investigations).

liability for filing investigative report with the frauds bureau); *see also Am. Commerce Ins. Co. v. Martinez*, 2011 WL 5931483, at *4 (N.Y. Sup. Ct. 2011) (holding that Section 406 barred attempt to impose liability for insurance company's alleged disclosure of suspected insurance fraud to another insurer and law enforcement).[11]

Mr. Elzanaty's action seeking recovery for State Farm's alleged disclosure of documents that he claims should have been destroyed under the Settlement Agreement falls squarely under Section 406. In direct contravention of Section 406, Mr. Elzanaty seeks to be paid by State Farm for any judgment (and costs) he is required to pay to GEICO in GEICO's fraud lawsuit against Mr. Elzanaty or in any subsequent lawsuit by another insurer based on State Farm's alleged disclosure of documents he claims should have been destroyed. (*Elzanaty* Compl. Wherefore ¶¶ (a)-(d), (f).) Mr. Elzanaty also seeks to be paid by State Farm for any increased costs he incurs in attempting to collect billings from other insurers as a result of State Farm's alleged disclosure of documents that purportedly should have been destroyed. (*Id.* ¶¶ (e), (g).)

As stated above, State Farm denies that it provided any documents or information to GEICO, and GEICO has submitted an affidavit stating that it did not receive any documents or information from State Farm regarding Mr. Elzanaty or his associates. (*See* Fleming Decl., Ex. A, Khandpur Aff. ¶ 11.) Therefore, as a matter of fact, there is no damage arising from the alleged breach of the document destruction provision. However, even if Mr. Elzanaty's allegations were taken as true, this is the type of situation directly covered by Section 406. Under the statute, even if State Farm, its outside counsel, or anyone else had shared information with

---

[11] The General Counsel of the New York State Department of Insurance has reiterated that it is "permissible for two or more insurers to conduct a joint investigation into a medical provider's entitlement to no-fault benefits where evidence suggests that the provider may be improperly licensed, or is suspected of over-billing or improperly billing, no-fault carriers" and that the insurers would be immune from claims arising from such activity. *See* N.Y. Ins. Dep't G.C. Op. No. 7-26-2000, 2000 WL 34630118 (July 26, 2000).

GEICO that purportedly should have been destroyed under the document destruction provision as alleged in the Complaint, they are immune from civil liability for such alleged conduct. Accordingly, Mr. Elzanaty's claims demonstrate that as a result of the statutory civil immunity conferred by Section 406, the document destruction provision should be declared unenforceable and void.

**B.** **New York Law and Public Policy Regarding the Investigation and Reporting of Suspected Insurance Fraud Also Void the Document Destruction Provision**

The document destruction provision of the Settlement Agreement should be stricken for a second independent, but equally fundamental reason – it calls for conduct that conflicts with additional New York law and public policy.

The New York Court of Appeals has repeatedly held that "illegal contracts, or those contrary to public policy, are unenforceable and . . . courts will not recognize rights arising from them." *Szerdahelyi v. Harris*, 490 N.E.2d 517, 521 (N.Y. 1986) (citations omitted). Thus, contract provisions that violate the law are unenforceable and void *ab initio*. *See Vill. of Upper Nyack v. Christian & Missionary Alliance*, 540 N.Y.S.2d 125, 130 (Sup. Ct. 1988) ("[T]he general right to contract is subject to the limitation that the agreement must not be in violation of the federal or state constitutions, federal or state statutes, an ordinance of a city or town, or a rule of common law."), *aff'd*, 155 A.D.2d 530, 547 N.Y.S.2d 388 (2d Dep't 1989); *see also Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 73 (2d Cir. 1982) ("[A]greements which tend to injure the public good . . . will be found violative of public policy."); *McConnell v Commonwealth Pictures Corp.*, 166 N.E.2d 494, 496 (N.Y. 1960) (admonishing that a litigant "'cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose.'" (citation omitted)).

Here, as established above, Mr. Elzanaty's claims are based on his assertion that, instead of destroying State Farm's file pursuant to the Settlement Agreement, State Farm allegedly disclosed its documents to GEICO, which were then used by GEICO to sue Mr. Elzanaty for insurance fraud. That assertion -- resting on an alleged obligation to destroy documents that purportedly caused GEICO to sue Mr. Elzanaty for insurance fraud -- conflicts with at least three separate laws (in addition to Section 406 of the New York's Insurance Frauds Prevention Act).

First, Title 11 of Section 243.2(b)(4) of New York's Codes, Rules, and Regulations requires insurers to maintain claims files for "six calendar years after all elements of the claim are resolved and the file is closed or until after the filing of the report on examination in which the claim file was subject to review, *whichever is longer.*" N.Y. Comp. Codes R. & Regs. tit. 11, § 243.2(b)(4) (1996) (emphasis added); *see also id.* § 243.2(b)(8) (applying to "other-record[s]"). Under these regulations, insurers must keep the records "readily available and easily accessible to the superintendent." *Id.* at § 243.2(e). Here, the Settlement Agreement was executed in December 2007, and the Stipulation and Order was entered in June 2008. Under Section 243.2, contrary to the terms of the document destruction provision, such documents are legally required to be retained and kept readily available until at least 2013 or 2014.

Second, New York's Insurance Frauds Prevention Act mandates that insurers report suspected fraud to the insurance frauds bureau. This duty to report fraud carries with it a corresponding duty to maintain the investigative documents and to provide the bureau with supporting information for any investigation. *See* N.Y. Ins. Law § 405(a) (McKinney 1984); *see also* N.Y. Comp. Codes R. & Regs. tit. 11 § 86.5 (1981) (providing for mandatory reporting of insurance fraud); *id.* at §§ 86.1-86.4, 86.6-86.7 (additional implementing regulations); N.Y. Circular Letter No. 2007-1, 2007 WL 286276 (January 29, 2007) (discussing insurers'

"continuing duty to actively assist the Insurance Frauds Bureau in the detection, investigation and prosecution of suspected fraudulent insurance acts"). The "duty to actively assist" with combating fraud and the frauds bureau's ability to root out fraud by proving violations would be obstructed if the insurer were entitled to destroy its insurance fraud file. Therefore, Mr. Elzanaty's claims arising from State Farm's alleged failure to destroy its documents also conflict with Section 405's mandate to report insurance fraud and State Farm's continuing duty to actively assist the insurance frauds bureau in investigating and combating insurance fraud.

Third, Section 409 of New York's Insurance Frauds Prevention Act requires insurers to file a fraud detection, investigation and prevention plan on an ongoing basis, which provides for, among other things, the further "reporting of fraud data" and the "interfac[ing] of [the insurers'] special investigation unit personnel with law enforcement . . . agencies, including the insurance frauds bureau" regarding insurance frauds. N.Y. Ins. Law §§ 409(c)(1)-(2) (McKinney 1996). Regardless of whether actual fraud is found, the insurers are directed to report their findings of suspected fraud to the insurance frauds bureau, as discussed above. N.Y. Ins. Dep't G.C. Op. No. 7-19-2007, 2007 WL 2325381 (July 19, 2007). If State Farm is required to report data and information to help law enforcement track patterns of fraudulent schemes and use such information in connection with its mandated and ongoing fraud detection, investigation, and prevention plan, it must then maintain its insurance fraud files, especially where, as here, the alleged fraudulent scheme involves efforts to evade detection of the volume and pattern of repetitive, fraudulent transactions. A provision that requires the destruction of the file conflicts with these obligations and must be deemed void.[12]

---

[12] In prior briefing, Mr. Elzanaty raised *State ex rel. State Farm Mutual Automobile Insurance. Co. v. Bedell*, 719 S.E.2d 722 (W.Va. 2011), *cert. denied*, 132 S. Ct. 761 (2011) in which the West Virginia Supreme Court of Appeals denied a writ of prohibition filed by State Farm that sought to prevent the enforcement of certain
*(cont'd)*

15

More generally, as a matter of public policy, New York's statutory and regulatory scheme demonstrates the high level of importance New York places on rooting out suspected insurance fraud. *See Valley Physical Med. & Rehab. P.C. v. New York Cent. Mut. Ins. Co.*, 753 N.Y.S.2d 289, 290 (2d Dep't 2002) (discussing "Department of Insurance's Opinion letters urging insurers to be more vigilant about potential fraud, [especially] . . . related to allegations of fraudulent billing"); *cf. Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 395 (E.D.N.Y. 2008) (finding that pursuit of fraudulent billing scheme like the one alleged here "would almost certainly result in higher premiums for insurance consumers" and therefore "had 'ramifications for the public at large'" (citation omitted)). If provisions allowing the destruction of these documents were found enforceable, entities that commit fraud by stealing from insurance companies, Medicare, and Medicaid would be able to rest easy knowing that any evidence tying them to suspicions of their frauds could be completely destroyed. Such provisions accomplish the exact opposite of New York's goal, as reflected in its laws and regulations, to detect and prevent insurance fraud.

Accordingly, State Farm Auto respectfully submits that, upon further examination of this matter, the document destruction provision, to which all parties agreed, is contrary to law and public policy, void and unenforceable. As State Farm raised with Magistrate Go at the conference in November 2011, State Farm has concluded that neither State Farm Auto nor any of the other parties, including Mr. Elzanaty, should have agreed to that provision in light of these

---

*(cont'd from previous page)*

restrictions a protective order placed on State Farm's use of medical records produced by the plaintiffs in that case, who were hit by a car insured by State Farm. However, *Bedell* does not support Mr. Elzanaty's position for several reasons, including but not limited to, that (1) *Bedell* did not involve New York law and therefore did not address New York's statutory immunity statute or any of the other New York insurance statutes discussed above, and (2) the Court did not substantively address State Farm's arguments concerning State Farm's reporting obligations because the Court decided that State Farm had not adequately raised those issues below.

laws, regulations and important public policies. As discussed above, the Settlement Agreement expressly provides in its severability clause that provisions of the Settlement Agreement may be declared void or invalid and that in such case, the validity of the other provisions shall not be affected. (Dkt. No. 92, ¶ 22.) The document destruction provision is just such an unenforceable provision. At bottom, Mr. Elzanaty is asking this Court to order State Farm to pay him if he is found liable to GEICO for insurance fraud because GEICO purportedly based its fraud lawsuit against him on documents that he claims State Farm disclosed to GEICO instead of destroying. As a matter of fact, this is not true and as a matter of law, even if such allegations were taken as true, Mr. Elzanaty's claims establish the unenforceability of the document destruction provision upon which they are based.

## CONCLUSION

For the foregoing reasons, State Farm Auto respectfully requests that the Court declare the document destruction provision to be unenforceable, and to grant such further and other relief as this Court deems just and proper.

Dated: New York, New York
      March 7, 2012

Respectfully submitted,

/s/ Sheila L. Birnbaum
Sheila L. Birnbaum
(Sheila.Birnbaum@skadden.com)
Douglas E. Fleming III
(Douglas.Fleming@skadden.com)
Hayden A. Coleman
(Hayden.Coleman@skadden.com)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for Plaintiff State Farm Mutual Automobile*
Insurance Company