UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**

                          **Plaintiff,**

       **-against-**

**ACCURATE MEDICAL, P.C.,  ET AL.,
ACCURATE MEDICAL, P.C., J.P.
MEDICAL, P.C., QUALITY HEATH CARE
PROVIDER, P.C., AND JADWIGA
PAWLOWSKI, M.D. , DAVID M. BURKE,
M.D., and  HISHAM ELZANATY**

                      **Defendants.**

No. 1:07-cv-00051 (ENV) (MDG)

ECF CASE

<u>**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS TO PLAINTIFF STATE
FARM AUTO'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND ORDER**</u>

WOLODYMYR M. STAROSOLSKY, ESQ
Attorney for the Pawlowski Defendants
225 Broadway  - Suite 1803
New York NY 10007
646 256-8058

April 11, 2012

*(Corrected per agreement on
May 1, 2011 as to Pagination
And Description of Exhibits
In Table, pg.,iv)*

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................1

    A. The Instant Action: State Farm Auto's 2007 Action Againsr Mr. Elzanaty (*State Farm Mutual Auto Ins. Co. V. Accurate Med., P.C.*)................................................................. 1

    B. GEICO's 2011 Action Against Mr. Elzanaty for Insurance Fraud (*GEICO v Uptown Health Care Mgmt*)................................................................................................9

ARGUMENT ....................................................................................................................11

    A. The Relief Requested by State Farm Auto...................................................11

    B. State Farm Has Not Met Its Burden For The Relief Requested...................16

    C. The Document Destruction Is Valid And Does Not Vilolate Public Policy................. 17

CONCLUSION...................................................................................................................18

# **TABLE OF AUTHORITIES**

## **Cases**

*Benjamin v. Koeppel,* 85 N.Y.2d 549 (1995) 650 NE 2d 829 .......................................................17

*Info-Hold, Inc. v. Sound Merchandising, Inc.,* 538 F.3d 448, 458 (6th Cir. 2008) .....................16

*Kelly v. Kosuga,* 358 U.S. 516, 519, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 ...........................................18

*Nemaizer v Baker,* 793F.2d 58, 61-62 (2d Cir.1986.............................................................8, 9 ,15

*Pichardo v. Ashcroft,* 374 F. 3d 46 (2d Cir., 2004) ........................................................................16

## **Statutes**

*Federal Rule of Civil Procedure 60(b)* .............................................................................. 11, 16, 17

*Federal Rule of Civil Procedure 60(b)(6)* ...............................................................................11, 16

*Federal Rule of Civil Procedure 60(b)(3)* ...................................................................................16

*Rule of Professional Conduct 3.3: Conduct Before a Tribunal; Mckinneys Consolidated Laws of N.Y. Annotated, Judiciary Law Book 29 (2012)* ......................................................15,16

*Rule of Professional Conduct 3.4: Fairness to Opposing Party and Counsel; Mckinneys Consolidated Laws of N.Y. Annotated, Judiciary Law Book 29 (2012)* ...............................15,16

# Exhibits

Exhibit "**A**"  Affidavit of Jadwiga Pawlowski M.D with Exhibits A, B, and C............................... 2

Exhibit "**B**"  Letter of Katten Muchkin Rosenman LLP of November 15, 2007 by Ross O. Silverman
also signed by Rivikin Radler LLP by Barry I. Levy .......................................................4,10

Exhibit "**C**"  Email Letter of Katten Muchkin Rosenman LLP of December 5, 2007 by Ross O.
Silverman.......................................................................................................................4

Exhibit "**D**"  Letters of Wolodymyr M. Starosolsky of March 20, 2008, April 4,17, and 30, 2008 ............ 6

Exhibit "**E**"  Letters of Rivkin Radler of March 31, 2008 by Barry Levy, Letters of Katten Muchkin
Rosenman LLP of April 18 and May 6, 2008 by Ross O. Silverman................................7

Exhibit "**F**"  Letter of Katten Muchkin Rosenman LLP of August 5, 2008 by Ross O. Silverman............7

Pursuant to this Court's retention of continuing jurisdiction in its Stipulation and Order of Dismissal dated June 11, 2008, (Dkt. Nos. 85-86) and this Court's Minute Entry Orders dated December 16, 2011 and February 24, 2012, the Defendants, Accurate Medical, P.C., J.P. Medical, P.C., Quality Heath Care Provider, P.C., and Jadwiga Pawlowski, M.D. (unless otherwise indicated "the defendants") respectfully submit this memorandum of law in opposition the Plaintiff's, State Farm Mutual Automobile Insurance Company ("State Farm Auto") motion to declare a document destruction provision contained in the settlement agreement to be unenforceable and void as violative of New York law and public policy with respect to insurance fraud.

## BACKGROUND

As in nature, so in life, nothing much happens in the vacuum. Accordingly, it behooves the defendants to provide herein some background, deemed relevant to this matter.

No-fault claims may be addressed and resolved by litigation or by arbitration. In either proceeding the insurer objecting to a submitted claim for payment has the right, to raise various "defenses" i.e., that the claimed injury is not related to a motor vehicle accident; that the medical services provided are not medically indicated and therefore unnecessary; that the fees charged are not in accordance with the applicable fee schedule; that "fraud" is involved, etc. Over time, the insurers started raising "fraud" as a defense to claims submitted for medical services to "covered individuals" with increasing frequency.

The No-fault insurers monitor the number of claims submitted and the amount of fees collected by the medical providers. Where the amount billed or collected, in the eyes of the insurer is "excessive" or "substantial", the insurer may/will, take whatever "appropriate action" it

deems justified against the medical providers. Such action by insurers includes criminal court complaints and indictments against medical providers. An example of this, are the hundreds and hundreds of indictments that State Farm facilitated in Suffolk County, some years ago. Ninety eight (98%) percent of the indictments were dismissed. It was found out that State Farm had a "special friend" in the Suffolk County District Attorney's Office. This A.D.A. was responsible for the vast majority of the indictments. His employment was summarily terminated by the Suffolk County District Attorney. Thereupon, State Farm provided him with gainful employment. As in the case of defendant Jadwiga Pawlowski, M.D. (*See* Exhibit "**A**" *Pawlowski Affidavit*), No-fault insurers also resort to filing complaints against medical providers with the Office of Professional Medical Conduct. In this way insurers seek to minimize, even destroy, a medical doctor's practice which involves treatment of patients injured in motor vehicle accidents.

Certainly, the threat of, or actual filing of a Civil RICO complaint against a medical provider has had an adverse effect on medical No-fault providers; even if just for the fact that the "little guy" cannot match the vast financial resources of the insurers' and cannot stand up to the armies of lawyers on payroll of the insurance companies.

As it relates to the herein captioned action, in 2007, the named defendants directly confronted State Farm and otherwise addressed the allegations contained in the plaintiff's Civil RICO complaint. This litigation was ultimately resolved with the parties signing a *Confidential Settlement Agreement* in early December 2007. The parties' compliance with all the terms of said agreement was monitored and supervised by the Court until June 11, 2008 when, upon representations to the Court by plaintiff's counsel, this Court So Ordered the Stipulation of Settlement and granted the Order of Dismissal with prejudice.

On or about January 5, 2007 State Farm filed a complaint in the United States District Court for the Eastern District of New York against Accurate Medical, P.C., J.P. Medical, P.C., Quality Medical Health Care Provider, P.C., ("the PC's") Jadawiga Pawlowski, M.D., David M. Burke, M.D. and Hisham Elzanaty. The complaint alleged causes of action based on common law fraud, unjust enrichment and the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 et seg. (Dkt. No.1) [1] In its complaint, State Farm sought, *inter alia*, to recover $1.75 million it paid as a result of defendants' submission of allegedly fraudulent No-fault insurance claims for allegedly unnecessary neurological consultations and tests performed on individuals who were injured in automobile accidents, thereby making them eligible for coverage under State Farm's insurance policies. The complaint also alleged fraudulent incorporation, to wit, that the defendants misrepresented to State Farm that the PCs were owned and controlled by a licensed physician when, allegedly, they were owned and controlled by defendant Elzanaty, in order to advance a scheme which included overbilling State Farm for medical services provided to its insureds. State Farm sought money damages and a declaratory judgment prohibiting the PC defendants from recovering on any unpaid claims. The total value of all damages or credits sought by State Farm from the defendants was in excess of seven million ($7,000,000) dollars.

On or about July 7, 2007 the defendants filed a pre-answer motion to dismiss the complaint alleging, *inter alia,* that State Farm could prove no set of facts to support any of its claims. (Dkt. No. 49) State Farm filed a brief in opposition to the pre-answer motion but it does not appear on the ECF docket.

---

[1] Throughout this memorandum, unless otherwise indicated, any citation to a docket refers to the docket in the instant action commenced by State Farm Auto in 2007, i.e., *State Farm Mutual Auto. Ins. Co. v. Accurate Med., P.C., No. 1:07-cv-00051- ENV-MDG (E.D.N.Y. 2007).)*

Before the motions were decided, the parties entered into a confidential Settlement

Agreement, in satisfaction of all State Farm claims. The said agreement was fully executed,

on or about December 12, 2007. Said agreement is titled, "Priviledged and Confidential for

Settlement Purposes Only-Confidential Settlement Agreement" (Dkt. No. 77)

State Farm's attorneys, representing the Katten law firm and Rivkin Radler, LLP, wrote

on November 15, 2007 to the defendants' attorney, Wolodymyr M. Starosolsky. In this

letter, they confirmed that they would not represent any new insurer in litigation in

connection with claims or events that occurred prior to the Decembber 12, 2007 date the

settlement agreement.

The November 15, 2007 letter was intended to induce the defendants to enter into a

Settlement Agreement. In pertinent part, the letter states:

> "I have forwarded to you two settlement agreements in connection with the
> resolution of State Farm Mutual Automobile Insurance Company v. Accurate
> Medical PC, NO 1:07-cv-0051. One agreement relates to Travelers, and the other
> relates to State Farm. These agreements have been fully executed. This will
> confirm that neither of our firms will represent any insurer in any new affirmative
> litigation against the parties to those settlement agreements relating to claims or
> any other events that occurred prior to the date of the settlement agreement. Very
> truly yours, [signed] Katter Muchin Rosenman, LLP by Ross O Silverman and
> Rivkin Radler,LLP, by Barry I. Levy".(*Underlining added*) (Exhibit **"B"**)

On December 5, 2007, plaintiff's attorney, Ross Silverman, by email, to defendants'

counsel, in reference to the Settlement Agreement (Exhibit **"C"**), advised in pertinent part as

follows:

> "In paragraph 2, I've added two sentences at the end of the paragraph which will
> require State Farm to file any new action within 90 days of the date of any known
> breach."**; and**

> "In paragraph 13, I've added language which will require destruction of
> documents within 30 days of the date of this agreement, and specify that this is a
> material term."

The representations of plaintiff, in its December 5, 2007 e-mail letter, underscore the importance and materiality of the above mentioned provisions as well as why defendants conveyed substantial value therefore and reasonably relied upon the Settlement Agreement, to their detriment, and have a valid "expectation interest", "reliance interest" and "restitution interest", therein.

The defendants submit that the provision requiring State Farm to file any new action within 90 days of the date of any known breach, precludes and nullifies plaintiff's motion herein. Plaintiff's admission of having breached the agreement and of its violating the Order of the Court obligated the plaintiff to file its motion no later than 90 days from December 12, 2007, the day when the agreement was fully executed. The admission that plaintiff still has the entire file in its possession indicates that, from the outset, it had no intention of complying with the document destruction provision of the agreement and now relies on its breach and violation on the Order of the Court as bases it asserts in its motion and the relief requested therein.

One provision of the agreement which State Farm, at this late date, seeks to have the Court declare as un-enforceable and void, required that plaintiff destroy documents it had obtained in the course of this action pertaining to the defendants, within 30 days from the date of agreement's execution, i.e. December 12, 2007.

This "document destruction provision" provides that:

> State Farm agrees that all documents that it has obtained as a result of its investigation or otherwise, pertaining to the activities of the other parties hereto, and documents that it obtained through discovery from third parties in (the instant action) and Accurate Medical PC' et al v. State Farm Mutual Insurance Company, et al., Index No. 24883/04 or copies thereof will be destroyed within 30 days of

the date of this Agreement and no such documents may be retained by State Farm, its employees and counsel. Breach by State Farm of this provision will be deemed a material breach of this agreement. (Dkt. No. 92, ¶ 16.) *See also Elzanaty v. State Farm Mut. Auto. Ins. Co.*, Case No. 1:11-cv-04878-(ENV)(MDG), Dkt. No. I (E.D.N.Y. 2011)

By letter dated December 18, 2007, State Farm's attorney, Ross O. Silverman, of the law firm Katten Muchin Rosenmann LPP., informed the Court that "a settlement has been executed which will likely resolve this case in its entirety." Mr. Silverman requested that the Court hold the pending motions in abeyance until March 15, 2008 in order to allow the defendants to meet a condition of the settlement, without which the litigation would continue. (Dkt. No. 77)

Three months later the defendants became concerned that plaintiff may not have complied with the executed settlement agreement. By letters dated March 20, April 4, April 17 and April 30 of 2008, (submitted as defendants' cumulative Exhibit **"D")** , defendants' counsel wrote to attorneys for plaintiff and expressed defendants' concerns that State Farm and its attorneys were not complying with the provisions of the settlement agreement.

In response to defendants' complaints of noncompliance, State Farm responded by counsel. In the March 31, 2008 letter from Rivkin Radler, LLP, attorney Barry I. Levy assured defendants that "I have conducted an investigation into the allegations that you have made and determined that they are baseless from both a factual and legal standpoint." Mr. Levy, further, advised counsel that "In light of the fact that there has been no violation as claimed in your letter, State Farm expects your clients to fulfill all of their obligations under the Agreement. State Farm will not allow your clients to advance this charade to avoid their obligations." On April 18, 2008, attorney Ross O. Silverman of the Katten law firm advised defendants that "...you have my assurance that State Farm has not disclosed the confidential

settlement agreement or its terms to the DOH or anyone else for that matter." On May 6, 2008, by letter to counsel, said plaintiff's attorney wrote: "Your letter writing campaign needs to stop" and that, "We have not violated and will not violate the Settlement Agreement." The three letters are annexed as defendants' cumulative Exhibit **"E"**.

Throughout all this the plaintiff was aggressively monitoring defendants' compliance with the parties' settlement agreement and the So Ordered Stipulation and Court Order of dismissal, dated June 11, 2008. The August 5, 2010 letter from Rivkin Radler's partner, Barry I. Levy, is one example of this. (Exhibit **"F"**)

More importantly, on May 20, 2008, plaintiff's attorney, Jay Shapiro, from the Katten law firm, delivered a copy of the Settlement Agreement to the Court with his letter of the same date informing the Court, in pertinent part, that *"State Farm contends that the settlement has not been breached as it is not aware of any particular term of the settlement that is in dispute."* (Dkt. No. 81) (emphasis supplied)

By letter dated May 21, 2008 to Magistrate Judge Marilyn D. Go, defendants' attorney, Wolodymyr Starosolsky, informed the Court that a dispute between the parties had arisen concerning State Farm's obligation to maintain the confidentiality of the Settlement Agreement. (Dkt. No. 83). On May 23, 2008, the dispute was resolved in a settlement conference with Judge Go, at which time the Court directed the parties to file a stipulation of dismissal by May 30, 2008. (See Minute Entry dated May 23, 2008.)

State Farm now admits that, in fact, it did not destroy the documents within 30 days of the execution of the Settlement Agreement, or ever, and that the entire file is intact and in State Farm's possession. (See State Farm's Memorandum of Law at p. 4) This directly

contradicts the written representations to the Court made by plaintiff's attorney Jay Shapiro on May 20, 2008. The representations in plaintiff's memorandum are also contradicted by plaintiffs attorney Barry I. Levy in his March 31, 2008 letter wherein he makes reference to "I have conducted a investigation ..."

On or about June 9, 2008, defendants' counsel executed the Stipulation of Dismissal. (Dkt. No. 85) He did so in reliance upon the May 20, 2008 written representations made to the Court by plaintiff's attorney, Jay Shapiro. The Stipulation of Settlement and Dismissal was "So Ordered" on June 11, 2008, by Judge Eric N. Vitaliano and same was duly entered on June 12, 2008.

The Stipulation and Order, *inter alia*, incorporates the parties', December 12, 2007, Confidential Settlement Agreement by reference. The Stipulation and Order dismissed, with prejudice, all of State Farm's claims that it alleged against the defendants, however the Court reserved jurisdiction for the limited purpose of enforcement. (Dkt. No. 85-86)

The United States Court of Appeals, Second Circuit, in its decision in *Nemaizer v Baker*, 793F.2d 58 (1986) in pertinent part, held that, "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. (*Nemaizer v Baker*, 793F.2d 58, 61-62 (2d Cir.1986) citing *Wainwright Securities Inc.v. Wall St. Transcript,* 80 F.R.D. 103, 105 (S.D.N.Y. 1978).Such a dismissal constitutes a final judgement with the preclusive effect of *res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." (Id., *Nemaizer,* Pg. 62, citing *Heiser v. Woodruff,* 327 U.S. 726, 735, 66 S.Ct. 853, 857, 90 L. Ed. 970 (1946); *Teletronics v. L M Ericsson Telecommunications,* 642 F. 2d 31, 35 (2d Cir.1981).

8

The *Nemaizer* decision also states the law applicable in the matter before this court, i.e., "A dismissal with prejudice arising out of an agreement of the parties is an adjudication of all matters contemplated in the agreement, and a court order which memorializes this agreeent bars further proceedings ... Accordingly, *res judicata* precluded present appellees from raising the ERISA claim in a later federal suit. [Id., *Nemaizer,* pg. 62, citing *PRC Harris, Inc. V. Boeing Co.,* 700 F.2d 894, 896 (2d Cir.), *cert. Denied,* 464 U.S. 936, 104 S. Ct. 344, 78 L.Ed.2d 311 (1983).]

## THE GEICO v ELZANATY SUIT

On or about March 24, 2011, another No-fault insurer, GEICO, sued Elzanaty, the Pawlowski defendants, and others. This action was filed in the United States District Court for the Eastern District of New York. The complaint was filed under Case No. 1:11-cv-01453 (FB)(RLM) (Dkt.No. 1) (E.D.N.Y. 2001). The GEICO complaint alleges that defendants committed insurance fraud against GEICO. The allegations of said complaint are almost identical to those alleged against the defendants in the 2007 State Farm complaint.

In this GEICO case, the plaintiff is represented by Rivkin Radler, LLP. and Barry I. Levy, all former counsel to State Farm in the 2007 matter, now before this Court, and are signators to the confidential Settlement Agreement in the State Farm case. Attorney Levy, on behalf of self and Rivkin Radler, LLP; Levy is also signator of the November 15, 2007 letter annexed hereto (Exhibit "**B**").

The allegations contained in the GEICO "insurance fraud" complaint alerted the defendants that State Farm and/or its agents and/or prior outside counsel shared documents which State Farm obtained, that pertain to its 2007 complaints, with GEICO; this, in

contravention of the provision that required State Farm to destroy documents related to the 2007 action, within 30 days of the execution of the December 12, 2007 Settlement Agreement.

In response to the 2011 GEICO complaint, Elzanaty, et. al., sued State Farm in the Supreme Court of the State of New York, Bronx County, claiming that State Farm had shared with GEICO documents which it was obligated to destroy in accordance with the Settlement Agreement and Order of the Court herein. (See, e.g., Elzanaty Compl!. ¶¶ 38-42, 44-46.)

More specifically, the Elzanaty complaint (¶31), filed in Bronx County, alleges: Upon information and belief that State Farm Agent Rivkin Radler did not destroy materials from the State Farm-EDNY Lawsuit; that Defendant Ribando was in possession of documents from the State Farm-EDNY suit and failed to destroy those documents. (¶ 32); that Defendant Kiernan was in possession of documents from the State Farm-EDNY suit and failed to destroy those documents. (¶ 33); that Defendant Madalone was in possession of, documents from the State Farm-EDNY suit and failed to destroy those documents. (¶ 34)

The Elzanaty complaint further alleges that "Upon information and belief, State Farm breached its agreement to destroy materials from the 2007 State Farm-EDNY Lawsuit and/or breached its agreement to have its counsel and State Farm agents destroy materials from the State Farm-EDNY Lawsuit." (¶ 30, Elzanty Complaint.)

State Farm, removed the Elzanaty "breach of contract" action from Bronx County to this Court. It is now a related case separately pending before the Court.

## RELIEF REQUESTED BY STATE FARM

In response to the Elzanaty suit, State Farm brought this motion to, purportedly, enforce the Settlment Agreement and Order of the Court. If State Farm were to succeed, on the technical grounds, stated in its motion, before this Court, it would likewise prevail in the Bronx County action filed by Elzanaty. Clearly, this is plaintiff's litigation strategy and the reason why State Farm admits to violating the June 11, 2008, Court Order of Dismissal. Hence, plaintiff's application to this Court persuant to Rule 60(b).

In its Memorandum of Law, State Farm states that neither this plaintiff nor the defendants should have signed the Settlement Agreement and attempts to advance an argument that the document destruction provision in the agreement violates "public policy" and New York State Insurance Law. In its application for relief, in reality a request for modifcation of the June 11, 2008 Order of Dismissal, plaintiff seemingly invokes Federal Rule of Civil Procedure 60(b)(6). In pertinent part, this rule provides that: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (6) any other reason that justifies relief."

State Farm admits that it agreed to the terms of the document destruction provision and that it did not destroy the documents as it was required to do. State Farm denies sharing those documents with GEICO. Ultimately, however, State Farm argues impertinently that, whether or not the documents were destroyed or shared is an issue of fact which is not material to the disposition of this motion because, as a matter of law, State Farm had no obligation to destroy the documents or to refrain from sharing them.

The plaintiff's stated grounds for this conclusion are that any such document destruction provision "obligation" violates New York's public policy and laws which, according to State Farm's memorandum, incorrectly, "unequivocally" confer on it and its agents statutory immunity for sharing information regarding suspected insurance fraud with other insurance companies. Implicitly, State Farm is suggesting that it had no obligation to comply with this Court's Order. (See State Farm's Memorandum of Law, Pg.3-4)

State Farm asks the Court to declare that the document destruction provision in the Settlement Agreement is void and unenforceable because, allegedly, it violates the public policy and laws of New York. Plaintiff also relies on a provision of the agreement which states that if one provison should be declared invalid, the others would survive. State Farm contends that the Court may declare all other provisions to be enforceable, including those that required defendants to give substantial value which plaintiff need not return to defendants; "unjust enrichment", equity and the simple concept of what is right and fair, notwithstanding.

State Farm, in effect, requests that this Court decide that the Settlement Agreement and the June 11, 2008 Order of the Court is binding on the defendants, but not on State Farm and that the Court disregard the fact that this plaintiff: (1) breached the terms of the settlement agreement and violated the Order of the Court that dismissed plaintiff's 2007 "insurance fraud" complaint with prejudice; (2) that plaintiff's counsel, on May 20, 2008, affirmatively misrepresented to the Court in writing that the Settlement Agreement has not been breached, while knowing that State Farm did so, and that on the basis of this representation plaintiff submitted for the Court's approval and signature the Stipulation of Settlement and Order of Dismissal that was signed by the Court; (3) that State Farm and its counsel were obligated to

12

immediately advise the Court of any breach of the Settlement Agreement and of any violation of the Court Order, and take corrective action, but did not do so; (4) that by misleading the Court, by "concealing the truth", and not advising the Court accordingly, State Farm and its counsel undermined the integrity of the Court and of the adjudicative process whereby a Court Order issued that would otherwise not have been granted; (5) that such acts by plaintiff and its counsel, their failure to affirmatively ameliorate/correct the problem by advising the Court of plaintiff's breach and its violation of the Court Order, are acts of such nature that constitute a crime or fraud on the Court; and, (6) that the defendants were highly prejudiced by plaintiff's acts and/or material omissions, and sustained serious damages to their reputation and business, as a result thereof.

The Settlement Agreement provides, *inter alia*, that in consideration for the promises set forth therein that the defendants would provide consideration and substantial value to State Farm; that it was to be kept confidential and that its purpose was to amicably resolve disputed claims (¶ 1, 15 & 17) and to avoid the time and expense for continued litigation but that it <u>did not constitute an admission of any wrongdoing or liability for any conduct relating to the circumstances referenced therein</u>. (¶ 17) (emphasis supplied)

Considering that State Farm and their counsel signed off on the Settlement Agreement and thereby agreed with defendants that the litigation "did not constitute an admission of any wrong doing or liability for any conduct relating to the circumstances referenced therein", the plaintiff would be hard pressed in maintaining that defendants' records in plaintiff's possession evidenced commission of fraud by the defendants. Were it so, plaintiff was obligied to and should have notified the Insurance Commissioner of such fraud within thirty (30) days, in accordance with NY Insurance Law § 405.

13

There is no indication in plaintiff's Memorandum of Law, nor in any other submission or filing with the Court, that State Farm, at any time, filed a complaint in this matter with the NY Insurance Commissioner. In the event that State Farm made no such filing, it must have concluded that defendants' records in plaintiff's possesion did not demonstrate any fraud by defendants. If plaintiff believed that defendants were not involved in "insurance fraud", it would not have made any filing to the Insurance Commisioner pursuant to § 405 of the Insurance Law. Conversely, State Farm was affirmatively obligated to make such filing if it suspected defendants' involvement in "insurance fraud"; otherwise, plaintiff itself would be involved in "insurance fraud" or, at the very least, in a cover up of insurance fraud.

Most importantly in its motion, State Farm does not seek to invalidate the entire Court Order. Its application is limited only to the invalidation of the document distruction provision of the Settlement Agreement that was incorporated by reference into the June 11, 2008 Court Order of dismissal, with prejudice. What State Farm convieniently forgets is the fact that, once the Court Order was entered all of the allegations contained in Plaintiff's 2007, "insurance fraud" complaint are dismissed, are *res judicata* and can not be re-litigated. Having consented and signed off on the Stipulation of Settlement and Dismissal, which this Court "So Ordered", and having consented to the Court Order of Dismissal, plaintiff should not be now heard, at this late date, justifing its breach of the Order of the Court on the misplaced grounds of "public policy" and violation of the insurance law as, in light of *res judicata* there never was any insurance fraud committed by the defendants and there was no justification for the filing of any complaint with the Insurance Commissioner nor for retention or sharing of defendants' documents by State Farm.

A dismissal with prejudice, as here, has the effect of a final adjudication on the mrerits favorable to defendants and bars future suits brought by plaintiff upon the same cause of action. (*Nemaizer v Baker*, 793F.2d 58, 61-62, (2d Cir.1986) (citations ommitted). Such a dismissal constitutes a final judgment with the preclusive effect of not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." Id., [*Nemaizer, Pg 62* (citations ommitted)]

In the Motion before the Court, State Farm inappropriety contends that because its suspected insurance fraud by defendants it, despite the Order of the Court, was obligated to retain and not destroy the records of defendants that plaintiff collected for purposes of investigation and litigation. However, the document retention and notice to Insurance Commissioner by an insurer pertains to documents which show evidence of insurance fraud. Here, that issue was, as of June 11, 2008, "adjudicated on the merits", in favor of the defendants and therefore, plaintiff may not raise the spector of any would be "insurance fraud" as valid justification in law that would excuse the breach of the Settlement Agreement and plaintiff's violation, under circumstances stated herein, of the Order of this Court. Accordingly, plaintiff is contempt of the Court.

The Pawlowski defendants fully complied with the Order of the Court which dismissed State Farm's 2007, action against them. State Farm, however, did nothing of the kind. It willfully violated the Order of this Court and intentionally witheld from the Court material facts relevant to their malfeasance. It is clear from the circumstances of this case and admissions in plaintiff's Memorandum of Law, that Counsel for State Farm violated Rules of Professional Conduct No. 3.3 and 3.4. (See Rule 3.3: Conduct Before a Tribunal and Rule

3.4: Fairness to Opposing Party and Counsel; Mckinneys Consolidated Laws of N.Y. Annotated, Judiciary Law Book 29 (2012)).

## STATE FARM HAS NOT MET ITS BURDERN FOR THE RELIEF REQUESTED

The legal consequences of a stipulation incorporated in a court order may not be undone simply because, with the benefit of hindsight, stipulating turns out to have been an unfortunate tactic. Although obviously better informed than foresight, an argument based on hindsight is not a ground upon which a court may grant Rule 60(b) relief.

Here, State Farm seeks relief pursuant to F.Rule.Civ.P 60(b)(6) under circumstances where said plaintiff, has been and is, in clear violation of Rule 60(b)(3) which addresses issues of "fraud", "misrepresentation", "bad faith" and where these attach to and permiate the actions of plaintiff and its attorneys, throughout.

A motion for relief from a judgement or order pursuant to Rule 60(b) is generally not favored and is properly granted only upon a showing of exceptional circumstances or extreme hardship. *Pichardo v. Ashcroft*, 374 F. 3d 46 (2d Cir., 2004) citing *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). Defendants submit that in this case the is no hardship to plaintiff but there would be to defendants, if the Court allows plaintiff to retain the very substantial value conveyed to it by defendants, in good faith reliance upon plaintiff's representations in the settlement agreement and plaintiff's representations to the Court. The Elzanaty law suit in Bronx County against State Farm is of no relevance herein; however it explains why plaintiff moves here as it does.

The party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief "by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merchandising, Inc.*,

538 F.3d 448, 458 (6th Cir. 2008). In this case State Farm has not come forward with anything remotely close to "clear and convincing evidence". Now, by way of State Farm's motion, the Plaintiff and its counsel, come forward and exposed their "unclean" hands to the Court and the defendants.

## THE DOCUMENT DESTRUCTION DOES NOT VIOLATE PUBLIC POLICY

Under circumstances and facts established herein, State Farm's representation that it is entitled to relief under public policy against, "insurance fraud" is not applicable, nor sustainable, even if just for the fact that such allegations against defendants have been already ajudicated on the merits and are *res judicata*. Defendants submit that State Farm's recourse to public policy is an attempt to use public policy "as a sword for personal gain rather than a shield for the public good." *Benjamin v. Koeppel*, 85 N.Y.2d 549 (1995) 650 NE 2d 829; citing *Charlebois v. Weller Assocs.*, 72 N.Y.2d 587. In this decision the New York State of Appeals underscored the fact that the Courts are and should be skeptical of efforts by litigants to use public policy for their benefit, particularly where reliance on arguement of "public policy" would result with injustice to the other party.

The question is and continues, was the contract in fact for the performance of illegal service. If it was not, then it is valid and can be enforced." *McConnel v. Commonwealth* 7 N.Y.2d 465 (1960) A bargain is illegal if either its formation or performance is criminal, tortious or contrary to public policy. On its face, the destruction provision is perfectly valid and there is no indication that the defendants either intended or contemplated that it be performed by illegal or corrupt means. In addition, there is nothing in the statutes and regulations cited by plaintiff that makes the destruction provision void or unenforceable. The destruction provision does not prohibit the disclosure of documents but requires State Farm

17

Auto only to destroy the documents within 30 days, in the context of lawuit that the parties chose to settle on these terms.

The U.S Supreme Court in *Kelly v. Kosuga*, 358 U.S. 516, 519, 79 S.Ct. 429, 431, 3 L.Ed.2d 475 (1959), quoting *Mcmullen v. Hoffman*, 174 U.S. 6/39, 669, 19 S.Ct. 839, 850, 43 L.Ed. 1117 (1899) expressed the Court's concern and suspicion of assertion by a litigant of the "illegality defence" and addressed this issue accordingly: "It has been often stated in similar cases that the defence [of illegality] is a very dishonest one, and it lies ill in the mouth of the defendant to allege it ..."

Defendants submit that under circumstances of this matter they are entitled to repayment of all the valuable consideration that they paid and otherwised gave to the plaintiff, in accordance with the provisions of the settlement agreement and the June 11, 2008, Order of the Court. Defendant's are also entitled to reasonable attorney fees incured in connection with these proceedings.

## CONCLUSION

Defendants respectfully submit that under the facts presented and applicable law, the plaintiff has not sustained the required burden necessary for the granting of the relief State Farm requestes. Further, defendants' submission in opposition shows that plaintiff's motion, is not sustainable, frivolous and may well be sanctionable. It is only appropriate that plaintiff's motion be dismissed in all respects and that defendants have such and other further relief as may be just and proper.

Dated: New York, NY
April 11, 2012

*(Corrected per agreement on*
*May 1, 2011 as to Pagination*
*And Description of Exhibits*
*In Table, pg., iv)*

Respectfully Submitted,

s/ *Wolodymyr M. Starosolsky*

Wolodymyr M. Starosolsky(WS6067)
Attorney for the Pawlowski defendants
225 Broadway, Suite 1803
New York, New York 10007
(646)256-8058